# 14-967(L),

## 14-1115(XAP)

# United States Court of Appeals

## for the

# Second Circuit

───◆─◖◗─◆───

SPANSKI ENTERPRISES, INC.,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

TELEWIZJA POLSKA S.A.,

*Defendant-Appellee-Cross-Appellant.*

────────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SPECIAL APPENDIX

DLA PIPER US LLP (NY)
*Attorneys for Defendant-Appellee-*
  *Cross-Appellant*
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

LOEB & LOEB LLP
*Attorneys for Plaintiff-Appellant-*
  *Cross-Appellee*
345 Park Avenue
New York, New York 10154
(212) 407-4000

i

# Table of Contents

**Page**

Final Order of the Honorable Andrew L. Carter, Jr., U.S.D.J.,
    Dated March 6, 2014 ............................................................  SPA-1

Corrected Judgment, Dated March 14, 2014 ...........................  SPA-25

**SPA-1**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- X
Spanski Enterprises, Inc.,                               :

                                **Plaintiff,**   :   **10 Civ. 4933 (ALC)(GWG)**

             -against-                     :

Telewizja Polska, S.A.,                                 :   <u>**FINAL ORDER**</u>

                        **Defendant.**   :
-------------------------------------------------------------- X

**ANDREW L. CARTER, JR., District Judge:**

      In this diversity action, Plaintiff Spanski Enterprises, Inc. ("SEI") is suing for breach of a distribution agreement, as modified by two addenda, and a settlement agreement between itself and Defendant Telewizja Polska, S.A. ("TVP"). The parties engaged in discovery and a bench trial was held from July 22 to July 25, 2013. This opinion constitutes the Court's findings of fact and conclusions of law after trial pursuant to Fed. R. Civ. P. 52(a).

**I.       Introduction**

      The original distribution contract was entered into by the parties on December 14, 1994 ("Contract"), whereby TVP granted SEI the right to broadcast programming of the television channel *TVP Polonia* (n/k/a *TV Polonia*) in North and South America for an initial period of twenty-five years. The Contract was modified on November 4, 1999 ("First Addendum"), assigning SEI the further right to distribute *TVP Polonia* content over the Internet within North and South America, and again on April 29, 2002 ("Second Addendum"), giving SEI distribution rights to a second channel, *TVP Info*. In addition, the parties entered into an agreement dated August 11, 2009 ("Settlement Agreement"), which sought to clarify the existing agreements and resolve litigation commenced in 2007. Both parties bring breach of contract claims based on one or more of these documents, disputing the scope of the rights and obligations conveyed therein.

## II.    Background

A summary of the facts was previously set forth in <u>Spanski Enters., Inc. v. Telewizja Polska, S.A.</u>, No. 10 Civ. 4933 (ALC)(GWG), 2013 WL 81263 (S.D.N.Y. Jan. 8, 2013), and the Court assumes familiarity therewith.

## III.   Discussion

SEI's October 1, 2010 Amended Complaint alleges three claims, all for breach of contract.  Plaintiff's first claim asserts TVP breached the 1994 Contract, as amended by the First and Second Addenda, and the 2009 Settlement Agreement by licensing programming to a competitor, Polvision, in violation of SEI's exclusive rights to distribute such content as part of *TVP Polonia*.  Plaintiff's second claim asserts TVP breached the First Addendum by failing to provide litigation support to SEI in blocking violations of its exclusive distribution rights.  Lastly, Plaintiff's third claim asserts TVP breached the 1994 Contract, as amended by the First and Second Addenda, and the 2009 Settlement Agreement by removing the television series *Klan* from *TVP Polonia* for the purpose of distributing it to SEI's competitor.  TVP's counterclaim alleges SEI failed to use reasonable efforts to maximize subscribers for the distribution of *TVP Polonia* and *TVP Info*.  The parties concur the agreements should be construed pursuant to New York law. (Joint Pre-Trial Order, Ex. 1 ¶ 14.)

In order to prove breach of contract under New York law, a claimant must establish by a preponderance of the evidence: (1) a contract existed; (2) performance by one party; (3) breach by the other party; and (4) damages resulting from the breach. <u>Rexnord Holdings, Inc. v. Bidermann</u>, 21 F.3d 522, 525 (2d Cir. 1994); <u>accord</u> <u>Arbitron Inc. v. Tralyn Broad., Inc.</u>, 526 F. Supp. 2d 441, 447 (S.D.N.Y. 2007), <u>aff'd</u>, 327 Fed. App'x 755 (2d Cir. 2009); <u>Diesel Props S.r.l.</u>

v. Greystone Business Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).  The parties do not contest

the first and second elements but rather, argue the other side cannot establish breach and/or

damages. See Spanski, 2013 WL 81263, at *7 ("The parties do not dispute the existence of a

binding contract between them or that there has been performance on that contract.").

**A.  *The Polvision Claim***

It is undisputed that TVP entered into a Barter Agreement with Polvision dated March

17, 2008, whereby TVP licensed specific *TVP Polonia* shows to Polvision. (Joint Pre-Trial

Order, Ex. 1 ¶ 15.)  On June 27, 2008, a License Agreement was executed between TVP and

Polvision for further *TVP Polonia* programming. (Id. ¶ 16.)  A second License Agreement was

entered into by TVP and Polvision on August 31, 2009 also for *TVP Polonia* shows. (Id. ¶ 17.)

An annex to the August 31, 2009 agreement was executed on July 16, 2010, licensing unaired

episodes of series that had been previously broadcast on *TVP Polonia* to Polvision. (Id. ¶ 18.)

SEI claims the licensing programming to Polvision violated its exclusive rights to

distribute *TVP Polonia* content under the 1994 Contract, as amended, and the 2009 Settlement

Agreement.  To the contrary, TVP argues the agreements between the parties only gave SEI

exclusive rights "to distribute the *TVP Polonia* channel as a unit of programming . . . in the same

form as the channel is broadcast in Poland by TVP[;] . . . the contracts do not give SEI

distribution exclusivity to individual programs or series broadcast on *TVP Polonia*." (Def.'s

Proposed Findings of Fact & Conclusions of Law, Preliminary Summary ¶ 4.)  According to

TVP, any episodes sold to Polvision under the June 27, 2008 Licensing Agreement were

broadcast before, and in turn precluded by, the Settlement Agreement. (Def.'s Proposed

Conclusions of Law ¶ 18.)  Further, the August 31, 2009 Licensing Agreement was allegedly

effective on July 2, 2009, while SEI's rights were still limited to the first runs of TVP

programming under the 1994 Contract.[1] (Id. ¶ 20.)  Neither of these agreements with Polvision,

therefore, violated SEI's rights.  Finally, the July 2010 Annex licensed programming that SEI

allegedly had no rights to because it never appeared on *TVP Polonia*. (Id. ¶ 26.)

*i. Breach*

        During the trial, the parties presented evidence in an attempt to prove the scope of SEI's

rights under the agreements.  In addition to the agreements themselves, both parties presented

extrinsic evidence to elucidate the intended meaning of certain key provisions of the contracts.

Nevertheless, "New York has 'long adhered to the sound rule in the construction of contracts that

where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its

own language.'" Soroof Trading Dev. Co., Ltd. v. GE Fuel Cell Sys., LLC, 842 F. Supp. 2d 502,

510 (S.D.N.Y. 2012) (quoting R/S Assocs. v. N.Y. Job Dev. Auth., 98 N.Y.2d 29, 32 (2002)).

"[W]hen parties set down their agreement in a clear, complete document, their writing should as

a rule be enforced according to its terms." W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157,

162 (1990); accord Reiss v. Fin. Performance Corp., 97 N.Y.2d 195, 198 (2001).

        To determine if a contract is ambiguous, courts must analyze whether the language

contained therein is "'capable of more than one meaning when viewed objectively by a

reasonably intelligent person who has examined the context of the entire integrated agreement

and who is cognizant of the customs, practices, usages and terminology as generally understood

in the particular trade or business.'" Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182,

---

[1] Under the 1994 Contract, SEI only had rights to the first runs of programs. (Def.'s Proposed Findings of Fact & Conclusions of Law, Preliminary Summary ¶ 6.)  TVP acknowledges SEI's rights were expanded beyond just the first runs of the shows by the Settlement Agreement, which gave SEI "the new right to repeat broadcasting of the *TVP Polonia* channel content . . . ." (Id. ¶ 7.)

4

1192 (2d Cir. 1996) (citation omitted). "Ambiguity is determined by looking within the four

corners of the document, not to outside sources." <u>Kass v. Kass</u>, 91 N.Y.2d 554, 566 (1998);

<u>accord</u> <u>Collins v. Harrison-Bode</u>, 303 F.3d 429, 433 (2d Cir. 2002). Where there is ambiguity,

"'the court may accept any available extrinsic evidence to ascertain the meaning intended by the

parties during the formation of the contract.'" <u>Morgan Stanley Group Inc. v. New England Ins.</u>

<u>Co.</u>, 225 F.3d 270, 276 (2d Cir. 2000) (citation omitted). Where the provisions of a contract are

unambiguous, however, "[e]vidence outside the four corners of the document as to what was

really intended but unstated or misstated is generally inadmissible to add to or vary the writing."

<u>Giancontieri</u>, 77 N.Y.2d at 162. Further, "[i]t is well settled that 'extrinsic and parol evidence is

not admissible to create an ambiguity in a written agreement which is complete and clear and

unambiguous upon its face.'" <u>Id.</u> at 163.

      Guided by these rules of construction, the Court finds the Settlement Agreement, which

is clear and unambiguous on its face, gives SEI exclusive distribution rights to the individual

shows comprising *TVP Polonia*. Section II.A plainly conveys "exclusive distribut[ion]" rights to

SEI for "*TV Polonia* and *TVP Info* programming content" in the relevant geographical area.

(Pl.'s Ex. 7.) To ensure SEI's exclusivity, § II.E prohibits TVP from permitting "the distribution

of any other channels . . . that contain any of the same programming that is contained, has been

contained, or will be contained . . . in *TV Polonia* . . . ." (<u>Id.</u>) The deliberate choice to include

words such as "programming content" and "any of the same programming" indicates *TVP*

*Polonia* contained component parts (individual shows) and was not a single, indivisible unit. <u>See</u>

Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/content

(last visited Jan. 28, 2014) (stating the definition of "content" includes "a part, element, or

complex of parts"). Considering the interplay between § II.A and § II.E only reinforces this

**SPA-6**

conclusion by promoting a consistent reading throughout the various clauses of the document. See Consedine v. Portville Cent. Sch. Dist., 12 N.Y.3d 286, 293 (2009) ("A contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases."); Barrow v. Lawrence United Corp., 538 N.Y.S.2d 363, 365 (1989) ("Contracts are also to be interpreted to avoid inconsistencies and to give meaning to all of its terms.").

Additionally, § II.N of the Settlement Agreement explains, "All terms of the 1994 Agreement, as subsequently amended, shall remain in full force and effect, except in the event of any conflict between such prior agreements and this agreement, this agreement shall control."[2] (Pl.'s Ex. 7.)  This provision indicates SEI's rights after August of 2009 were encompassed not only by the Settlement Agreement but also by the amended 1994 Contract, to the extent no conflicting terms existed.  Indeed, a review of all of the agreements establishes the full contours of SEI's rights and TVP's obligations as well as the intentions of the parties as demonstrated by the words selected in each of the agreements, the circumstances surrounding formation, and the amendments and clarifications agreed upon along the way. See Commander Oil Corp. v. Advance Food Serv. Equip., 991 F.2d 49, 53 (2d Cir. 1993) (holding multiple writings should be construed as one agreement where the transactions are "intertwined" such that "[e]ach depended on the other [and] neither stood alone"); see also Kass, 91 N.Y.2d at 566 ("[C]ourts 'should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed.'" (quoting Atwater & Co. v. Pan. R.R. Co., 246 N.Y. 519, 524 (1927))).

Taking into account the 1994 Contract, the parties' intent to grant SEI exclusivity in distributing the individual shows of *TVP Polonia* is even more apparent.  First, § 2.2 of the 1994 Contract states, "TVP gives SEI the exclusive right to one-time use of *TV Polonia* shows . . . "

---

[2] The heading to § II of the Settlement Agreement indicates it was intended to clarify the parties' rights and obligations contained in the 1994 Contract, as amended. (Pl.'s Ex. 7.)

by virtue of SEI's "exclusive right to receive and use the [*TVP Polonia*] Signal . . . ." (Pl.'s Ex. 2 §§ 2.2-2.3.)  Moreover, § 3.1 illustrates the parties intended SEI would develop its own "Program,"[3] which would "consist of *TV Polonia* Shows and . . . Shows[4] produced in the Territory and advertisements." (Pl.'s Ex. 2.)  The Contract, by its own words, evidences the parties contemplated SEI would broadcast a Program, whereby it could receive the *TVP Polonia* satellite signal and use some or all of the *TVP Polonia* shows in accordance with § 3.1.

By describing SEI's exclusivity in the context of "use" of "*TV Polonia* shows" and "programming content," it is untenable to construe the agreements as narrowly as TVP suggests. As explained above, the language of the 1994 Contract demonstrates a clear intention to grant SEI exclusive rights to the individual programming of *TVP Polonia*, not just the signal as a whole.  The 2002 Addendum, which offers a new definition for *TVP Polonia* as "the television *programs* produced by TVP and broadcast by TVP[,]" comports with this interpretation. (Pl.'s Ex. 6 (emphasis added).)  Indeed, under the Settlement Agreement, TVP plainly affirmed its obligation to ensure it did not permit *any* of the same material "that is contained, has been contained, or will be contained . . . in *TV Polonia*" to be licensed to and distributed by a competitor in SEI's Territory. (Pl.'s Ex. 7 § II.E.)  Therefore, the unmistakable language of the 1994 Contract, the Addenda, and Settlement Agreement grants SEI exclusive distribution rights to the individual shows contained within *TVP Polonia.*

TVP fails to put forth persuasive arguments that the agreements are ambiguous, and thus its extrinsic evidence should be considered, or that the unambiguous language of the agreements supports its interpretation of SEI's rights.  TVP argues the 1994 Contract gave SEI the right to

---

[3] "Program," as defined by § 1(d), "refers to the Polish language TV program created by SEI and broadcast in the Territory[.]" (Pl.'s Ex. 2.)
[4] "Show," as defined by § 1(e), "refers to a part of the television program constituting a separate unit with regard to its contents, destination or authorship of message contained therein[.]" (Pl.'s Ex. 2.)

**SPA-8**

receive and use "the Signal" of *TVP Polonia*, which proves SEI could exclusively distribute the *TVP Polonia* channel as a single, indivisible unit, but had no rights to the individual programs. In fact, a fair reading of the 1994 Contract does not support TVP's position.  Section 2.2 describes the scope of SEI's rights ("one-time use of *TV Polonia* shows"), where as § 2.3 describes what actions TVP must take "to implement" the agreement ("grant[] SEI the exclusive right to receive and use the Signal in the Territory").  But, nothing in § 2.3 reasonably suggests SEI's right to receive and use the *TVP Polonia* signal altered or limited its exclusive distribution rights to one-time use of the shows contained within that signal, as described by § 2.2.

Even if the agreements were found to be ambiguous, the extrinsic evidence presented by the parties reinforces the conclusion that SEI's distribution exclusivity applies to the individual programs of *TVP Polonia*.  SEI presented the following evidentiary support for its position: (i) a TVP internal legal opinion concluding that if TVP provides other stations in the US and Canada with access to the TVP series "Wiadomośi" and "Panorama," it "would infringe on the exclusive rights granted [to] SEI [under the 1994 Contract]" (Pl.'s Ex. 15); (ii) a 1995 fax from TVP notifying SEI that it had "informed local Polonia stations, that . . . we are suspending (in accordance with the [1994 Contract]) access to [four programs], that form an integral part of the 'TV Polonia' program" (Pl.'s Ex. 19); (iii) an email from TVP to Polvision stating, "[Under the Settlement Agreement,] Spanski Enterprises in the USA are granted exclusive rights to material, which has been and will be broadcast by *TVP Polonia*" (Pl.'s Ex. 28); (iv) an internal letter from Ms. Nadolna to a Director of TVP requesting certain series be deferred from *TVP Polonia* due to the conflict between the Settlement Agreement and the agreement with Polvision (Pl.'s Ex. 43); (v) an internal memorandum to the President of TVP noting, "Due to the fact that the series presently aired by Polvision; '*Klan*', '*Zlotopolscy*', '*Plebania*', and '*Na dobre i na zle*', in light

8

of the settlement agreement entered into between TVP and [SEI] violates solely the rights of that

company, TVP . . . has carefully analyzed the possibilities of changing the content to such that

has not been, is not, and shall not be relayed on TV Polonia, therefore in accordance with the

[Settlement Agreement]" (Pl.'s Ex. 55); (vi) a letter from TVP to Polvision conceding, "[W]e

cannot make available for you to air the series and other programs constituting the content of

TVP Polonia" (Pl.'s Ex. 61); (vii) a letter from TVP to the Polish National Council on Radio and

Television affirming, "[B]roadcasts within the TV POLONIA lineup may not be made available

by us to local Polish language stations in America.  This would violate the terms of the [1994

Contract]" (Pl.'s Ex. 150); and (viii) the testimony of Piotr Lenarczyk, a former TVP employee

involved in the negotiations for the Settlement Agreement. (Lenarczyk Decl. ¶¶ 3, 12-13.)

　　　　To rebut this showing, TVP's less convincing evidence included the testimony of Ms.

Nadolna, who maintained, on behalf of TVP, that none of the agreements were intended to limit

TVP from distributing individual *TVP Polonia* programming to other entities, and the opinion of

industry expert Gary Arlen as to the meaning of the provisions in the agreements based on his

experience.  However, the testimony from TVP's witnesses is ultimately irrelevant.  Since the

terms of the 1994 Contract, as amended, and the Settlement Agreement are clear, the Court need

not look beyond the agreements themselves. See Bailey v. Fish & Neave, 8 N.Y.3d 523, 528

(2007) ("Where the language is clear, unequivocal and unambiguous, the contract is to be

interpreted by its own language."); Am. Home Prod. Corp. v. Liberty Mut. Ins. Co., 748 F.2d

760, 765 (2d Cir. 1984) (stating if the contract's language is unambiguous and has only one

reasonable interpretation, the Court does not need to consider extrinsic evidence of the parties'

intent).  In sum, TVP's undisputed licensing of *TVP Polonia* content to Polvision violated SEI's

distribution exclusivity.

*ii.  Damages*

In determining SEI's damages, the parties dispute the number of episodes TVP licensed to Polvision for which SEI can recover damages.  SEI argues TVP gave Polvision 860 episodes over the course of three agreements in violation of its exclusive distribution rights. (Shulman Report ¶ 54.)  According to Mr. Shulman's damages calculations, SEI can recover for 100 episodes licensed to Polvision under the June 27, 2008 Licensing Agreement, 215 episodes licensed under the August 31, 2009 Licensing Agreement as renegotiated by the 2010 Annex, and 545 episodes licensed under the July 16, 2010 Annex to the August 31, 2009 agreement, for a grand total of 860 episodes. (Id.)  TVP challenges that number, claiming the episodes at issue were either licensed prior to the Settlement Agreement or never aired on *TVP Polonia*.

Under the June 27, 2008 agreement, TVP licensed a total of 200 episodes to Polvision for broadcast through July 14, 2010. (Pl.'s Ex. 24.)  Mr. Shulman reasoned that for the period after the Settlement Agreement was executed, TVP should have earned approximately half of the revenue from those licenses. (July 22, 2013 Tr. at 19:3-20:10; Shulman Report ¶ 54.)  He, therefore, pro-rated the number episodes for which SEI seeks compensation by 50% to account for damages incurred only after the Settlement Agreement, as the Court previously ruled the mutual releases in the Settlement Agreement bar all claims accruing prior to the execution thereof. (Shulman Report ¶ 54); Spanski, 2013 WL 81263, at *6.  But, Mr. Shulman's pro-rated approach is nothing more than pure speculation.  It is based on when TVP might have expected to receive revenue from the episodes, not when they were actually licensed to and broadcast by Polvision. (July 22, 2013 Tr. at 20:11-21:1).  His theory does not provide proof on which the Court can reasonably rely to establish breaching conduct under the agreements.

In fact, TVP offered more persuasive evidence that the 100 episodes at issue from the

June 27, 2008 agreement were broadcast prior to the Settlement Agreement.  In his report, TVP's

damages expert, Timothy Hart, points out the June 27, 2008 agreement limited Polvision to one

run and one re-run within 24 hours of the first transmission of episodes 1 through 100 of *Na*

*Dobre I na zle* and 1 through 100 of *Plebania*. (Def.'s Ex. 63 ¶ 25; Pl.'s Ex. 24.)  He concludes

all 200 episodes under the agreement would have been broadcast by August 12, 2009

"considering (1) the two-run per episode within 24 hours restriction[,] . . . (2) the fact that the

August 31, 2009 License Agreement licensed Polvision the next episodes of these two

programs[,] . . . and (3) an August [5,] 2009 email communication detailing that Polvision was

done with the licensed *Na Dobre I na zle* episodes and needed more episodes and that it had

more than the licensed number of episodes of *Plebania* (up to #104)." (Def.'s Exs. 6, 14, 17, 63.)

In its post-trial memorandum, SEI did not even address how it had proven the episodes from this

agreement were sold to or broadcast by Polvision after the Settlement Agreement was executed.[5]

As such, SEI cannot recoup damages for the 100 episodes that were licensed to Polvision as part

of the June 27, 2008 agreement.

Next, TVP asserts the 545 episodes licensed in the July 2010 Annex never aired on *TVP*

*Polonia*, so the distribution of these episodes did not implicate its obligations under the

agreements.  SEI argues Ms. Nadolna admitted these episodes were aired on *TVP Polonia*, and

even if they were not, these episodes were part of long-running *TVP Polonia* series that TVP

impermissibly removed from the channel's line-up.  Yet, the evidence confirms the 545 episodes

at issue were never part of *TVP Polonia* programming content.  Of the programs licensed under

---

[5] Nor did SEI respond to TVP's alternative argument that under the 1994 Contract, SEI only had rights to "one-off use" of *TVP Polonia* programming, and all of the episodes sold to Polvision under the June 27, 2008 agreement had already aired on *TVP Polonia*. (Def.'s Proposed Conclusions of Law ¶ 17.)

the July 2010 Annex, 137 episodes were members of series where no episode had ever aired on *TVP Polonia*, which is acknowledged by a letter dated July 1, 2010 from Ms. Nadolna to Polvision. (Def.'s Exs. 38, 40.)  The remaining 408 episodes were members of series that had aired on *TVP Polonia*, namely *Klan* or *Plebania*, but the *TVP Polonia* broadcasting schedule establishes the specific episodes at issue were never shown on *TVP Polonia*. (Def.'s Exs. 59 App'x 9, 60 ¶ 28, 63 ¶ 26.)  At most, Ms. Nadolna's vague and confusing testimony on this point does not sufficiently rebut the written documents showing these episodes were never broadcast on *TVP Polonia*. <u>Compare</u> (July 23, 2013 Tr. at 150:4-151:21) <u>with</u> (Nadolna Decl. ¶ 67.)

SEI's secondary argument that these episodes would have aired on *TVP Polonia* if Ms. Nadolna had not requested they be deferred from broadcast is duplicative of its third claim ("the *Klan* claim"), whereby SEI alleges TVP's removal of these episodes from *TVP Polonia* so that they could be sold to Polvision violated the implied covenant of good faith and fair dealing. <u>See</u> <u>Dorset Indus., Inc. v. Unified Grocers, Inc.</u>, 893 F. Supp. 2d 395, 405 (E.D.N.Y. 2012) (stating claims for breach of contract and the implied covenant of good faith and fair dealing are duplicative "where the claims are based on the same allegations or where the same conduct is the predicate for both claims").  Since the same conduct is the predicate for both claims, the Court will consider SEI's contention regarding the diversion of *Klan* from *TVP Polonia* in its discussion of SEI's third claim.  Setting aside 100 episodes from the June 27, 2008 agreement and 545 episodes from the July 2010 Annex, 215 episodes are still in question.

With respect to the outstanding 215 episodes, TVP claims they resulted from the August 31, 2009 agreement that actually became binding in July of 2009, when TVP signed the document.  If accurate, these licenses would not have violated SEI's rights because under the amended 1994 Contract, the then-operative agreement between the parties, SEI allegedly only

had "one-off use" rights, meaning TVP could license re-runs of *TVP Polonia* content without limitation. On the other hand, SEI protests this argument as absurd, given the document itself is dated August 31, 2009, several other TVP documents refer to the agreement as effective on August 31, 2009, and TVP stipulated that it "entered into a License Agreement with Polvision . . . dated August 31, 2009 . . . ." (Pl.'s Exs. 25, 37, 45, 71; Joint Pre-Trial Order, Ex. 1 ¶ 17.) The Court agrees and finds TVP breached the 1994 Contract and the Settlement Agreement when it entered into the August 31, 2009 Licensing Agreement authorizing Polvision to broadcast 215 episodes previously shown on *TVP Polonia*.

Mr. Shulman proposes three methodologies to quantify SEI's damages as a result of the August 31, 2009 agreement between TVP and Polvision. In the first scenario, he estimates the value of the licenses TVP sold to Polvision based on an industry standard market model less any royalties SEI would have paid to TVP. (Shulman Report ¶¶ 14, 32.) Alternatively, Mr. Shulman proposes the value for the licenses based on the market value of the episodes as stated in a 2008 Barter Agreement and its amendment between Polvision and TVP less any royalties SEI would have paid to TVP. (Id.) In the last scenario, he suggests the value for the licenses based on what Polvision actually paid TVP for the episodes listed in the 2008 Barter Agreement less any royalties SEI would have paid to TVP. (Id.)

All three of Mr. Shulman's methodologies presuppose SEI can seek lost profits based on a determined value of the programming TVP licensed to Polvision because SEI could have realized the value of that programming as its own profits if it had sold the licenses to Polvision directly. TVP argues this underlying premise is flawed because SEI never had the right to syndicate any of TVP's programming content under the agreements; therefore, SEI cannot claim any of Mr. Shulman's measures of lost profits since it never would have been entitled to those

13

profits in the first place.  SEI seeks to rebut this contention by offering evidence that it had sold

individual programs to other channels and networks in the past with TVP's knowledge.

To recover lost profits under New York law, it is well-settled that three criteria must be

satisfied as set forth by the New York Court of Appeals in Kenford Co. v. County of Erie

(Kenford I), 67 N.Y.2d 257 (1986).  "'First, it must be demonstrated with certainty that such

damages have been caused by the breach and, second, the alleged loss must be capable of proof

with reasonable certainty.'  Third, 'there must be a showing that the particular damages were

fairly within the contemplation of the parties to the contract at the time it was made.'" Great

Earth Int'l Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 432 (S.D.N.Y. 2004) (quoting

Kenford I, 67 N.Y.2d at 261); accord Care Travel Co., Ltd. v. Pan Am. World Airways, Inc., 944

F.2d 983, 994 (2d Cir. 1991).  Citing to Schonfeld v. Hilliard, 218 F.3d 164 (2d Cir. 2000), TVP

argues lost profits for licenses SEI could have sold to Polvision were not contemplated by the

parties at the time the contract was made.  Besides, SEI did not have syndication rights and had

not syndicated TVP's programming during the past eighteen years of the parties' relationship.

In deciding whether a claim for damages was contemplated by the parties at the time of

formation, Kenford I directs courts to look to the contract for any indication that the remedy

sought was part of the bargained for exchange. 67 N.Y.2d at 262.  Here, no such provision exists.

"In the absence of any [contractual] provision[,] . . . the commonsense rule to apply is to

consider what the parties would have concluded had they considered the subject." Id.  "[T]he

court must . . . determine what the parties intended by considering 'the nature, purpose and

particular circumstances of the contract known by the parties . . . as well as what liability the

defendant fairly may be supposed to have assumed consciously.'" Schonfeld, 218 F.3d at 172

(citing Kenford Co. v. County of Erie (Kenford II), 73 N.Y.2d 312, 319 (1989)).

14

Notwithstanding TVP's position to the contrary, SEI presented evidence of agreements it had made to license *TVP Polonia* content to other channels.  In a letter dated April 3, 2003 from SEI to TVP's Director and Editor-in-Chief of *TVP Polonia*, Mr. Spanski wrote,

> I would like to inform you that [sic] signing the agreement with International Channels Partnerships LLC whereby, among other things, the "Wiadomosci" [news] program will be broadcast on the International Channels Partnerships LLC channel . . . .  We make the same information service ("Wiadomosci") available to WNYC station in the Washington metropolitan area . . . .  The firm, EuroVU, as a part of the SEI structure is authorized to conclude agreements with television distributors in the United States.  It is wholly subject to the terms of the [1994 Contract as amended], including those concerning the financial audit.

(Pl.'s Ex. 154.)  Additional evidence revealed that when other channels or platforms in SEI's Territory approached TVP about distributing *TVP Polonia* content, it informed them SEI was the exclusive distributor and *directed them to contact SEI* if they wanted to pursue an agreement. (Pl.'s Exs. 28, 73, 135, 137.)  TVP's contentions that SEI never used the word "syndication" in the April 3, 2003 letter and that the episodes in dispute are not comparable to *Wiadomosci* because, as part of a series, they have longer time periods throughout which they could be shown are simply without merit.  Given that TVP was aware of SEI's arrangements with other channels and even directed several entities, including Polvision, to speak directly to SEI about broadcasting *TVP Polonia* content,[6] the Court finds sufficient evidence to conclude lost profits measured by the value of the licenses TVP sold to Polvision in breach of SEI's exclusivity were part of the liability TVP fairly assumed when the Settlement Agreement was executed.

There is little doubt SEI's alleged damages were caused by TVP's breach, such that they are "directly traceable to the breach, not remote or the result of other intervening causes."

---

[6] Much of the evidence SEI offered, including the April 3, 2003 letter, was dated prior to 2009.  Even if TVP could not be said to have fairly assumed this liability under the 1994 Contract, it was on notice of SEI's activities and seemingly did not object to them when the parties entered into the Settlement Agreement in August of 2009.

Kenford I, 67 N.Y.2d at 261.  Likewise, the value of the licenses sold to Polvision can be

ascertained with reasonable certainty.  SEI urges the Court to adopt Mr. Shulman's second

methodology, which fixes the value of the licenses at $600 per episode. (Pl.'s Post-Trial Mem. at

25; Shulman Report ¶¶ 14, 32.)  Mr. Shulman points out the March 17, 2008 Barter Agreement,

as amended,[7] between TVP and Polvision stated the "market value" of episodes in various series,

such as *Klan*, is USD600. (Shulman Report ¶ 53; Def.'s Ex. 5 § 4(b).)  As the Barter Agreement

makes clear, however, Polvision received a 50% discount off the "market value" for the

exchanged episodes. (Def.'s Ex. 5 § 5(b).)

TVP maintains the value of the episodes should be set at no higher than what Polvision

actually paid, claiming "the so-called 'market value' rate of $600 per episode included in the

March 17, 2008 Barter Agreement was [no]thing more than an arbitrary number perhaps inserted

to suggest that Polvision was getting a good deal." (Def.'s Ex. 63 ¶ 37.)  While Polvision may

have negotiated a better rate directly with TVP, there is no indication SEI would have done the

same for Polvision or a similar licensee.  If, in reality, the "market value" listed in the Barter

Agreement was "arbitrary," such negotiating was a disservice to TVP in this instance.  Given the

temporal proximity of the 2008 Barter Agreement to TVP's breach in this case, the similarity in

content, and the fact that TVP voluntarily consented to $600 as an appropriate market value for

comparable programming, the Court finds the value of the content TVP improperly sold to

Polvision can be fixed with reasonable certainty at $600 per episode.

Based on the foregoing, the Court awards SEI $118,680.00 in damages for TVP's breach

of its exclusive distribution rights under the parties' agreements when it sold 215 episodes of

---

[7] The March 17, 2008 Barter Agreement was amended on December 2, 2008 to add additional series, including *Klan and Zlotopolscy*, to Schedule No. 1 of the original agreement. (Def.'s Ex. 5)  The market value of the episodes, however, remained unchanged after the amendment.

programming that had previously appeared on *TVP Polonia* to Polvision.  With each of the 215 episodes valued at $600, SEI was required to pay TVP 8% of the gross revenue generated under the agreements. (Def.'s Ex. 1 § 6.1)  Thus, the total amount of damages, $129,000.00, is reduced by 8% to account for this provision, resulting in a final sum of $118,680.00.

## B. *The Canadian Litigation*

In its second claim, SEI alleges TVP breached the agreements by failing to provide assistance in its Canadian litigation against IMB+ Records Inc. ("IMB+").  SEI initiated a suit against IMB+ for unauthorized distribution of *TVP Polonia* and *TVP Info* programming content through the website www.imb-plus.com. (Spanski Decl. ¶ 60.)  Beginning in February of 2010, SEI requested TVP join it in pursuing claims against IMB+. (Id. ¶ 61.)  TVP declined to become a party to the lawsuit, but notified SEI by letter dated March 24, 2011 of "its readiness to provide further support of an appropriate nature to the benefit of SEI . . . by providing any necessary source information and evidentiary materials to that effect." (Pl.'s Ex. 96.)  During the same time SEI was seeking litigation support from TVP, the evidence shows TVP was engaging in discussions with IMB+ regarding the lawful distribution of TVP's programming. (Pl.'s Exs. 79, 81, 82, 84, 86.)  Even more, IMB+ "offer[ed] legal assistance [to TVP] for proving the absence of exclusive rights by [SEI] for broadcasting TVP channels . . . in Canada and in the USA . . . ." (Pl.'s ex. 81.)

Section 1.5 of the First Addendum states the following language shall be added to § 3 of the 1994 Contract: "TVP designates SEI as its representative in the Territory, authorized to prevent any violations and to protect TVP rights.  Any legal action on behalf of TVP, in particular incurring costs, may be undertaken only by prior approval by TVP.  TVP will provide

appropriate support to SEI actions in this regard." (Pl.'s Ex. 4.)  SEI claims TVP failed to

provide "appropriate support" in its litigation efforts by negotiating with IMB+ to undermine

SEI's exclusive distribution rights.  TVP argues SEI had no right to require it to join the

litigation or contribute to the cost of legal fees, and it had legitimate reasons for choosing not

become involved in the case, particularly in light of its dispute with SEI over the scope of SEI's

rights under the agreements.

       The relevant provision in the First Addendum is clear that TVP was not obligated to join

in litigation, and any legal action on TVP's behalf required its consent.  In various letters to SEI,

TVP declined to become involved in the case, but offered, on at least one occasion, to provide

SEI with documents it could use on its own. (Pl.'s Exs. 76, 96.)  Moreover, TVP sent a letter to

IMB+ dated September 3, 2010 demanding that IMB+ cease its broadcasting of TVP channels

without the proper authorization. (Def.'s Ex. 42; July 23, 2013 Tr. at 166:1-23.)  These actions

by TVP were sufficient to constitute appropriate support under the agreements.  If TVP did not

expressly violate the First Addendum, then SEI urges the Court to find it violated the implied

covenant of good faith and fair dealing.  But, the covenant cannot impose obligations on the

parties that contradict the express terms of the contract. Horn v. N.Y. Times, 100 N.Y.2d 85, 92

(2003) ("No obligation can be implied, however, which would be inconsistent with other terms

of the contractual relationship." (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293,

304 (1983))).  Finding that TVP was required to join the Canadian lawsuit would, therefore,

impermissibly conflict with the clear and unambiguous language of the First Addendum.

       SEI's attempts to muddle this issue by pointing to TVP's meetings with IMB+, whereby

TVP received proposals from IMB+ that were unfavorable to SEI.  First, there is no evidence any

of those proposals came to fruition.  Second, SEI's trial counsel in the Canadian litigation

repeatedly attributed the alleged increased legal expenditures to TVP's failure to join the suit, not TVP's meetings with the infringer that ultimately resulted in nothing. (Chisick Decl. ¶¶ 3, 6-9.) Overall, TVP was entitled to refuse to participate in the Canadian litigation, and SEI has not proven TVP's conduct otherwise breached the First Addendum or the implied covenant of good faith and fair dealing.

## C. *The Klan Claim*

SEI's final claim contends by removing the series *Klan* from *TVP Polonia* "to placate Polvision," TVP breached the implied covenant of good faith and fair dealing, depriving SEI of the fruits of its agreements and causing substantial damages.  According to SEI, *Klan* was one of the most popular and longest running series on *TVP Polonia* and the content contained therein was exclusively licensed to SEI.  TVP argues the agreements left complete control with it to make programming decisions, and *Klan* was removed from *TVP Polonia* as part of its routine review of programming content.  SEI rebuts this argument by asserting the removal of *Klan* was done in bad faith and for the sole purpose of offering the show to Polvision.

According to the terms of the 1994 Contract, "TVP reserves the right to make changes to the *TV Polonia* programming service . . . while retaining the general character of that program." (Pl.'s Ex. 2 § 9.4.)  This clause, left unaltered by the future amendments and the Settlement Agreement, specifically leaves programming decisions within TVP's exclusive control so long as "the general character" of *TVP Polonia* is retained.  Still, SEI argues despite its right to make programming decisions, TVP removed *Klan* from *TVP Polonia* only for the purpose of subverting the agreements and licensing the content to Polvision.

"In addition to the express terms of a contract, New York law implies in every contract a covenant of good faith and fair dealing 'pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Dorset Indus., 893 F. Supp. 2d at 405 (quoting Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006)).  The covenant "includes 'an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part.'" Carvel Corp. v. Diversified Mgmt. Group, Inc., 930 F.2d 228, 230 (2d Cir. 1991) (quoting Grad v. Roberts, 14 N.Y.2d 70, 75 (1964)).  This implied promise must be "'so interwoven in the whole writing' of a contract as to be necessary for effectuation of the purposes of the contract." M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990) (quoting Havel v. Kelsey-Hayes Co., 83 A.D.2d 380, 384 (App. Div. 4th Dep't 1981)).

It is well settled, however, "that the covenant 'can only impose an obligation consistent with other mutually agreed upon terms in the contract.  It does not add to the contract a substantive provision not included by the parties.'" Dorset Indus., 893 F. Supp. 2d at 406 (quoting Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005)).  "[T]he implied covenant does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party's anticipated fruits from the contract." Galesi, 904 F.2d at 136 (quoting Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co., 30 N.Y.2d 34, 46 (1972), cert. denied, 409 U.S. 875 (1972)).  Moreover, "'whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the particular case . . . .'" Tractebel Energy Mktg. Inc. v.

AEP Power Mktg., Inc., 487 F.3d 89, 98 (2d Cir. 2007) (citation omitted).  Here, Plaintiff has the burden of proving a breach of the implied covenant of good faith and fair dealing.

A review of the evidence in the record exposes SEI's failure to carry its burden with respect to this claim.  TVP's removal of *Klan* from *TVP Polonia* was neither a direct violation of the parties' agreements nor a violation of what SEI could have reasonably expected. See Galesi, 904 F.2d at 136 (explaining the covenant can only be employed to "effectuate the intentions of the parties, or to protect their reasonable expectations").  The 1994 Contract explicitly leaves control over programming to TVP's sole discretion, so it cannot be fairly presumed that TVP must consult SEI or receive SEI's approval before changing content, as such an obligation would directly contradict the terms of the agreement. See Gaia House Mezz LLC v. State St. Bank & Trust Co., 720 F.3d 84, 93 (2d Cir. 2013) ("The covenant cannot be used . . . to imply an obligation inconsistent with other terms of a contractual relationship." (citing Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995))).

Further, TVP presented evidence that the decision to remove *Klan* was part of a regular quarterly programming review. (Nadolna Decl. ¶¶ 93-97.)  Ms. Nadolna explained *Klan* was removed from *TVP Polonia* in May of 2010 to make space for a new current events program, *Poland 24*, and because *Klan* had declining viewership in Poland among a target audience. (Id. ¶¶ 98-102; July 23, 2013 Tr. at 156:5-157:23.)  Although SEI insists these reasons are merely pretextual, the only supporting evidence it presented was commentary on *Klan* viewership from 2012 to 2013, over two years after Klan was removed from *TVP Polonia*, which was taken from a Polish website without explanation as to the site's accuracy and reliability. (Pl.'s Ex. 152.)

Importantly, the fact that TVP later sold the extracted episodes of *Klan* to Polvision is of no consequence since TVP was within its rights under the 1994 Contract and did not violate any presumed or reasonable expectations thereunder. See Gaia House, 720 F.3d at 94 (finding where the defendant "acted consistently with the contract and did not violate a presumed obligation or [the plaintiff's] reasonable expectations, it was entitled to act in its own self-interest[,] . . . even if such action lessened [the plaintiff's] anticipated profits"). Even presuming TVP's motives for removing *Klan* were retaliatory in nature, courts have found the implied covenant regulates the parties' conduct, not their motives. See id. at 94 n.5 (noting where the plaintiff claimed the defendant acted disadvantageously to it only after learning it would not share in the profits, "[t]he principle of good faith constrains a party's actions, not a party's motives for those actions"). As such, SEI has failed to prove that TVP's removal of *Klan* from *TVP Polonia* overstepped TVP's express contractual rights or that the removal was undertaken in such a way that ran afoul of the covenant of good faith.

### D.  *TVP's Counterclaim*

In the January 8, 2013 Opinion and Order, the Court found, "SEI has an implied obligation, as the exclusive licensee, to use reasonable efforts to market and distribute TVP's programming in hopes of maximizing subscribers." Spanski, 2013 WL 81263, at *8. TVP claims SEI breached this obligation by failing to achieve 150,000 subscribers by 2006, according to its industry expert, Mr. Arlen. (Def.'s Ex. 59 at 19.) It also offered the testimony of another expert, Mr. Reyes, to prove SEI's website had major deficiencies that resulted in "a poorly-designed, hard-to-use, non-user-friendly website." (Def.'s Ex. 61 at 1.) SEI contends none of TVP's witnesses actually analyzed SEI's efforts to distribute TVP's programming, and therefore, TVP cannot demonstrate SEI neglected its obligations under the agreements.

The evidence offered by TVP is wholly insufficient to prove its counterclaim.  As SEI correctly points out, there was little evidence regarding what SEI actually did or did not do but should have done to distribute the programming in a reasonable manner.  Instead, Mr. Arlen's testimony focused on a numerical amount of subscribers he believes should have been captured. (Def.'s Ex. 59.)  But, the test is whether SEI used reasonable efforts to distribute TVP's programs, not whether SEI achieved measurable success in distribution as contemplated by the number of subscribers. See Soroof, 842 F. Supp. 2d at 511 (finding "reasonable efforts to supply a product are not necessarily the same as actual success in supplying a product" and "work in good faith and to the extent of its capabilities" will fulfill a "reasonable efforts" clause). Likewise, Mr. Reyes's opinions regarding the shortcomings in SEI's website are not sufficient to show SEI was not discharging its obligations to distribute TVP's programming in good faith. Due to the complete void of evidence in the record to support this claim, it must be dismissed.

IV.     **Conclusion**

       For the reasons fully discussed herein, the Court orders judgment in favor of Plaintiff SEI for its first breach of contract claim regarding the selling of licenses to Polvision in violation of its exclusive distribution rights in the amount of $118,680.00, including pre-judgment interest.[8] All remaining claims and TVP's counterclaim are dismissed.  The Clerk of Court is respectfully directed to close this case and enter judgment consistent with this Order.

---

[8] "Under New York law, . . . a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." U.S. Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991). "Interest shall be at the rate of nine per centum per annum[,]" N.Y. CPLR § 5004 (2013), "from the earliest ascertainable date the cause of action existed . . . ." Id. § 5001; see also Bison Capital Corp. v. ATP Oil & Gas Corp., 884 F. Supp. 2d 57, 59 (S.D.N.Y. 2012) ("In breach of contract cases, prejudgment interest 'is awarded from the date of the breach . . . .'" (quoting Scott v. Harris Interactive, 851 F. Supp. 2d 631, 650 (S.D.N.Y. 2012))). Accordingly, interest on Plaintiff's award shall accrue at the rate of 9% per annum beginning on August 31, 2009.

SPA-24

**SO ORDERED.**


Dated:     New York, New York
           March ⟨6⟩ , 2014

_____
        **ANDREW L. CARTER, JR.**
        **United States District Judge**

24

**SPA-25**

Case 1:10-cv-04933-ALC-GWG   Document 69   Filed 03/14/14   Page 1 of 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

SPANSKI ENTERPRISES, INC.,

                                        Plaintiff,

-against-

TELEWIZJA POLSKA, S.A.,

                                        Defendant.
----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/14/2014

10 **CIVIL** 4933 (ALC) (GWG)

**CORRECTED JUDGMENT**

Whereas the parties having engaged in discovery and a bench trial having been held from July 22 to July 25, 2013, and the matter having come before the Honorable Andrew L. Carter, Jr., United States District Judge, and the Court, on March 6, 2014, having rendered its Final Order, ordering judgment in favor of Plaintiff SEI for its first breach of contract claim regarding the selling of licenses to Polvision in violation of its exclusive distribution rights in the amount of $118,680.00, plus prejudgment interest at 9% from August 31, 2009, dismissing all remaining claims and TVP's counterclaim, and directing the Clerk of the Court to close this case and enter judgment consistent with this Order, it is,

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Final Order dated March 6, 2014, Judgment is hereby entered in favor of Plaintiff SEI for its breach of contract claim regarding the selling of licenses to Polvision in violation of its exclusive distribution rights in the amount of $118,680.00, plus prejudgment interest at the rate of 9% from August 31, 2009 in the amount of $48,372.67, for the total sum of $167,052.67; all remaining claims and TVP's counterclaim are dismissed; accordingly, the case is closed.

SPA-26

**Dated:**  New York, New York
March 14, 2014

**RUBY J. KRAJICK**

_____
**Clerk of Court**

**BY:**

_____
**Deputy Clerk**

**THIS DOCUMENT WAS ENTERED**
ON THE DOCKET ON _____