# 14-967(L),
## 14-1115(XAP)

# United States Court of Appeals
## for the
## Second Circuit

SPANSKI ENTERPRISES, INC.,

*Plaintiff-Appellant-Cross-Appellee,*

– v. –

TELEWIZJA POLSKA S.A.,

*Defendant-Appellee-Cross-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## JOINT APPENDIX
## Volume I of XI (Pages A-1 to A-300)

DLA PIPER US LLP (NY)
*Attorneys for Defendant-Appellee-*
  *Cross-Appellant*
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

LOEB & LOEB LLP
*Attorneys for Plaintiff-Appellant-*
  *Cross-Appellee*
345 Park Avenue
New York, New York 10154
(212) 407-4000

i

# Table of Contents

**Page**

District Court Docket Entries ................................................. A-1

Complaint, Dated June 24, 2010 ............................................ A-14

Amended Complaint, Dated October 1, 2010 ......................... A-20

Plaintiff's First Request for the Production of Documents,
    Dated March 3, 2011 .............................................................. A-30

Defendant's First Request for the Production of Documents,
    Dated March 30, 2011 ............................................................ A-37

Plaintiff's Second Request for the Production of Documents,
    Dated December 28, 2011 ...................................................... A-44

Joint Pre-Trial Order, Dated February 7, 2013 ...................... A-49

    Exhibit 1 to Joint Pre-Trial Order -
    Stipulated Facts and Law ...................................... A-59

    Exhibit 2 to Joint Pre-Trial Order -
    Plaintiff's Designations of Deposition Testimony .............. A-62

    Exhibit 3 to Joint Pre-Trial Order -
    Defendant's Designations of Deposition Testimony .......... A-66

    Exhibit 4 to Joint Pre-Trial Order -
    List of Plaintiff's Proposed Exhibits ................................... A-68

    Exhibit 5 to Joint Pre-Trial Order -
    List of Defendant's Proposed Exhibits................................ A-74

Trial Declaration of Maria Nadolna,
    Dated February 27, 2013 ....................................................... A-76

Trial Declaration of Piotr Lenarczyk,
    Executed on March 1, 2013 .................................................. A-93

Trial Declaration of Boguslaw Spanski on Behalf of
    Plaintiff, SEI, Dated March 16, 2013 .................................. A-98

Proposed Findings of Fact and Conclusions of Law
    of Plaintiff Spanski Enterprises, Inc. ("SEI"),
    Dated July 1, 2013 ................................................................ A-125

Proposed Findings of Fact and Conclusions of Law
    of Defendant Telewizja Polska, S.A. ("TVP"),
    Dated July 1, 2013 ................................................................ A-142

ii

**Page**

Deposition Transcript of Boguslaw Spanski,
Dated November 8, 2011 ..................................................... A-194

Deposition Transcript of Maria E. Nadolna,
Dated November 9, 2011 ..................................................... A-255

Deposition Transcript of Stephen Shulman,
Dated June 7, 2012 ............................................................. A-383

Deposition Transcript of Larry Gerbrandt,
Dated June 19, 2012 ........................................................... A-483

Transcript of Trial, Dated July 22, 2013 ................................. A-536

Witnesses:

| Stephen Walter Shulman | Cross (by Mr. Wenger).......... | A-539 |
| | Redirect (by Mr. Piskora)...... | A-600 |
| Tomasz Gladowski | Cross (by Mr. Wenger).......... | A-602 |
| | Redirect (by Mr. Barnett)...... | A-614 |
| | Recross (by Mr. Wenger)...... | A-619 |

Transcript of Trial, Dated July 23, 2014 ................................. A-622

Witness:

| Maria Nadolna | Cross (by Mr. Zavin)............. | A-623 |
| | Redirect (by Mr. Wenger) ..... | A-710 |

Transcript of Trial, Dated July 24, 2014 ................................. A-719

Witnesses:

| Marek Wierzbowski | Cross (by Mr. Piskora) .......... | A-720 |
| Ivan Reyes | Cross (by Mr. Barnett) .......... | A-729 |
| | Redirect (by Mr. Wenger) ..... | A-780 |
| | Recross (by Mr. Barnett)....... | A-784 |
| Gary Arlen | Cross (by Mr. Zavin)............. | A-785 |
| | Redirect (by Mr. Wenger) ..... | A-866 |
| | Recross (by Mr. Zavin) ......... | A-872 |

Transcript of Trial, Dated July 25, 2014 ................................. A-876

Witnesses:

| Timothy Hart | Cross (by Mr. Piskora) .......... | A-877 |
| | Redirect (by Mr. Wenger) ..... | A-923 |

iii

                                                                                    **Page**

Boguslaw Spanski              Direct (by Mr. Zavin) ............ A-934
                                        Cross (by Mr. Wenger).......... A-946
                                        Redirect (by Mr. Zavin) ........ A-951

Plaintiff SEI's Trial Exhibits:

2       Certified English Translation of December 14, 1994
        Agreement between TVP and SEI (P0008-15) ............ A-956

4       Certified English Translation of November 4, 1999
        First Addendum between TVP and SEI ...................... A-964

6       Certified English Translation of November 4, 1999
        Second Addendum Addendum between TVP and SEI
        (P00026-29)................................................................. A-968

7       Settlement Agreement between TVP and SEI,
        Dated August 11, 2009 (P00030-33)........................... A-972

9       Letter from Wieslaw Walendziak and Adam Brodziak
        to "To Whom it May Concern," Dated March 10,
        1995 (in English) (SEI 000005) .................................. A-976

11      Letter from Wieslaw Walendziak and Adam Brodziak
        to "To Whom it May Concern," Dated March 10,
        1995 (in English) (TP 7000087)................................. A-977

13      Certified English Translation of March 15, 1995
        Letter from Wieslaw Walendziak to Edward Moskal
        (TP 7004249)............................................................... A-978

15      Certified English Translation of May 24, 1995
        Legal Opinion by Ryszard Swiderski (TP 7006700) ... A-981

17      Certified English Translation of June 8, 1995 Fax
        from Marta Suchodolska to Andrej Sikora and
        Waclaw Tylawski (TP 7007459)................................. A-983

19      Certified English Translation of June 12, 1995 Fax
        from Marta Suchodolska to Boguslaw M. Spanski
        (TP 7003598)............................................................... A-985

21      Certified English Translation of June 9, 1997 Letter
        from Robert Telennea to Jack Piotr Latallo
        (TP 7003479)............................................................... A-987

iv

**Page**

23    Certified English Translation of March 17, 2008
Barter Agreement between TVP and Polvision/
Polstudios (POL00038-45)...........................................  A-990

24    License Agreement between TVP and Polvision,
Dated June 27, 2008 (POL00054-57) .........................  A-999

26    Certified English Translation of August 31, 2009
License Agreement between TVP and Polvision
(POL00058-62) ............................................................  A-1003

28    Certified English Translation of September 3, 2009
Email String between TVP and Polvision (TVP
101111 0338-39) ........................................................  A-1009

30    Certified English Translation of November 28, 2009
Email from TVP to Polvision (TVP 101111 0355)......  A-1012

32    Certified English Translation of December 21, 2009
Email from TVP to Polvision (TVP 101111 0351)......  A-1014

33    December 23, 2009 Email String from TVP
to Polvision (P00172) (Polish and Certified
English Translation) ....................................................  A-1016

35    Certified English Translation of January 6, 2010
Email from TVP to Polvision (TVP 10111 0352)........  A-1018

37    Certified English Translation of January 25, 2010
Letter from TVP to Polvision (TVP 051611 00044)....  A-1020

39    Certified English Translation of January 26, 2010
Letter from Polvision to TVP (TVP 00045-47) ...........  A-1022

41    Certified English Translation of February 18, 2010
Internal TVP Letter (TVP 101111 0353) ....................  A-1027

43    Certified English Translation of March 30, 2010
Internal TVP Letter (TVP 072011 0298-99)................  A-1029

45    Certified English Translation of April 1, 2010
Meeting Notes (TVP 101111 0356-57).......................  A-1031

47    Certified English Translation of April 8, 2010 Internal
TVP Letter (TVP 051611 00062).................................  A-1034

49    Certified English Translation of May 5, 2010 Letter
from TVP to Polvision (TVP 051611 00070) ..............  A-1036

v

**Page**

51  Certified English Translation of May 5, 2010 Letter
    from TVP to SEI (TVP 051611 00290) ...................... A-1038

53  Certified English Translation of May 13, 2010
    Internal TVP Letter (TVP 051611 0071) .................... A-1040

55  Certified English Translation of May 18, 2010
    Internal TVP Letter (TVP 051611 00076-77)............. A-1042

57  Certified English Translation of May 18, 2010 Letter
    from TVP to Polvision (TVP 051611 00079-80)......... A-1045

59  Certified English Translation of June 8, 2010 Letter
    from TVP to Polvision (TVP 051611 00085) ............. A-1048

61  Certified English Translation of June 26, 2010 Letter
    from TVP to Polvision (TVP 051611 00088) ............. A-1050

63  Certified English Translation of July 1, 2010 Letter
    from TVP to Polvision (TVP 051611 00089-92)......... A-1052

65  Certified English Translation of July 1, 2010 Internal
    TVP Letter (TVP 051611 00093)................................ A-1059

67  Certified English Translation of July 2, 2010 Letter
    from Polvision to TVP (TVP 051611 00094-95)......... A-1062

69  Certified English Translation of July 12, 2010
    Internal TVP Letter (TVP 051611 00096) .................. A-1064

71  Certified English Translation of July 16, 2010 Annex
    to August 31, 2009 Agreement between TVP and
    Polvision (POL00063-65) ........................................... A-1067

73  Certified English Translation of April 7, 2011 Letter
    from TVP to Polvision (P00328; P002010) ................ A-1071

79  Certified English Translation of October 5, 2010
    Email from IMB+ Records to TVP (TVP 051611
    00122-132) ................................................................ A-1072

81  Certified English Translation of October 15, 2010
    Notes of Meeting (TVP 051611 00133-34) ................ A-1084

82  Email from IMB+ Records to TVP, Dated October 18,
    2010 (in Original Polish and English) (TVP 051611
    00138-39) .................................................................. A-1087

vi

**Page**

84    Certified English Translation of October 27, 2010
Email from IMB+ Records to TVP (TVP 051611
00140-142) ................................................................ A-1092

86    Certified English Translation of March 22, 2011
Letter from IMB+ Records to TVP (TVP 051611
00276-278) ................................................................ A-1096

87    Webpages Concerning Polvision (P001100, 1105,
1655-59, 2073, 2104, 2115; 2148, 2186-87)............... A-1102

88    Directories of TVP Polonia Programming (TVP
021012 458-493; and www.tvp.pl.prosa/
TVPPolonia)............................................................... A-1109

89    Polvision Mediakit (2010) and Advertising
Rate Card................................................................... A-1145

91    Quarterly Subscriber Numbers, as referenced
in Shulman Report, Exh. II (SEI 000103-140;
TVP 051611 00154-191)............................................ A-1157

92    Polvision Programming Schedules
(P000 329-34, 2031-72) ............................................ A-1233

93    Spreadsheets of Terminated Internet Subscribers
(P001827-2009, 2246-2279) ...................................... A-1281

94    Spreadsheets of Lost Globecast Subscribers
(P001785-1826, 2239-2245) ...................................... A-1498

99    Email string between Counsel for SEI and Counsel
for Polvision, Dated January 2010 (P00225-227)........ A-1547

100   Email from Counsel for SEI to Counsel for Polvision,
Dated January 19, 2010 (P00242) .............................. A-1550

101   Letter from Counsel for SEI to Polvision,
Dated January 6, 2010 (P00249-250).......................... A-1551

104   Letter from TVP to Counsel for SEI,
Dated July 26, 2010 (P00327)..................................... A-1554

105   Letter from Counsel for SEI to TVP,
Dated August 2, 2010 (P00179-83).............................. A-1555

106   Letter from TVP to Counsel for SEI,
Dated May 21, 2010 (P00201-02)................................ A-1560

**Page**

107     May 2007 EchoStar Presentation for TVP
        (TP9000140, 159-163; 172) ........................ A-1562

109     Certified English Translation of February 18, 2009
        Letter from Polvision to TVP (TVP051611 0008-9) ... A-1569

111     Certified English Translation of TVP Form Email
        Regarding "Klan" (TVP 072011 0305)....................... A-1571

113     Certified English Translation of January 28, 1994
        Meeting Notes (TP 7004886-87)................................ A-1572

115     Certified English Translation of February 1994
        Proposal (TP 7006364-70) ........................... A-1575

117     Certified English Translation of February 9, 1994
        TVP Memorandum (TP7006378-79) ........................ A-1583

119     Certified English Translation of March 15, 1995
        Letter from TVP to Moskal (TP 7004249-50) ............ A-1586

121     Certified English Translation of January 7, 1999
        Letter with Legal Opinion (TP 7006672-74) .............. A-1589

122     Letter from TVP, Dated March 24, 1998
        (SEI 000166) ............................................. A-1593

123     Fax from TVP to EchoStar, Dated March 25, 1998
        (SEI 000721) ............................................. A-1594

125     Certified English Translation of April 1999 TVP
        Board of Directors Report on Company Activities
        (TP9000632, 653,669, 682, 542, 628)........................ A-1595

127     Certified English Translation of June 1, 1998 TVP
        Press Release (TP 7005054-55) .................................. A-1603

129     Certified English Translation of February 8, 2007
        Screenshot of TVP Webpage (SEI 000246-49) ........... A-1607

131     Certified English Translation of October 5, 1999
        Internal TVP Letter (TP 7006692) ............................. A-1612

133     Certified English Translation of TVP Board Position
        (SEI 000055-57)........................................... A-1614

134     Email String between TVP and EchoStar,
        Dated April 3, 2002 (TP 7003157-58) ........................ A-1618

viii

**Page**

135    Email from TVP to EchoStar, Dated April 6, 2002
(SEI 001140) ............................................................. A-1620

136    Letter from EchoStar to TVP, Dated June 14, 2002
(TP 7005252)............................................................. A-1621

137    Email from TVP to EchoStar, Dated June 8, 2002
(TP 7003182)............................................................. A-1622

139    Certified English Translation of July 1, 1999 Letter
from TVP to NIK (TP 7001215-18)............................. A-1623

141    Certified English Translation of March 3, 2005 TVP
Internal Memo (TP 7007953-55) ................................. A-1628

142    Shulman Expert Report and Rebuttal Report
(including attachments); Shulman Supplemental
Report (including attachments), Dated
March 18, 2013 ........................................................... A-1633

143    Gerbrandt Rebuttal Report (including attachments),
Dated May 16, 2012 .................................................... A-1958

144    Operating System and Browser Report
(www.tvpolonia.com).................................................. A-1987

145    *Computerworld* Article, Dated January 4, 2013,
Entitled "IE shocker: Microsoft's browser gains
share in 2012"............................................................. A-1988

146    www.netmarketshare.com Report, Dated February
2013, Entitled "Desktop Browser Market Share" ........ A-1991

148    Certified English Translation of September 18, 1995
Fax from TVP's Jerzy Romanski to SEI's Boguslaw
Spanski (TP7003566).................................................. A-1992

150    Certified English Translation of February 19, 1996
Letter from TVP (TP4000183-184) ............................. A-1995

152    Article, Dated June 3, 2013, Entitled "'Klan' is the
time slot leader. 2,700,000 viewers and 43,300,000
zlotys from advertising" (in Original Polish with
Certified English Translation)..................................... A-1997

154    Certified English Translation of Letter from
Boguslaw Spanski to TVP, Dated April 3, 2003
(TP7000323-325) ........................................................ A-2001

ix

**Page**

Defendant TVP's Trial Exhibits:

1    TVP/SEI Agreement, Dated December 14, 1994......... A-2005

2    TVP/SEI Addendum, Dated November 4, 1999 .......... A-2015

3    TVP/SEI Addendum, Dated April 29, 2002 ............... A-2020

4    SEI Quarterly Revenue and Subscriber Reporting
     (2005–2012) ................................................................. A-2025

5    TVP/Polvision Barter Agreement, with Annex,
     Dated March 17, 2008................................................. A-2087

6    TVP/Polvision License Agreement,
     Dated June 27, 2008................................................... A-2120

7    Email from Agnieszka Pokropek to Urszula
     Zaniewska, Dated March 9, 2009................................. A-2124

8    Email from Agnieszka Pokropek to Urszula
     Zaniewska, Dated April 20, 2009................................ A-2127

9    Email from Urszula Zaniewska to Agnieszka
     Pokropek, Dated June 4, 2009.................................... A-2130

10   Emails from Agnieszka Pokropek to Urszula
     Zaniewska, Dated June 4–5, 2009............................... A-2133

11   Polvision Agreement Certificate,
     Dated June 30, 2009 ................................................... A-2136

12   Letter from Urszula Zaniewska to Agnieszka
     Pokropek, Dated July 2, 2009 .................................... A-2141

13   Email from Agnieszka Pokropek to Urszula
     Zaniewska, Dated July 24, 2009 ................................ A-2144

14   Emails between Urszula Zaniewska and Agnieszka
     Pokropek, Dated August 4–5, 2009 ........................... A-2147

15   Letter from Urszula Zaniewska to Agnieszka
     Pokropek, Dated August 6, 2009 ............................... A-2151

16   TVP/SEI Settlement Agreement,
     Dated August 11, 2009................................................ A-2154

17   TVP/Polvision Licensing Agreement,
     Dated August 31, 2009................................................ A-2158

x

**Page**

18    Emails between Urszula Zaniewska and Agnieszka
      Pokropek, Dated September 1–3, 2009 ....................... A-2170

19    Email from Urszula Zaniewska to Agnieszka
      Pokropek, Dated October 23, 2009 ............................. A-2176

20    Email from Elżbieta Herezińska to Agnieszka
      Pokropek, Dated November 28, 2009 ......................... A-2179

21    Fax from TVP to Waldemar Kotaba, Dated
      November 30, 2009 (in Original Polish with
      English Translation) ...................................................... A-2182

22    Emails from Piotr Lenarczyk and Urszula Zaniewska
      to Agnieszka Pokropek, Dated December 9–21, 2009
      (in Original Polish with English Translation) .............. A-2185

23    Email from Urszula Zaniewska to Elżbieta
      Herezińska, Dated December 23, 2009 ........................ A-2189

24    Email from Elżbieta Herezińska to Agnieszka
      Pokropek, Dated December 23, 2009 (in Original
      Polish with English Translation) .................................. A-2192

25    Email from Urszula Zaniewska to Agnieszka
      Pokropek, Dated January 6, 2010 (in Original
      Polish with English Translation) .................................. A-2195

26    Letter from Waldemar Kotaba to Romulad Orzel,
      Dated February 23, 2010 (in Original Polish
      with English Translation) ............................................. A-2198

27    TVP/Polvision Meeting Minutes, Dated April 1, 2010
      (in Original Polish with English Translation) .............. A-2203

28    Letter from Maria Nadolna to Waldemar Kotaba,
      Dated May 5, 2010 (in Original Polish with
      English Translation) ...................................................... A-2208

29    Letter from Maria Nadolna to Boguslaw Spanski,
      Dated May 5, 2010 ....................................................... A-2211

30    Letter from Maria Nadolna to Waldemar Kotaba,
      Dated May 13, 2010 (in Original Polish with
      English Translation) ...................................................... A-2214

xi

**Page**

31    Letter from Romulad Orzel to Waldemar Kotaba,
Dated May 13, 2010 (in Original Polish with
English Translation) ..................................................... A-2217

32    Letter from Waldemar Kotaba to Romulad Orzel,
Dated May 17, 2010 (in Original Polish with
English Translation) ..................................................... A-2220

33    Letter from Maria Nadolna to Waldemar Kotaba,
Dated May 18, 2010 (in Original Polish with
English Translation) ..................................................... A-2223

34    Letter from Waldemar Kotaba to Romulad Orzel,
Dated May 19, 2010 ..................................................... A-2227

35    Letter from Maria Nadolna to Waldemar Kotaba,
Dated June 8, 2010 (in Original Polish with
English Translation) ..................................................... A-2232

36    Letter from Maria Nadolna to Waldemar Kotaba,
Dated June 14, 2010 (in Original Polish with
English Translation) ..................................................... A-2235

37    Letter from Maria Nadolna to Waldemar Kotaba,
Dated June 25, 2010 (in Original Polish with
English Translation) ..................................................... A-2238

38    Letter from Maria Nadolna to Waldemar Kotaba,
Dated July 1, 2010 (in Original Polish with
English Translation) ..................................................... A-2241

39    Letter from Maria Nadolna to Waldemar Kotaba,
Dated July 8, 2010 (in Original Polish with
English Translation) ..................................................... A-2251

40    Annex to August 31, 2009 Polvision License
Agreement, Dated July 16, 2010 (in Original
Polish with English Translation) .................................. A-2260

41    Letter from Lukasz Boberek to Boguslaw Spanski,
Dated April 9, 2010 ..................................................... A-2269

42    Letter from Tomasz Sieniutyck to IMB,
Dated September 3, 2010 ............................................ A-2274

43    Excerpts from Deposition of Boguslaw Spanski,
Dated November 8, 2011 ............................................ A-2275

xii

**Page**

44    Amended Statement of Claim in *Spanski Enterprises v. IMB+ Records*, Dated November 19, 2010................. A-2277

45    Statement of Defence in *Spanski Enterprises v. IMB+ Records*, Dated March 4, 2011 ........................ A-2303

46    Order of Master Barbara McAfee in *Spanski Enterprises v. IMB+ Records*, Dated November 30, 2011 .................................... A-2310

47    TV Polonia Webpage — About Us ............................. A-2318

48    Chart of Comparison of TVP Polonia Viewership Statistics (in Original Polish with English Translation) .................................. A-2320

49    Complaint in *Spanski Enterprises v. Telewizja Polska* (S.D.N.Y., 07-CV-930), Dated February 8, 2007 ........ A-2323

50    Original Complaint, Dated June 24, 2010.................... A-2337

51    Amended Complaint, Dated October 1, 2010 ............. A-2343

55    Transcript of Oral Argument in *Spanski Enterprises v. Telewizja Polska* (S.D.N.Y., 07-CV-930), Dated March 16, 2009 .................................. A-2353

59    Expert Report of Gary Arlen, Dated April 16, 2012, with Appendices ........................... A-2367

60    Expert Report of Tim Hart, Dated April 16, 2012, with Appendices ........................... A-2584

61    Expert Report of Ivan Reyes, Dated April 16, 2012, with Appendices ........................... A-2660

62    Expert Report of Marek Wierzbowski, Dated April 16, 2012, with Appendices ...................... A-2872

63    Supplemental Expert Report of Tim Hart, Dated May 16, 2012, with Appendices ....................... A-3066

64    Supplemental Expert Report of Gary Arlen, Dated May 16, 2012 .................................. A-3106

66    TV Polonia Webpage — Terms and Conditions.......... A-3114

Plaintiff SEI's Post-Trial Memorandum, Dated August 16, 2013....................................... A-3117

**xiii**

**Page**

Defendant TVP's Post-Trial Memorandum,
    Dated August 16, 2013.........................................................  A-3156

Notice of Appeal, Dated April 1, 2014 ...................................  A-3193

Notice of Cross-Appeal, Dated April 9, 2014 .........................  A-3194

**A-1**

CLOSED,APPEAL,CASREF,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:10-cv-04933-ALC-GWG

| | |
|---|---|
| Spanski Enterprises, Inc. v. Telewizja Polska S.A. | Date Filed: 06/24/2010 |
| Assigned to: Judge Andrew L. Carter, Jr | Date Terminated: 03/11/2014 |
| Referred to: Magistrate Judge Gabriel W. Gorenstein | Jury Demand: Plaintiff |
| Related Case: 1:12-cv-02897-ALC-GWG | Nature of Suit: 190 Contract: Other |
| Case in other court: US Court of Appeals, Second Circuit, 14-00967 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Breach of Contract | |

**Plaintiff**

**Spanski Enterprises, Inc.**                    represented by **John Anthony Piskora**
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212) 407-4000
Fax: (212) 407-4990
Email: jpiskora@loeb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Zavin**
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212) 407-4161
Fax: (212) 407-4990
Email: jzavin@loeb.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Steven Barnett**
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
(212)-407-4163
Fax: (212)-656-1554
Email: mbarnett@loeb.com
*ATTORNEY TO BE NOTICED*

A-2

V.

**Defendant**

**Telewizja Polska S.A.**                     represented by   **Andrew Lawrence Deutsch**
                                                               DLA Piper US LLP (NY)
                                                               1251 Avenue of the Americas
                                                               New York, NY 10020
                                                               (212) 335-4500
                                                               Fax: (212) 335-4501
                                                               Email: andrew.deutsch@dlapiper.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **David S. Wenger**
                                                               DLA Piper US LLP (NY)
                                                               1251 Avenue of the Americas
                                                               New York, NY 10020
                                                               (212)-335-4702
                                                               Fax: (212)-884-8602
                                                               Email: david.wenger@dlapiper.com
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Stanley McDermott , III**
                                                               DLA Piper US LLP (NY)
                                                               1251 Avenue of the Americas
                                                               New York, NY 10020
                                                               (212) 335-4500
                                                               Fax: (212) 335-4501
                                                               Email: stanley.mcdermott@dlapiper.com
                                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Telewizja Polska S.A.**                     represented by   **Andrew Lawrence Deutsch**
*TERMINATED: 01/08/2013*                                       (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **David S. Wenger**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Stanley McDermott , III**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

V.

**A-3**

## Counter Defendant

**Spanski Enterprises, Inc.**
*TERMINATED: 01/08/2013*

represented by **John Anthony Piskora**
(See above for address)
*LEAD ATTORNEY*

**Jonathan Zavin**
(See above for address)
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/24/2010 | 1 | COMPLAINT against Telewizja Polska S.A. (Filing Fee $ 350.00, Receipt Number 907427)Document filed by Spanski Enterprises, Inc.(mro) Modified on 6/28/2010 (mro). (Entered: 06/28/2010) |
| 06/24/2010 | | SUMMONS ISSUED as to Telewizja Polska S.A. (mro) (Entered: 06/28/2010) |
| 06/24/2010 | | Magistrate Judge Gabriel W. Gorenstein is so designated. (mro) (Entered: 06/28/2010) |
| 06/24/2010 | | Case Designated ECF. (mro) (Entered: 06/28/2010) |
| 06/24/2010 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Spanski Enterprises, Inc.(mro) (Entered: 06/28/2010) |
| 08/17/2010 | | Minute Entry for proceedings held before Judge Richard M. Berman: Status Conference held on 8/17/2010. Next Status Conference set for 9/29/2010 at 12:45 PM before Judge Richard M. Berman. (mro) (Entered: 08/23/2010) |
| 09/29/2010 | | Minute Entry for proceedings held before Judge Richard M. Berman: Status Conference held on 9/29/2010. Next Status Conference set for 12/15/2010 at 09:00 AM before Judge Richard M. Berman. (mro) (Entered: 10/01/2010) |
| 10/01/2010 | 3 | AMENDED COMPLAINT amending 1 Complaint against Telewizja Polska S.A. with JURY DEMAND.Document filed by Spanski Enterprises, Inc. Related document: 1 Complaint filed by Spanski Enterprises, Inc. (mro) (ama). (Entered: 10/04/2010) |
| 10/04/2010 | | ***NOTE TO ATTORNEY TO E-MAIL PDF. Note to Attorney Jonathan Zavin for noncompliance with Section (14.3) of the S.D.N.Y. Electronic Case Filing Rules & Instructions. E-MAIL the PDF for Document 3 Amended Complaint to: case_openings@nysd.uscourts.gov. (mro) (Entered: 10/04/2010) |
| 10/22/2010 | 4 | ENDORSED LETTER addressed to Judge Richard M. Berman from John A. Piskora dated 10/21/2010 re: Counsel respectfully request that the Court extend plaintiff's time to effect service pursuant to Rule 4 of the F.R.C.P. through 2/24/2011. ENDORSEMENT: Plaintiff's time to serve is extended to 1/7/11. So Ordered. (Signed by Judge Richard M. Berman on 10/22/2010) (jfe) (Entered: 10/22/2010) |
| 12/09/2010 | 5 | ENDORSED LETTER addressed to Judge Richard M. Berman from John A. Piskora dated 12/9/10 re: Counsel for the plaintiff writes to seek the Court's guidance as to |

7/7/2014                                    SDNY CM/ECF Version 5.1.1

| | | whether the parties' currently schedule December 15, 2010 Preliminary Conference should be adjourned to a later date. ENDORSEMENT: The conference on 12/15/10 is adjourned to 2/7/11 at 9:00 a.m. (Conference set for 2/7/2011 at 09:00 AM before Judge Richard M. Berman.) (Signed by Judge Richard M. Berman on 12/9/10) (mro) (Entered: 12/09/2010) |
|---|---|---|
| 01/26/2011 | 6 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Document filed by Telewizja Polska S.A..(McDermott, Stanley) (Entered: 01/26/2011) |
| 01/26/2011 | 7 | ANSWER to Amended Complaint., COUNTERCLAIM against Spanski Enterprises, Inc.. Document filed by Telewizja Polska S.A.. Related document: 3 Amended Complaint filed by Spanski Enterprises, Inc..(McDermott, Stanley) (Entered: 01/26/2011) |
| 02/02/2011 | 8 | ENDORSED LETTER addressed to Judge Richard M. Berman from Jonathan Zavin, dated 2/1/2011, re: I am lead trial counsel to Plaintiff Spanski Enterprises, Inc. ("SEI") in the above-referenced action. I write (pursuant to Rule 1(E) of Your Honor's Individual Practices), with the consent of counsel for Defendant Telewizja Polska SA ("TVP"), seeking a brief adjournment of the parties' Preliminary Conference currently scheduled for February 7, 2011. ENDORSEMENT: The conference on 2/7/11 is adjourned to 2/23/11 at 9:00 a.m. SO ORDERED. (Status Conference set for 2/23/2011 at 09:00 AM before Judge Richard M. Berman) (Signed by Judge Richard M. Berman on 2/2/11) (hnl) (Entered: 02/03/2011) |
| 02/16/2011 | 9 | ANSWER to Counterclaim. Document filed by Spanski Enterprises, Inc..(Zavin, Jonathan) (Entered: 02/16/2011) |
| 02/23/2011 | | Minute Entry for proceedings held before Judge Richard M. Berman: Initial Pretrial Conference held on 2/23/2011. Case management plan entered. Settlement Conference set for 6/23/2011 at 09:15 AM before Judge Richard M. Berman. (mro) (Entered: 02/23/2011) |
| 06/14/2011 | 10 | ENDORSED LETTER addressed to Judge Richard M. Berman from Jonathan Zavin dated 6/13/11 re: Request to extend the 6/23/11 discovery deadline. ENDORSEMENT: The discovery deadline is extended to 9/23/11. The settlement conference on 6/23/11 is adjourned to 8/8/11 at 2:30 pm. (Discovery due 9/23/2011. Settlement Conference reset for 8/8/2011 at 02:30 PM before Judge Richard M. Berman.) (Signed by Judge Richard M. Berman on 6/14/11) (cd) (Entered: 06/15/2011) |
| 07/20/2011 | 11 | ORDER REFERRING CASE TO MAGISTRATE JUDGE: Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for DGeneral Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement) Referred to Magistrate Judge Gabrial W. Gorenstein.7/19/2011) (js) Modified on 8/19/2011 (js). (Entered: 07/20/2011) |
| 07/20/2011 | 12 | ENDORSED LETTER: addressed to Judge Richard M. Berman from Jonathan Zavin dated 7/19/2011 re: Accordingly, Counsel requests that unless TVP is deposed as noticed on August 2, 2011, the settlement conference currently scheduled for August 8, |

|  |  | 2011 should be adjourned until after the close of discovery on September 23, 2011 and to a date that is convenient to the Court. ENDORSEMENT: The parties are directed to take up any discovery issues with Magistrate Judge Gorenstein to whom this matter has been referred. The settlement conference on 8/8/11 is adjourned to 9/26/11 at 9:00 a.m. So Ordered. (Signed by Judge Richard M. Berman on 7/19/11) (js) (Entered: 07/20/2011) |
|---|---|---|
| 07/21/2011 | 13 | Letter addressed to Judge Richard M.Berman from David S. Wenger dated 7/19/2011. Counsel for the defendant write in response to the letter submitted by the counsel for the plaintiff requesting a further adjournment of the settlement conference scheduled for 8/8/2011. Document filed by Telewizja Polska S.A. (ft) (Entered: 07/21/2011) |
| 07/25/2011 | 14 | ORDER: the above-referenced action has been referred to the undersigned for general pre-trial purposes. All pre-trial applications, including those relating to scheduling and discovery, shall be made to the undersigned (except motions to dismiss or for judgment on the pleadings, for injunctive relief, for summary judgment, or for class certification). All applications must comply with this Court's Individual Practices, which are available through the Clerk's Office or at: http://www l.nysd.uscourts.gov/judge info.php?id=67 (Signed by Magistrate Judge Gabriel W. Gorenstein on 7/25/2011) (mbe) (Entered: 07/25/2011) |
| 08/03/2011 |  | Minute Entry for proceedings held before Magistrate Judge Gabriel W. Gorenstein: Initial Pretrial Conference held on 8/3/2011. (mro) (Entered: 08/04/2011) |
| 08/08/2011 | 15 | STIPULATED PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material...ENDORSEMENT: The Court retains discretion whether to afford confidential treatment to any confidential document or information contained in any confidential document submitted to the court in connection with any motion, application, or proceeding that may result in an order and/or decision by the Court. (Signed by Judge Richard M. Berman on 8/8/2011) (ab) (Entered: 08/08/2011) |
| 08/24/2011 | 16 | TRANSCRIPT of Proceedings re: court conference held on 8/3/2011 before Magistrate Judge Gabriel W. Gorenstein. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/19/2011. Redacted Transcript Deadline set for 9/29/2011. Release of Transcript Restriction set for 11/25/2011.(laq) (Entered: 09/12/2011) |
| 08/24/2011 | 17 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a court conference proceeding held on 8/3/2011 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(laq) (Entered: 09/12/2011) |

**A-6**

| | | |
|---|---|---|
| 09/08/2011 | | Minute Entry for proceedings held before Magistrate Judge Gabriel W. Gorenstein: Initial Conference held on 9/8/2011. (mro) (Entered: 09/08/2011) |
| 09/20/2011 | 18 | ENDORSED LETTER addressed to Judge Richard M. Berman from Jonathan Zavin dated 9/19/2011 re: In light of the foregoing, the parties respectfully request that the settlement conference currently scheduled for September 26, 2011 at 9:00 be adjourned to a time convenient to the Court on either November 10th or 11th. ENDORSEMENT: Application granted. The parties are directed to schedule a settlement conference with Judge Gornestein. (Signed by Judge Richard M. Berman on 9/20/2011) (djc) (Entered: 09/20/2011) |
| 09/21/2011 | 19 | ORDER SCHEDULING A SETTLEMENT CONFERENCE: Settlement Conference set for 11/10/2011 at 10:00 AM in Courtroom 17A, 500 Pearl Street, New York, NY 10007 before Judge Richard M. Berman, as further set forth on this Order. (Signed by Magistrate Judge Gabriel W. Gorenstein on 9/21/2011) (ab) (Entered: 09/21/2011) |
| 11/10/2011 | | Minute Entry for proceedings held before Magistrate Judge Gabriel W. Gorenstein: Settlement Conference held on 11/10/2011. (rjm) (Entered: 11/15/2011) |
| 12/22/2011 | 20 | ENDORSED LETTER: addressed to Magistrate Judge Gabriel W. Gorenstein from Jonathan Zavin dated 12/21/2011 re: Counsel for plaintiff writes the parties have conferred and agree to the following proposed schedule for the completion of fact and expert discovery (each of the parties anticipate having one more experts). Completion of fact discovery, limited to the exchange of additional documents 2/15/2012. Expert disclosures, including the production of expert reports and related documents 4/16/2012. Rebuttal expert disclosures (if any), including the production of rebuttal reports and related documents 5/16/2012. Close of expert discovery, including all expert depositions. Also the deadlines (seeking a pre-motion conference before Judge Richard M. Berman summary Judgment motion. Accordingly, the parties jointly request that the Court "So Order" the foregoing discovery schedule. ENDORSEMENT: So Ordered. (Signed by Magistrate Judge Gabriel W. Gorenstein on 12/21/2011) (js) (Entered: 12/22/2011) |
| 12/29/2011 | 21 | NOTICE OF CASE REASSIGNMENT to Judge Andrew L. Carter, Jr. Judge Richard M. Berman is no longer assigned to the case. (sjo) (Entered: 12/29/2011) |
| 04/12/2012 | 22 | NOTICE OF COURT CONFERENCE: Final Pretrial Conference set for 7/6/2012 at 11:30 AM in Courtroom 14A, 500 Pearl Street, New York, NY 10007 before Judge Andrew L. Carter Jr. Counsel for all parties are directed to appear for the conference in person and report to the Courtroom upon arrival to the Courthouse. (Signed by Judge Andrew L. Carter, Jr on 4/12/2012) (ff) (Entered: 04/12/2012) |
| 06/21/2012 | 23 | ENDORSED LETTER addressed to Judge Andrew L. Carter, Jr. from David Wenger dated 6/19/2012 re: We write respectfully to request a pre-motion conference in the second-filed action, SEI v. TVP (12-cv-2897), and as further requested in this letter. ENDORSEMENT: The contents of this letter will be discussed at the July 6, 2012 pre-trial conference. The deadline for Defendant to respond in 12-cv-2897 is stayed pending the July 6, 2012 conference. So ordered. (Signed by Judge Andrew L. Carter, Jr on 6/21/2012) (rjm) (Entered: 06/22/2012) |

| | | |
|---|---|---|
| 07/06/2012 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Pretrial Conference held on 7/6/2012. Plaintiffs partial motion to dismiss Defendants' counterclaims is due by August 15,2012. Defendants' response is due by September 26,2012. Plaintiffs reply is due by October 10,2012. (cd) (Entered: 07/09/2012) |
| 07/06/2012 | | Set/Reset Deadlines: Motion due by 8/15/2012. Response due by 9/26/2012 Reply due by 10/10/2012. (cd) (Entered: 07/09/2012) |
| 08/15/2012 | 24 | MOTION for Partial Summary Judgment *Dismissing Counterclaims*. Document filed by Spanski Enterprises, Inc..(Piskora, John) (Entered: 08/15/2012) |
| 08/15/2012 | 25 | MEMORANDUM OF LAW in Support re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims*.. Document filed by Spanski Enterprises, Inc.. (Piskora, John) (Entered: 08/15/2012) |
| 08/15/2012 | 26 | DECLARATION of John A. Piskora in Support re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims*.. Document filed by Spanski Enterprises, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11.1, # 12 Exhibit 11.2, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20)(Piskora, John) (Entered: 08/15/2012) |
| 08/15/2012 | 27 | RULE 56.1 STATEMENT. Document filed by Spanski Enterprises, Inc.. (Piskora, John) (Entered: 08/15/2012) |
| 09/25/2012 | 28 | MEMORANDUM OF LAW in Opposition re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims*.. Document filed by Telewizja Polska S.A.. (Wenger, David) (Entered: 09/25/2012) |
| 09/25/2012 | 29 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** RESPONSE in Opposition re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims. Local Rule 56.1 Response*. Document filed by Telewizja Polska S.A. (Wenger, David) Modified on 9/26/2012 (db). (Entered: 09/25/2012) |
| 09/25/2012 | 30 | DECLARATION of David S. Wenger in Opposition re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims*.. Document filed by Telewizja Polska S.A.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit)(Wenger, David) (Entered: 09/25/2012) |
| 09/26/2012 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Note to Attorney David S. Wenger to RE-FILE Document 29 Response in Opposition to Motion. Use the event type Counter Statement to Rule 56.1 found under the event list Other Answers. (db) (Entered: 09/26/2012)** |
| 09/26/2012 | 31 | COUNTER STATEMENT TO 27 Rule 56.1 Statement. Document filed by Telewizja Polska S.A.. (Wenger, David) (Entered: 09/26/2012) |

**A-8**

| 10/10/2012 | 32 | REPLY MEMORANDUM OF LAW in Support re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims.*. Document filed by Spanski Enterprises, Inc.. (Zavin, Jonathan) (Entered: 10/10/2012) |
|---|---|---|
| 10/10/2012 | 33 | DECLARATION of John A. Piskora in Support re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims.*. Document filed by Spanski Enterprises, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Zavin, Jonathan) (Entered: 10/10/2012) |
| 10/10/2012 | 34 | DECLARATION of Piotr Lenarczyk in Support re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims.*. Document filed by Spanski Enterprises, Inc.. (Zavin, Jonathan) (Entered: 10/10/2012) |
| 10/10/2012 | 35 | DECLARATION of Boguslaw Spanski in Support re: 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims.*. Document filed by Spanski Enterprises, Inc.. (Zavin, Jonathan) (Entered: 10/10/2012) |
| 01/08/2013 | 36 | OPINION & ORDER re: #102806 24 MOTION for Partial Summary Judgment *Dismissing Counterclaims.* filed by Spanski Enterprises, Inc. For the reasons discussed above, Plaintiffs motion for partial summary judgment dismissing Defendant's counterclaims is GRANTED in part and DENIED in part. (Signed by Judge Andrew L. Carter, Jr on 1/8/2013) (djc) Modified on 1/29/2013 (jab). (Entered: 01/08/2013) |
| 01/22/2013 | 37 | INTERNET CITATION NOTE: Material from decision with Internet citation re: 36 Memorandum & Opinion. (sj) (Entered: 02/13/2013) |
| 04/08/2013 | 38 | NOTICE of Conference: The Final Pre-trial Conference is scheduled for April 10, 2013 at 2:00 p.m. So Ordered Final Pretrial Conference set for 4/10/2013 at 02:00 PM before Judge Andrew L. Carter Jr.(js) (Entered: 04/08/2013) |
| 04/08/2013 | 39 | NOTICE of Conference: The Final Pre-trial Conference previously scheduled for April 10, 2013 is adjourned until May 10, 2013 at 11:00 a.m. The parties should appear in person at the Thurgood Marshall United States Courthouse, 40 Foley Square, Courtroom 1306. So Ordered Final Pretrial Conference set for 5/10/2013 at 11:00 AM before Judge Andrew L. Carter Jr. (js) (Entered: 04/08/2013) |
| 04/16/2013 | 40 | ENDORSED LETTER: addressed to Judge Andrew L. Carter Jr. from David Wenger dated 4/12/2013 re: Counsel requests an adjournment of the Final pre-trial conference from May 10, 2013 at 11:00 to May 14, 2013 at 11:00. ENDORSEMENT: Defendant's request for an adjournment of the Final pre-trial conference from May 10, 2013 to May 14, 2013 at 11:30 a.m. is GRANTED The trial in this case is scheduled for July 22, 2013 through July 26, 2013. So Ordered. (Signed by Judge Andrew L. Carter, Jr on 4/16/2013) (js) (Entered: 04/16/2013) |
| 05/01/2013 | 41 | NOTICE OF APPEARANCE by Andrew Lawrence Deutsch on behalf of Telewizja Polska S.A. (Deutsch, Andrew) (Entered: 05/01/2013) |
| 05/01/2013 | 42 | NOTICE OF APPEARANCE by David S. Wenger on behalf of Telewizja Polska S.A. (Wenger, David) (Entered: 05/01/2013) |

**A-9**

| 05/14/2013 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Final Pretrial Conference held on 5/14/2013. John A. Piskora and Jonathan Zavin for Plaintiff(s). Andrew L. Deutsch and David S. Wenger for Defendant(s). The parties should finalize the exhibits list with any objections by 6/13/13. A copy of the exhibits should be provided to the Court by 7/18/13. Court Reporter: Tom Murray. (tdh) (Entered: 05/15/2013) |
| 06/27/2013 | 43 | NOTICE OF APPEARANCE by Michael Steven Barnett on behalf of Spanski Enterprises, Inc.. (Barnett, Michael) (Entered: 06/27/2013) |
| 07/01/2013 | 44 | PRETRIAL MEMORANDUM. Document filed by Spanski Enterprises, Inc..(Zavin, Jonathan) (Entered: 07/01/2013) |
| 07/01/2013 | 45 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Spanski Enterprises, Inc..(Zavin, Jonathan) (Entered: 07/01/2013) |
| 07/01/2013 | 46 | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW. Document filed by Telewizja Polska S.A..(Wenger, David) (Entered: 07/01/2013) |
| 07/16/2013 | 47 | ORDER: I hereby authorize the following attorneys' to bring the General purpose Computing Devices listed below into the Courthouse for use in a trial or proceeding in the action entitled Spanski Enterprises, Inc. v. Telewizja Polska S.A. No. 10-4933, which is anticipated to begin on July 22, 2013 and concluded on July 26, 2013. Jonathan Zavin-ipad,David Wenger-Laptop, and Michael Barnett-ipad. (Signed by Judge Andrew L. Carter, Jr on 7/16/2013) (js) (Entered: 07/16/2013) |
| 07/22/2013 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Bench Trial begun on 7/22/2013. Jonathan Zavin, John Piskora and Michael Barnett for Plaintiff. David Wenger for Defendant. Bench trial begins. Adjourned to 7/23/13 at 10:00 a.m. Court Reporters: Paula Speer and Anne Hairston. See transcript for complete details (tdh) (Entered: 07/24/2013) |
| 07/23/2013 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Bench Trial held on 7/23/2013. Jonathan Zavin, John Piskora and Michael Barnett for Plaintiff. David Wenger for Defendant. Bench Trial continues. Court adjourned to 7/24/13 at 10:00 a.m. Court Reporters: Paula Speer and Anne Hairston. (tdh) (Entered: 07/24/2013) |
| 07/24/2013 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Bench Trial held on 7/24/2013. Bench trial continues. Jonathan Zavin, John Piskora and Michael Barnett for Plaintiff(s). David Wenger for Defendant(s) Court adjourned to 7/25/13 at 10:00 a.m. See transcript for complete details. Court Reporter: Anne Hairston and Michael Mc Daniels. (tdh) (Entered: 08/06/2013) |
| 07/25/2013 | | Minute Entry for proceedings held before Judge Andrew L. Carter, Jr: Bench Trial completed on 7/25/2013. Jonathan Zavin, John Piskora, Michael Barnett for Plaintiff. David Wenger for Defendant. The parties post trial memorandums (35-page limit) due 8/16/13. See transcript for complete details. (tdh) (Entered: 08/19/2013) |
| 08/02/2013 | 48 | TRANSCRIPT of Proceedings re: TRIAL held on 7/22/2013 before Judge Andrew L. Carter, Jr.. Court Reporter/Transcriber: Ann Hairston, (212) 805-0300. Transcript may |

Case 14-1115, Document 33-1, 07/15/2014, 1271659, Page24 of 184

A-10

7/7/2014                                    SDNY CM/ECF Version 5.1.1

| | | |
|---|---|---|
| | | be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/26/2013. Redacted Transcript Deadline set for 9/6/2013. Release of Transcript Restriction set for 11/4/2013. (McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/02/2013 | 49 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 7/22/2013 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/02/2013 | 50 | TRANSCRIPT of Proceedings re: TRIAL held on 7/23/2013 before Judge Andrew L. Carter, Jr.. Court Reporter/Transcriber: Ann Hairston, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/26/2013. Redacted Transcript Deadline set for 9/6/2013. Release of Transcript Restriction set for 11/4/2013. (McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/02/2013 | 51 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 7/23/2013 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/02/2013 | 52 | TRANSCRIPT of Proceedings re: TRIAL held on 7/24/2013 before Judge Andrew L. Carter, Jr.. Court Reporter/Transcriber: Ann Hairston, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/26/2013. Redacted Transcript Deadline set for 9/6/2013. Release of Transcript Restriction set for 11/4/2013. (McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/02/2013 | 53 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 7/24/2013 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/02/2013 | 54 | TRANSCRIPT of Proceedings re: TRIAL held on 7/25/2013 before Judge Andrew L. |

https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?298538771235643-L_1_0-1                                    10/13

A-11

| | | |
|---|---|---|
| | | Carter, Jr.. Court Reporter/Transcriber: Ann Hairston, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/26/2013. Redacted Transcript Deadline set for 9/6/2013. Release of Transcript Restriction set for 11/4/2013. (McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/02/2013 | 55 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a TRIAL proceeding held on 7/25/2013 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 08/02/2013) |
| 08/16/2013 | 56 | POST TRIAL MEMORANDUM. Document filed by Spanski Enterprises, Inc..(Zavin, Jonathan) (Entered: 08/16/2013) |
| 08/16/2013 | 57 | POST TRIAL MEMORANDUM. Document filed by Telewizja Polska S.A..(Wenger, David) (Entered: 08/16/2013) |
| 02/06/2014 | 58 | DECLARATION of Stephen W. Shulman. (mro) (Entered: 02/06/2014) |
| 02/06/2014 | 59 | DECLARATION of Larry Gerbrandt. (mro) (Entered: 02/06/2014) |
| 02/06/2014 | 60 | DECLARATION of Timothy H. Hart concerning Expert Reports. (mro) (Entered: 02/06/2014) |
| 02/06/2014 | 61 | DECLARATION of Gary Arlen concerning Expert Reports. (mro) (Entered: 02/06/2014) |
| 02/06/2014 | 62 | DECLARATION of Ivan Reyes concerning Expert Report. (mro) (Entered: 02/06/2014) |
| 02/06/2014 | 63 | DECLARATION of Marek Wierzbowski Expert Report. (mro) (Entered: 02/06/2014) |
| 02/12/2014 | 64 | LETTER addressed to Judge Andrew L. Carter, Jr. from Jonathan Zavin dated February 12, 2014 re: Request for Pre-Motion Conference. Document filed by Spanski Enterprises, Inc..(Zavin, Jonathan) (Entered: 02/12/2014) |
| 02/19/2014 | 65 | LETTER addressed to Judge Andrew L. Carter, Jr. from David Wenger dated February 19, 2014 re: Response To Request For Pre-Motion Conference. Document filed by Telewizja Polska S.A..(Wenger, David) (Entered: 02/19/2014) |
| 03/04/2014 | 66 | MEMO ENDORSEMENT on re: 64 Letter filed by Spanski Enterprises, Inc. ENDORSEMENT: The Application is Denied. (Signed by Judge Andrew L. Carter, Jr on 3/04/2014) (ama) (Entered: 03/04/2014) |
| 03/06/2014 | 67 | FINAL ORDER: For the reasons fully discussed herein, the Court orders judgment in favor of Plaintiff SEI for its first breach of contract claim regarding the selling of licenses to Polvision in violation of its exclusive distribution rights in the amount of $118,680.00, including pre-judgment interest. All remaining claims and TVP's counterclaim are |

| | | |
|---|---|---|
| | | dismissed. The Clerk of Court is respectfully directed to close this case and enter judgment consistent with this Order. SO ORDERED. (Signed by Judge Andrew L. Carter, Jr on 3/06/2014) (ama) (Entered: 03/06/2014) |
| 03/06/2014 | | Transmission to Judgments and Orders Clerk. Transmitted re: 67 Order,,, to the Judgments and Orders Clerk. (ama) (Entered: 03/06/2014) |
| 03/11/2014 | 68 | CLERK'S JUDGMENT: That for the reasons stated in the Court's Final Order dated March 6, 2014, Judgment is hereby entered in favor of Plaintiff SEI for its breach of contract claim regarding the selling of licenses to Polvision in violation of its exclusive distribution rights in the amount of $118,680.00, including prejudgment interest of $48,372.67; all remaining claims and TVP's counterclaim are dismissed; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 3/11/2014) (Attachments: # 1 Notice of Right to Appeal)(dt) (Entered: 03/12/2014) |
| 03/11/2014 | | Terminate Transcript Deadlines (dt) (Entered: 03/12/2014) |
| 03/14/2014 | 69 | CORRECTED CLERK'S JUDGMENT: That for the reasons stated in the Court's Final Order dated March 6, 2014, Judgment is hereby entered in favor of Plaintiff SEI for its breach of contract claim regarding the selling of licenses to Polvision in violation of its exclusive distribution rights in the amount of $118,680.00, plus prejudgment interest at the rate of 9% from August 31, 2009 in the amount of $48,372.67, for the total sum of $167,052.67; all remaining claims and TVP's counterclaim are dismissed; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 3/14/2014) (Attachments: # 1 Notice of Right to Appeal)(dt) (Entered: 03/14/2014) |
| 04/01/2014 | 70 | NOTICE OF APPEAL from 69 Clerk's Judgment,,. Document filed by Spanski Enterprises, Inc.. Filing fee $ 505.00, receipt number 0208-9518951. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Zavin, Jonathan) (Entered: 04/01/2014) |
| 04/01/2014 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 70 Notice of Appeal. (nd) (Entered: 04/01/2014) |
| 04/01/2014 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 70 Notice of Appeal filed by Spanski Enterprises, Inc. were transmitted to the U.S. Court of Appeals. (nd) (Entered: 04/01/2014) |
| 04/08/2014 | | USCA Case Number 14-0967 from the US Court of Appeals, Second Circuit assigned to 70 Notice of Appeal filed by Spanski Enterprises, Inc.. (nd) (Entered: 04/08/2014) |
| 04/09/2014 | 71 | NOTICE OF CROSS APPEAL from 69 Clerk's Judgment,,. Document filed by Telewizja Polska S.A.. Filing fee $ 505.00, receipt number 0208-9549348. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit. (Wenger, David) (Entered: 04/09/2014) |
| 04/09/2014 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 71 Notice of Cross Appeal. (tp) (Entered: 04/09/2014) |
| 04/09/2014 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal |

A-13

| | Electronic Files for <u>71</u> Notice of Cross Appeal filed by Telewizja Polska S.A. were transmitted to the U.S. Court of Appeals. (tp) (Entered: 04/09/2014) |
|---|---|

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/07/2014 11:13:13 | | | |
| **PACER Login:** | at0090 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:10-cv-04933-ALC-GWG |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

JUDGE BERMAN

**10 CV 4933**

Jonathan Zavin (JZ-1846)
John A. Piskora (JP-1224)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Main: (212) 407-4000
Fax: (212) 407-4990

*Attorneys for Plaintiff*
*Spanski Enterprises, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                :
SPANSKI ENTERPRISES, INC.,                      :
                                                :    ____ CV ____
          Plaintiff,                            :
                                                :
          v.                                    :    **COMPLAINT**
                                                :
TELEWIZJA POLSKA S.A.,                          :
                                                :    JURY TRIAL DEMANDED
          Defendant.                            :
                                                :
-------------------------------------------------------X

RECEIVED
JUN 24 2010
U.S.D.C. S.D. N.Y.
CASHIERS

          Plaintiff Spanski Enterprises, Inc. ("SEI"), by their attorneys Loeb & Loeb LLP,

for its Complaint against Defendant Telewizja Polska S.A. ("TVP"), alleges and avers as

follows:

## NATURE OF ACTION

          1.     By this action Plaintiff SEI seeks damages for Defendant TVP's breach of a

December 14, 1994 written agreement (the "Agreement," as amended by a November 4, 1999

First Addendum and an April 29, 2002 Second Addendum, as well as an August 11, 2009 written

settlement agreement (the "Settlement Agreement")) pursuant to which TVP respectively granted

and confirmed the grant to SEI of the exclusive right to broadcast certain Polish-language

television programming in the United States, among other locations.  Just weeks after TVP

NY848474.1
209881-10007

executed the Settlement Agreement and confirmed therein that "SEI is and shall remain the

exclusive distributor of [certain TVP] … programming content in the territory of North and

South America by any and all means of distribution …," TVP brazenly and flagrantly breached

the Agreement and Settlement Agreement by purportedly licensing to and allowing distribution

of this very same programming by a competitor of SEI in Chicago, the largest Polish-American

market in the United States.  As a clear and direct result of TVP's breach of contract, SEI has

suffered substantial monetary damages.

## THE PARTIES

2.     Plaintiff Spanski Enterprises, Inc. ("SEI") is a corporation organized under the

laws of Canada with its principal place of business in Mississauga, Ontario.  SEI and its

subsidiaries are engaged, among other things, in the distribution of Polish-language television

and radio content in North and South America via satellite and cable television and over the

internet.

3.     Defendant Telewizja Polska, S.A. ("TVP") is, upon information and belief, a

business corporation organized under the laws of Poland and is wholly-owned by the Polish

government.  TVP owns and operates several Polish language television channels including *TV*

*Polonia* and *TVP Info*.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that

there is complete diversity of citizenship between Plaintiff and Defendant and the amount in

controversy exceeds the sum of $75,000, exclusive of interest and costs.  In the event that TVP

may assert to be a foreign sovereign entity, this Court has original jurisdiction pursuant to the

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1603(a)-(b), and 1605(a) (1), (2), as

NY848474.1
209881-10007                                    2

Defendant TVP has engaged in commercial activity within the United States and has otherwise waived immunity by expressly agreeing to litigate any and all contractual disputes before this Court.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(d) and pursuant to the parties' Agreement, as amended.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS
### SEI's Exclusive Rights Under the Agreement with TVP

6.      By written agreement dated December 14, 1994 (the "Agreement"), TVP granted SEI the exclusive right to broadcast the programming of TVP's television channel *TV Polonia* in North and South America (the "Territory").

7.      At all times relevant to this action, *TV Polonia* programming has included news programs as well mini-series and dramas, such as the as highly popular programs entitled *Plebania*; *Klan*; *Na Dobre i na Zle*; and *M jak Milosc* ("M is for Love").

8.      The term of the Agreement, as provided therein, is twenty-five (25) years from the date of its execution, with an option to extend the term for ten (10) additional years. The Agreement is a binding contract as between SEI and TVP which remains in effect.

9.      By contractual addendum dated as of November 4, 1999 (the "First Addendum"), TVP granted SEI the further exclusive right to broadcast *TV Polonia* programming content over the internet within the Territory.

10.      TVP and SEI entered into a second addendum to the Agreement dated April 29, 2002 (the "Second Addendum"). By the Second Addendum, TVP granted SEI exclusive rights in and to the programming of second TVP channel, *TVP 3 Regionalna* (now known as *TVP Info*), and also expressly provided that the Agreement and its addenda would be governed by New

York law and that any disputes between TVP and SEI relating to the Agreement or its addenda would be submitted to and resolved by the Federal Court in the City of New York.

11.    In 2007, SEI commenced an action before this Court (entitled *Spanski Enterprises Inc., et al. v. Telewizja Polska S.A., et al.*; S.D.N.Y. Case No. 07 CIV 930) that concerned, among other things, the scope of SEI's exclusive rights to distribute *TV Polonia* programming in the Territory. After years of time consuming and expensive litigation, the prior action was resolved by the parties' August 11, 2009 Settlement Agreement.

12.    Pursuant to the Settlement Agreement TVP agreed and confirmed that "SEI is and shall remain the exclusive distributor of *TV Polonia* and *TVP Info* programming content in the territory of North and South America by any and all means of distribution …."

## TVP Breaches the Agreement and Settlement Agreement

13.    Upon information and belief, within three weeks of the parties' execution of the Settlement Agreement, TVP breached both the Agreement and the Settlement Agreement by purporting to license the distribution of *TV Polonia* programming (specifically, the programs *Plebania*; *Klan*; *Na Dobre i na Zle*; and *M jak Milosc*) to Polvision, a competitor of SEI and its affiliated companies, for distribution in SEI's exclusive Territory.

14.    When SEI (by its attorneys) contacted Polvision demanding that it cease and desist from distributing *TV Polonia* programming content that TVP has exclusively licensed to SEI, Polvision responded that it had obtained a purported license from TVP to so distribute this programming.

15.    TVP has admitted and acknowledged to SEI that it granted a purported license to Polvision in regard to *TV Polonia* content that TVP licensed exclusively to SEI. TVP has refused to provide SEI with a copy of the purported license.

## FIRST CLAIM FOR RELIEF
(Breach of Contract Against TVP)

16.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 15 of this Complaint as if fully set forth herein.

17.   The Agreement is a binding and valid contract as between SEI and TVP.

18.   The Settlement Agreement is a binding and valid contract as between SEI and TVP.

19.   SEI has fully performed, and continues to perform, its obligations under the Agreement (as amended) and the Settlement Agreement.

20.   All conditions precedent to suit have been satisfied, waived or excused.

21.   Pursuant to both the Agreement and Settlement Agreement, TVP has granted and acknowledged that SEI has the exclusive right to distribute and broadcast *TV Polonia* programming in North America, among other places.

22.   TVP has breached the Agreement by, among other things, purporting to license to SEI's direct competitor, Polvision, certain *TV Polonia* programming for distribution in SEI's exclusive Territory, doing so less than three weeks after executing the Settlement Agreement whereby TVP reconfirmed SEI's exclusive rights to distribute this very programming.

23.   As a direct and proximate result of TVP's aforesaid breaches of the Agreement and Settlement Agreement, SEI has been damaged in an amount to be proven at trial, but reasonably believed to exceed $5,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Spanski Enterprises, Inc. seek relief and demands judgment against Defendant Telewizja Polska S.A. as follows: (a) Awarding SEI compensatory damages against TVP for breach of contract in an amount to be proven at trial, including SEI's

actual damages and any profits received by TVP as a result of the TVP's contractual breaches alleged herein, reasonably believed to exceed $5,000,000; and (b) Awarding SEI its costs, prejudgment interest, attorneys' fees and such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
      June 24, 2010

Respectfully submitted,

By: _____
    Jonathan Zavin (JZ-1846)
    John A. Piskora (JP-1224)
    345 Park Avenue
    New York, NY 10154
    Main: (212) 407-4000
    Fax: (212) 407-4990

*Attorneys for Plaintiff*
*Spanski Enterprises, Inc.*

Jonathan Zavin (JZ-1846)
John A. Piskora (JP-1224)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Main: (212) 407-4000
Fax: (212) 407-4990



*Attorneys for Plaintiff*
*Spanski Enterprises, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                        :
SPANSKI ENTERPRISES, INC.,                              :
                                                        :
                          Plaintiff,                    :   10 CV 4933 (RMB)
                                                        :
            v.                                          :   **AMENDED COMPLAINT**
                                                        :
TELEWIZJA POLSKA S.A.,                                  :
                                                        :   JURY TRIAL DEMANDED
                          Defendant.                    :
                                                        :
--------------------------------------------------------X

         Plaintiff Spanski Enterprises, Inc. ("SEI"), by their attorneys Loeb & Loeb LLP,

for its Amended Complaint against Defendant Telewizja Polska S.A. ("TVP"), alleges and avers

as follows:

## NATURE OF ACTION

         1.      By this action Plaintiff SEI seeks damages for Defendant TVP's breach of a

December 14, 1994 written agreement (the "Agreement," as amended by a November 4, 1999

First Addendum and an April 29, 2002 Second Addendum), as well as an August 11, 2009

written settlement agreement (the "Settlement Agreement"), pursuant to which TVP respectively

granted and then confirmed the grant to SEI of the exclusive right to broadcast certain Polish-

language television programming in the United States.  Just weeks after TVP executed the

Settlement Agreement and confirmed therein that "SEI is and shall remain the exclusive distributor of [certain TVP] … programming content in the territory of North and South America by any and all means of distribution …," TVP brazenly and flagrantly breached the Agreement and Settlement Agreement by purportedly licensing to and allowing distribution of this very same programming by a competitor of SEI in Chicago, the largest Polish-American market in the United States.  Following SEI's filing of a claim based upon the forgoing contractual breaches, TVP removed the longest running and most popular television series in the history of TVP from *TV Polonia* (depriving Polish-television viewers across the World of this programming which had previously available on *TV Polonia* for decades, in an apparent after-the-fact attempt to justify it's licensing and distribution of this program series to the Chicago distributor), and purported to license certain re-run *TV Polonia* program to the same Chicago distributor, a competitor of SEI in the most important Polish market in the United States, thus further breaching the Agreement and Settlement Agreement by depriving SEI of its contractual benefits thereunder.  In addition, and contrary to its clear contractual obligations, TVP has failed to support and cooperate with SEI in its efforts to stop unauthorized parties from infringing SEI's exclusive rights as to *TV Polonia* programming.  As a clear and direct result of TVP's breaches of contract, SEI has suffered substantial monetary damages.

## THE PARTIES

2.       Plaintiff Spanski Enterprises, Inc. ("SEI") is a corporation organized under the laws of Canada with its principal place of business in Mississauga, Ontario.  SEI and its subsidiaries are engaged in, among other things, the distribution of Polish-language television and radio content in North and South America via satellite and cable television, as well as via the Internet.

A-22

3.      Defendant Telewizja Polska, S.A. ("TVP") is, upon information and belief, a business corporation organized under the laws of Poland and is wholly-owned by the Polish government.  TVP owns and operates several Polish language television channels including *TV Polonia* and *TVP Info*.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  In the event that TVP may assert to be a foreign sovereign entity, this Court has original jurisdiction pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1603(a)-(b), and 1605(a) (1), (2), as Defendant TVP has engaged in commercial activity within the United States and has otherwise waived immunity by expressly agreeing to litigate any and all contractual disputes before this Court.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(d) and pursuant to the parties' Agreement, as amended.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS
### SEI's Exclusive Rights Under the Agreement with TVP

6.      By written agreement dated December 14, 1994 (the "Agreement"), TVP granted SEI the exclusive right to broadcast the programming of TVP's television channel *TV Polonia* in North and South America (the "Territory").

7.      The term of the Agreement, as provided therein, is twenty-five (25) years from the date of its execution, with an option to extend the term for ten (10) additional years.  The Agreement is a binding contract as between SEI and TVP which remains in effect.

8.     As is relevant to this action, *TV Polonia* programming has included news programs as well mini-series and dramas, such as the as highly popular programs entitled *Plebania*; *Klan*; *Na Dobre i na Zle*; and *M jak Milosc* ("M is for Love").

9.     By contractual addendum dated as of November 4, 1999 (the "First Addendum"), TVP granted SEI the further exclusive right to broadcast *TV Polonia* programming content over the internet within the Territory.

10.     The First Addendum also expressly provided that TVP designated SEI as its representative in the Territory authorized to protect TVP's rights (including copyrights) in the programming licensed exclusively to SEI, as well as SEI's exclusive distribution rights, as against any actual or potential third-party infringers.  As to any legal action commenced by SEI on behalf of TVP in this regard, TVP contractually agreed to "provide appropriate support to SEI."

11.     TVP and SEI entered into a second addendum to the Agreement dated April 29, 2002 (the "Second Addendum").  By the Second Addendum, TVP granted SEI exclusive rights in and to the programming of second TVP channel, *TVP 3 Regionalna* (now known as *TVP Info*).

12.     The Second Addendum also expressly provided that the Agreement and its addenda would be governed by New York law and that any disputes between TVP and SEI relating to the Agreement or its addenda would be submitted to and resolved by the Federal Court in the City of New York.

**The Prior Action and the Parties' Settlement**

13.     In 2007, SEI commenced an action before this Court (entitled *Spanski Enterprises Inc., et al. v. Telewizja Polska S.A., et al.*; S.D.N.Y. Case No. 07 CIV 930) that concerned, among other things, the scope of SEI's exclusive rights to distribute *TV Polonia* programming in

the Territory.  After years of time consuming and expensive litigation, the prior action was

resolved by the parties' August 11, 2009 Settlement Agreement.

14.     Pursuant to the Settlement Agreement, TVP agreed and confirmed that "SEI is

and shall remain the exclusive distributor of *TV Polonia* and *TVP Info* programming content in

the territory of North and South America by any and all means of distribution …."

15.     Pursuant to the Settlement Agreement, TVP further agreed and confirmed that

"TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in

North and South America that contain any of the same programming that is contained, has been

contained, or will be contained in either *TV Polonia* or *TVP Info*."

### TVP Breaches the Agreement Shortly After the Settlement Agreement is Executed

16.     Upon information and belief, within three weeks of the parties' execution of the

Settlement Agreement, TVP breached both the Agreement and the Settlement Agreement by

purporting to grant a multi-year license for the distribution of certain *TV Polonia* programming

(among other programs, *Plebania*; *Klan*; *Na Dobre i na Zle*; and *M jak Milosc*) to Polvision, a

competitor of SEI and its affiliated companies, for distribution in SEI's exclusive Territory.

17.     When SEI (by its attorneys) contacted Polvision demanding that it cease and

desist from distributing *TV Polonia* programming content that TVP had exclusively licensed to

SEI, Polvision responded that it had obtained a purported license from TVP to so distribute this

programming and refused to cease its distribution of the programming.

18.     TVP admitted and acknowledged to SEI that it granted a purported license to

Polvision in regard to *TV Polonia* content that TVP licensed exclusively to SEI.  TVP has

refused to provide SEI with a copy of the purported license.

19.     After receiving a copy of the original Complaint filed in this action, wherein SEI alleged that any license of *TV Polonia* programming content from TVP to Polvision was in breach of the Agreement and the Settlement Agreement, TVP (in an unlawful attempt to frustrate SEI's contractual rights under the Agreement and Settlement Agreement and in breach thereof) removed the long-running and highly popular television series *Klan* from the *TV Polonia* broadcast, while at the same time continuing to provide the *Klan* series programming to Polvision for distribution in the United States.

20.     Upon information and belief, the *Klan* series had been broadcast continually on *TV Polonia* since 1993, and is one of TVP's most popular television series.

21.     By letter dated July 26, 2010, TVP wrote to SEI (via counsel) "to inform [SEI] that … TVP entered into an agreement which exclude TVP shows from Polvision's program that have been offered on TV Polonia at the same time."

22.     Pursuant to the parties' Settlement Agreement, however, TVP agreed that "TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in North and South America that contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TVP Info*."

23.     TVP also continues to provide episodes of the series *Plebania* (which were previously broadcast on *TV Polonia*) to Polvision for distribution in the Territory in further breach of the Agreement and Settlement Agreement.

**TVP Breached the Agreement by Failing to Support SEI's Actions Against Infringers**

24.     Pursuant to the First Addendum to the Agreement, TVP designated SEI as its representative in the Territory authorized to protect TVP's rights (including copyrights) in the

programming licensed exclusively to SEI, as well as SEI's exclusive distribution rights, as against any actual or potential third-party infringers.

25.     As to any legal action commenced by SEI on behalf of TVP in this regard, TVP further agreed to "provide appropriate support to SEI."  TVP has breached the Agreement and Settlement Agreement by failing to provide support to SEI in its efforts to cease the unauthorized and pirated distribution of TVP's programming content within the Territory by third-parties.

26.     Specifically, SEI discovered that a company (and related individuals) located in Canada were distributing TVP programming content (including programming content that had been exclusively licensed to SEI for distribution in the Territory) via IPTV throughout North America.

27.     Upon information and belief, TVP has not licensed the foregoing distribution of its programming content via IPTV.

28.     SEI prepared to commence legal action in Canada against the infringing company and individuals, and, to that end, retained the well-know intellectual property law firm Cassels Brock & Blackwell LLP ("Cassels").

29.     Cassels advised SEI that it would be preferable if TVP joined SEI as a plaintiff in the lawsuit.

30.     Notwithstanding that SEI arranged for Cassels to represent TVP in the lawsuit (at no expense to TVP), TVP wrote to SEI and refused to participate in the lawsuit, without justification and in breach of the parties' Agreement and Settlement Agreement.

## FIRST CLAIM FOR RELIEF
(Breach of Agreement and Settlement Agreement)

31.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 30 of this Amended Complaint as if fully set forth herein.

32.   The Agreement (as amended) is a binding and valid contract as between SEI and TVP.

33.   The Settlement Agreement is a binding and valid contract as between SEI and TVP.

34.   SEI has fully performed, and continues to perform, its obligations under the Agreement (as amended) and the Settlement Agreement.

35.   All conditions precedent to suit have been satisfied, waived or excused.

36.   Pursuant to both the Agreement and Settlement Agreement, TVP has granted and acknowledged that SEI has the exclusive right to distribute and broadcast *TV Polonia* programming in North America, among other places.

37.   TVP has breached the Agreement by, among other things, purporting to license to SEI's direct competitor, Polvision, certain *TV Polonia* programming for distribution in SEI's exclusive Territory, doing so less than three weeks after executing the Settlement Agreement whereby TVP reconfirmed SEI's exclusive rights to distribute this very programming.

38.   As a direct and proximate result of TVP's aforesaid breaches of the Agreement and Settlement Agreement, SEI has been damaged in an amount to be proven at trial, but reasonably believed to exceed $5,000,000.

## SECOND CLAIM FOR RELIEF
### (Breach of Agreement (First Addendum) and Settlement Agreement)

39.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 of this Amended Complaint as if fully set forth herein.

40.   Pursuant to the First Addendum to the Agreement, TVP contractually agreed to assist and provide support for SEI's actions to protect its exclusive distribution rights in the Territory.

41.     TVP has breached the Agreement (the First Addendum) and Settlement Agreement (confirming TVP's obligations pursuant to the First Addendum) by failing to provide appropriate support to SEI to prevent violations of SEI's exclusive distribution rights in the Territory.

42.     Specifically, TVP has refused, without justification, to join in an action against the unauthorized distributors of TVP programming content located in Canada, notwithstanding that SEI arranged (at its own expense) for TVP's representation of TVP in the matter.

43.     As a direct and proximate result of TVP's aforesaid breach of the First Addendum to the Agreement and the Settlement Agreement, SEI has been damaged in an amount to be proven at trial, but reasonably believed to exceed $7,500,000.

### THIRD CLAIM FOR RELIEF
(Breach of Agreement (as amended) and Settlement Agreement)

44.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 43 of this Amended Complaint as if fully set forth herein.

45.     TVP has further breached the Agreement (as amended) and the Settlement Agreement, and its implied covenant of good faith and fair dealing by, among other things, depriving SEI of its exclusive right to distribute *TV Polonia* programming in the United States by removing the long-running and popular television series *Klan* from *TV Polonia* for the purpose of licensing and distributing this very same programming content to SEI's direct competitor for distribution in the Territory.

46.     TVP took such action in response to SEI's claims that TVP had breached the Agreement and Settlement Agreement by licensing *TV Polonia* programming content to Polvision, and in an effort to frustrate SEI's claims to protect its contractual exclusive distribution rights and to further deprive SEI of the fruits of the parties' agreements.

47.      As a direct and proximate result of TVP's aforesaid breaches of the Agreement and Settlement Agreement, SEI has been damaged in an amount to be proven at trial, but reasonably believed to exceed $10,000,000.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Spanski Enterprises, Inc. seek relief and demands judgment against Defendant Telewizja Polska S.A. as follows: (a) Awarding SEI compensatory damages against TVP for breach of contract in an amount to be proven at trial, including SEI's actual damages and any profits received by TVP as a result of the TVP's contractual breaches alleged herein, reasonably believed to exceed $22,500,000; and (b) Awarding SEI its costs, prejudgment interest, attorneys' fees and such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
      October 1, 2010

Respectfully submitted,

By: _____
    Jonathan Zavin (JZ-1846)
     John A. Piskora (JP-1224)
    345 Park Avenue
    New York, NY 10154
    Main: (212) 407-4000
    Fax: (212) 407-4990

*Attorneys for Plaintiff*
*Spanski Enterprises, Inc.*

A-30

Jonathan Zavin (JZ-1846)
John A. Piskora (JP-1224)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Main: (212) 407-4000
Fax: (212) 407-4990

*Attorneys for Plaintiff*
*Spanski Enterprises, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
SPANSKI ENTERPRISES, INC.,                             :
                                                       :
                         Plaintiff,                    :        10 CV 4933
                                                       :
              v.                                       :
                                                       :
TELEWIZJA POLSKA S.A.,                                 :    **PLAINTIFF'S FIRST REQUEST FOR**
                                                       :    **THE PRODUCTION OF DOCUMENTS**
                         Defendant.                    :
                                                       :
-------------------------------------------------------X

PLEASE TAKE NOTICE THAT, pursuant to Rule 34 of the Federal Rules of

Civil Procedure and the Local Rules for the Southern District of New York, Plaintiff Spanski

Enterprises, Inc. ("SEI"), by its attorneys, Loeb & Loeb LLP, hereby request and demand that

Defendant Telewizja Polska S.A. ("TVP") produce the documents requested below which are in

its possession, custody or control for inspection and copying at the offices of Loeb & Loeb LLP,

located at 345 Park Avenue, New York, New York 10154, within thirty (30) days.

## INSTRUCTIONS

1.     Unless otherwise specifically provided, these Document Requests shall

concern the period from January 1, 2009 to the present.

NY887459.1
209881-10007

A-31

2.     Documents produced for inspection must be produced as they are kept in the usual course of business or labeled to correspond with the categories in this request.

3.     The definitions and rules of construction set forth in Rule 34(a) of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York are expressly incorporated herein by reference and shall be applicable to these Document Requests.

4.     In accordance with Rule 26 of the Federal Rules of Civil Procedure, these Document Requests are continuing in nature so as to require you to provide a supplemental response if you locate or obtain possession, custody or control of such additional information and/or responsive documents at any time prior to trial.

5.     In responding to the Document Requests, Defendant is required to furnish all documents that are available to it, including documents in the possession, custody or control of its current or former attorneys, officers, directors, agents, employees, representatives, or any other persons or entities directly or indirectly employed by or connected with Defendant, or subject to Defendant's control.

6.     If Defendant objects to the production of any document based on a claim of any privilege or a claim that such documents constitute attorney work product, Defendant is hereby requested to provide the information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Civil Rule 26.2, including the following information:  (a) the date of the document; (b) the name of the document's originator; (c) the name of the person(s) to whom it is addressed, and the names of all person(s) who were shown copies or to whom copies were distributed; (d) a general physical description of the type of document, and the subject matter to

which it pertains; (e) the document's current custodian; and (f) the precise grounds on which the claim of privilege or other objection to production is based.

      7.    Each request for documents seeks production of the document in its entirety, without abbreviation or redaction. If any information is redacted from a document, clearly mark the redacted document with the words "REDACTED," and state the basis for the redaction of the information and, if applicable, comply with Local Civil Rule 26.2 with respect to the redacted information.

## DEFINITIONS

      8.    "Agreement" means that certain agreement dated as of December 14, 1994 between TVP and SEI.

      9.    "First Addendum" means that certain agreement dated as of November 4, 1999 between TVP and SEI.

      10.    "Porozumienie" means that certain Polish-language agreement between TVP and SEI, executed by representatives of TVP (by Maria Nadolna) and SEI on or about November 24, 2010, and concerning TVP's payment of the November 23, 2009 Judgment entered in the action captioned *Spanski Enterprises, Inc., et al. v. Telewizja Polska S.A., et al.* (S.D.N.Y. Index No. 07 CV 930).

      11.    "Polvision" means Polvision Chicago's Polish Television Station (d/b/a www.polvision.com and broadcasting on the Polvision digital channel 24.4), and its current and former officers, directors, partners, members, agents, employees, parents, subsidiaries and affiliates.

      12.    "Second Addendum" means that certain agreement dated April 29, 2002 between TVP and SEI.

**A-33**

13.     "Settlement Agreement" means that certain agreement dated August 11, 2009 between TVP and SEI.

14.     "SEI" means Plaintiff Spanski Enterprises, Inc. and its current and former officers, directors, partners, members, agents, employees, parents, subsidiaries and affiliates including, but not limited to, Spanski.

15.     "Spanski" means Boguslaw "Bob" Spanski.

16.     "Territory" means North America and South America, as identified and defined in the Agreement.

17.     "TVP" means Defendant Telewizja Polska S.A., its current and former officers, directors, partners, members, agents, employees, parents, subsidiaries and affiliates.

## DOCUMENTS REQUESTED

**Request No 1.**          Complete and fully executed copies of the Porozumienie.

**Request No 2.**          For the period from January 1, 2005 to the present, complete and fully executed copies of all agreements (including but not limited to any license, sub-license, extension thereof or settlement agreement) between TVP and Polvision, as well as all drafts thereof.

**Request No 3.**          For the period from January 1, 2005 to the present, complete and fully executed copies of all agreements (including but not limited to any license or sub-license agreement, as well as any extension thereof) between TVP and any other party concerning the broadcast or distribution in the Territory of any programming content (including all current content and/or previously broadcast content) of TVP's television channels *TVP Polonia* or *TVP Info*, including but not limited to the television programs *Plebania*; *Klan*; *Na Dobre i na Zle*; *Zlotopolscy;* and *M jak Milosc*.

A-34

**Request No 4.**      From January 1, 2005 to the present, all documents concerning TVP's efforts to exploit any programming content of TVP's television channels *TVP Polonia* and/or *TVP Info* (including, but not limited to, other TVP channels that contain programming the past, current or future programming content of *TVP Polonia* and /or *TVP Info*) in the Territory including, but not limited to, all documents (*e.g.,* communications, notes, minutes of meetings, board meeting minutes and/or resolutions) concerning negotiations, discussions, or contacts with possible licensees in the Territory.

**Request No 5.**      All meeting notes and/or minutes of meetings (including board minutes) concerning SEI, Polvision, the Settlement Agreement and/or the Porozumienie.

**Request No 6.**      All internal TVP communications and/or memoranda concerning SEI.

**Request No 7.**      All internal TVP communications and/or memoranda concerning the allegations raised in SEI's original Complaint and/or Amended Complaint in this action.

**Request No 8.**      All internal TVP communications and/or memoranda concerning SEI's pre-litigation claims that TVP breached the Agreement, First Addendum, Second Addendum, and/or Settlement Agreement by entering into a license agreement (including any extension thereof) with Polvision and/or by providing programming content to Polvision.

**Request No 9.**      From 1994 to the present, all internal TVP communications and/or memoranda concerning Polvision.

**Request No 10.**      All internal TVP communications and/or memoranda concerning TVP's decision to remove the program *Klan* from the *TVP Polonia* channel.

**Request No 11.**      All internal TVP communications and/or memoranda concerning TVP's decision to license the distribution of the programs *Plebania*; *Klan*; *Na Dobre i na Zle*; *Zlotopolscy*; and/or *M jak Milosc* to Polvision.

**A-35**

**Request No 12.** All communications reflecting complaints from consumers and/or viewers of *TVP Polonia* concerning the removal of the program *Klan* from the *TVP Polonia* channel.

**Request No 13.** From 1994 to the present, all communications between TVP and Polvision.

**Request No 14.** All communications between TVP and SEI concerning Polvision.

**Request No 15.** All communications and notes of meetings between TVP and SEI concerning the Porozumienie and/or the negotiation and/or the execution of the Porozumienie.

**Request No 16.** All documents reflecting or constituting any payment made to TVP pursuant to the terms of the Agreement, First Addendum, and/or Second Addendum.

**Request No 17.** All documents reflecting or constituting any payment made by TVP to SEI pursuant to the Porozumienie.

**Request No 18.** All documents reflecting or constituting any payment made by Polvision to TVP.

**Request No 19.** Documents sufficient to establish the specific programming content of TVP's television channel *TVP Polonia* from January 1, 2009 to the present.

**Request No 20.** All communications between TVP and SEI concerning actual or potential third-party infringers of SEI's exclusive distribution rights in the Territory (and, in the case of certain Internet infringers, TVP's rights outside the Territory).

**Request No 21.** All internal TVP communications and/or memoranda concerning actual or potential third-party infringers of SEI's exclusive distribution rights in the Territory (and, in the case of certain Internet infringers, TVP's rights outside the Territory).

**Request No 22.** Documents stating, or otherwise sufficient to establish, the names of each of TVP's officers and directors for the period from January 1, 2009 to the present.

A-36

**Request No 23.** All documents concerning TVP's claim (as stated in its Answer to Amended Complaint and Counterclaims) that SEI has breached its obligations under the Agreement, First Addendum, Second Addendum and/or Settlement Agreement, including but not limited to all documents concerning TVP's claim that SEI has failed to pay TVP royalties.

**Request No 24.** All documents concerning TVP's purported damages, as well as the calculation thereof.

**Request No 25.** Any statements, formal or informal, obtained from any third-party witness or potential witness concerning the claims, counterclaims, and/or defenses raised in this action.

**Request No 26.** A copy of each document and thing that Defendant intends to rely upon in this action to support its defenses and/or counterclaims.

Dated: New York, New York
     March 3, 2011

By: _____
     Jonathan Zavin (JZ-1846)
     John A. Piskora (JP-1224)
     345 Park Avenue
     New York, NY 10154
     Main: (212) 407-4000
     Fax: (212) 407-4990

     *Attorneys for Plaintiff and Counterclaim Defendant Spanski Enterprises, Inc.*

A-37

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                  :

SPANSKI ENTERPRISES, INC.,         :
                                  :

                        Plaintiff,     :  Case No.: 10-4933 (RMB)
                                  :

               v.                  :
                                  :

                                  :

TELEWIZJA POLSKA, S.A.,        :
                          Defendant.    :
------------------------------------------------------------------x

## DEFENDANT'S FIRST REQUEST
## FOR THE PRODUCTION OF DOCUMENTS

      Defendant Telewizja Polska, S.A. ("TVP") through its undersigned attorneys DLA Piper

LLP (US) hereby requests, pursuant to Rule 34 of the Federal Rules of Civil Procedure and the

Local Rules of the Southern District of New York, that Plaintiff Spanki Enterprises, Inc. ("SEI")

produce the documents requested below which are in its possession, custody, or control at the

offices of DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020,

within thirty days.

## INSTRUCTIONS

      1.      In responding to the document requests, SEI shall furnish all documents in the

possession of its directors, officers, employees, agents, representatives, investigators, lawyers,

accountants, or any other parties acting on its behalf, not merely within the possession or control

of the person or persons responding to the requests.

      2.      If SEI cannot respond to any document request in full after exercising due

diligence to secure the documents requested, or does not have precise documents with respect to

any part of a request, describe in full SEI's efforts to obtain the documents requested, and

respond to the extent possible.

3.      If SEI has withheld any document requested or redacted part of any document requested based upon any privilege including that of attorney-client or attorney work product: (a) identify the privilege; (b) identify the date of the document or date on which the information was communicated; (c) identify the originator of the document or communicator of the information, the person to whom the document was addressed or information was transmitted and all persons who received the documents or information; and (d) describe the type of document or information transmitted and the subject matter to which it pertains.

4.      The requests shall be deemed continuing, so as to require prompt further and supplemental production if SEI receives, locates or generates additional documents called for herein between the time of original production and the entry of judgment in this action.

## DEFINITIONS

Unless otherwise specified, the following definitions shall apply:

1.      "SEI" refers to Plaintiff SEI and its affiliated entities, parent and subsidiary companies, any acquirer or acquired entities, and principals, employees, servants and agents of SEI and its affiliated entities and parent and subsidiary companies.

2.      "TVP" refers to Defendant TVP and its affiliated entities, parent and subsidiary companies, any acquirer or acquired entities, and principals, employees, servants and agents of TVP and its affiliated entities and parent and subsidiary companies.

3.      "Documents and Communications" shall mean all written and recorded information of any kind, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copies or deletions from such copies or otherwise (including without limitation, emails, letters, text messages, instant message conversations, reports, records, memoranda, notes, diaries, letters, statistics, telegrams, minutes, contracts, studies, checks, statements, receipts, compilations, summaries, pamphlets, books, notations of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, worksheets and all drafts, alterations,

2

changes and amendments of any kind, photographs, charts, drawings or graphs, videotape, records, motion pictures and electronic, mechanical or electrical records, tapes, cassettes, discs or representations of any kind).

4.       The term "relating to" means concerning, constituting, containing, arising from, dealing with, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, referring to, setting forth, stating, summarizing, analyzing, supporting, or in any way pertaining to the subject matter of the relevant request.

5.       The term "Territory" refers to North America and South America, each individually and collectively.

6.       The use of the singular form of any word includes the plural and vice versa.

7.       The relevant time period for the requests below is December 1, 1994 through the present, unless indicated otherwise in any particular request.

**Documents Requested**

1.       All documents and communications between SEI and TVP relating to the broadcast or distribution of TVP programming in the Territory, SEI's rights and obligations relating to the broadcast or distribution of TVP programming in the Territory, and any agreements between SEI and TVP concerning the broadcast or distribution of TVP programming in the Territory.

2.       All documents and communications, internally at SEI, and between SEI and any third party, including without limitation SEI's subsidiaries, affiliates, contractors, competitors, and any regulatory authorities in the Territory, relating to the broadcast or distribution of TVP programming in the Territory and SEI's rights and obligations relating to the same.

3.       All documents and communications, including without limitation, all court filings, concerning any dispute between SEI and any third party relating to the broadcast or distribution of TVP programming in the Territory and SEI's rights and obligations relating to the same.

4.    All documents and communications, including without limitation, SEI's internal documents and communications, relating to SEI's organizational structure, and hiring of executives and employees to perform its obligations under any agreement with TVP.

5.    All documents and communications relating to income or revenue earned by SEI, its subsidiaries, and owners, and any payments made by or to SEI, its subsidiaries, and owners, relating to any broadcast or distribution of TVP programming in the Territory by SEI or any third party, including without limitation all invoices, account statements, payment records, and quarterly and annual financial reports prepared by SEI or its agents for TVP or any other entity, or quarterly and annual financial reports prepared by any third party for SEI.

6.    All documents and communications relating to SEI's methods and technical capacity to distribute TVP programming in the Territory, including without limitation, all documents and communications relating to SEI's internal and external technical resources, infrastructure facilities, and interactions with contractors, distributors, service-providers, and platform owners relating to the broadcast or distribution of TVP programming in the Territory.

7.    All documents and communications constituting or relating to any allegation, notice, subpoena, or request of any Polish court or law enforcement authority concerning the negotiation or execution of any agreement between TVP and SEI, and any performance by SEI under any such agreement, including the broadcast or distribution of TVP programming in the Territory.

8.    All documents and communications relating to the negotiation and signature of the parties' August 11, 2009 settlement agreement, including all documents and communications relating to any discussions or negotiations concerning the signature of a long-form agreement as contemplated by that agreement.

9.    All documents and communications relating to SEI's purported demand that Polvision cease and desist from distributing *TV Polonia* programming.

10.    All documents and communications relating to any damages allegedly suffered by SEI arising from the August 31, 2009 licensing agreement between TVP and Polvision.

4

11.　　All documents and communications between SEI and Polvision, or SEI and any third party, relating to the August 31, 2009 licensing agreement between TVP and Polvision.

12.　　All documents and communications relating to the *Klan* program, including without limitation, all documents relating to the viewership in the Territory of the *Klan* program and all documents relating to any opinions, complaints or other communications between SEI or third parties, and from viewers of the *Klan* program or others.

13.　　All documents and communications relating to any disputes or claims between SEI, and IMB+ Records Inc., and its affiliates or representatives, including any contemplated or actual proceedings initiated by SEI or its agents or affiliates against any purported infringement of SEI's alleged distribution rights, including the proceedings pending before the Ontario Superior Court of Justice (No. 10-CV-413950) between SEI, IMB+ Records Inc., and other entities.

14.　　All documents and communications relating to any requests by SEI to TVP concerning potential or actual infringement of SEI's distribution rights of TVP programming, including without limitation all documents and communications relating to SEI's requests to TVP to join any court proceedings relating to the distribution of TVP programming in the Territory.

15.　　All documents and communications concerning SEI's performance of its obligations under the parties' December 14, 1994 agreement, as amended by addenda dated November 4, 1999 and April 29, 2002, including without limitation, all documents relating to marketing and advertising revenues earned by SEI, calculations of royalties owed to TVP, and all payments made by SEI to TVP pursuant to those agreements.

16.　　All documents and communications relating to SEI's performance of its obligations under the parties' August 11, 2009 settlement agreement, including without limitation, all documents and communications relating to marketing and advertising revenues earned by SEI, calculations of royalties owed to TVP, and all payments made by SEI to TVP pursuant to that agreement.

A-42

17.     All documents and communications relating to broadcast and distribution of *TVP Polonia*, *TVP Info*, or any other TVP programming, in South America, in any format, including via the Internet, including without limitation, all agreements with contractors and distributors, all documents and communications relating to expenditures for marketing and advertising TVP programming in South America, all documents and communications relating to expenditures for utilities and technical and infrastructure facilities, all invoices, account statements and financial reports, and all documents and communications concerning the number of South American subscribers to any Internet-based distribution of TVP programming in South America.

18.     All documents and communications relating to any complaints received by SEI from any person or entity concerning SEI's broadcasting of TVP programming in the Territory or concerning SEI's fees relating to such broadcasting.

19.     All documents and communications relating to the availability of *TVP Polonia* and *TVP Info* in the Territory, including documents and communications describing the geographic areas where such programming is distributed by SEI and the areas where such programming is not distributed.

20.     All documents and communications relating to SEI's efforts to expand the availability of TVP programming in the United States and throughout the Territory, including without limitation, all documents and communications relating to marketing and advertising *TVP Polonia* and *TVP Info* throughout the Territory and any efforts to increase SEI's distribution capabilities, directly or indirectly, in all formats, including satellite, cable and internet.

21.     All documents and communications relating to SEI's efforts to create its own programming and broadcasting of such programming in the Territory, including all documents and communications relating to SEI's technical and infrastructure capability to create and distribute or broadcast its own programming.

22.     All documents and communications relating to any request by any person or entity to SEI concerning any potential or actual arrangement between such person or entity, and

SEI, or between any such person or entity, and TVP, concerning the distribution of TVP programming in the United States and elsewhere in the Territory.

23.     All documents and communications relating to Broadcast Music, Inc. ("BMI"), including all amounts paid by SEI to BMI.

24.     All documents and communications relating to SEI's claims in its Amended Complaint, including its claims for damages.

25.     All documents, communications, or anything else, that SEI intends to reply upon in this action to support its claims and defenses.


Dated: New York, New York
        March 30, 2011

                                      DLA PIPER LLP (US)

                                      By:  /s/David Wenger
                                            Stanley McDermott III
                                            David Wenger
                                      1251 Avenue of the Americas
                                      New York, New York  10020-1104
                                      (212) 335-4500
                                      stanley.mcdermott@dlapiper.com
                                      david.wenger@dlapiper.com

                                      *Counsel for TVP*

A-44

Jonathan Zavin (JZ-1846)
John A. Piskora (JP-1224)
LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Main: (212) 407-4000
Fax: (212) 407-4990

*Attorneys for Plaintiff*
*Spanski Enterprises, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                     :

SPANSKI ENTERPRISES, INC.,
                     :

        Plaintiff,            10 CV 4933
                     :

        v.                :

                     :   **PLAINTIFF'S SECOND REQUEST FOR**
TELEWIZJA POLSKA S.A.,       **THE PRODUCTION OF DOCUMENTS**
                     :

        Defendant.         :

                     :
------------------------------------------------------- X

       PLEASE TAKE NOTICE THAT, pursuant to Rule 34 of the Federal Rules of

Civil Procedure and the Local Rules for the Southern District of New York, Plaintiff Spanski

Enterprises, Inc. ("SEI"), by its attorneys, Loeb & Loeb LLP, hereby request and demand that

Defendant Telewizja Polska S.A. ("TVP") produce the documents requested below which are in

its possession, custody or control for inspection and copying at the offices of Loeb & Loeb LLP,

located at 345 Park Avenue, New York, New York 10154, within thirty (30) days.

## INSTRUCTIONS

       1.     Unless otherwise specifically provided, these Document Requests shall

concern the period from January 1, 2007 to the present.

A-45

2.      Documents produced for inspection must be produced as they are kept in the usual course of business or labeled to correspond with the categories in this request.

3.      The definitions and rules of construction set forth in Rule 34(a) of the Federal Rules of Civil Procedure and Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York are expressly incorporated herein by reference and shall be applicable to these Document Requests.

4.      In accordance with Rule 26 of the Federal Rules of Civil Procedure, these Document Requests are continuing in nature so as to require you to provide a supplemental response if you locate or obtain possession, custody or control of such additional information and/or responsive documents at any time prior to trial.

5.      In responding to the Document Requests, Defendant is required to furnish all documents that are available to it, including documents in the possession, custody or control of its current or former attorneys, officers, directors, agents, employees, representatives, or any other persons or entities directly or indirectly employed by or connected with Defendant, or subject to Defendant's control.

6.      If Defendant objects to the production of any document based on a claim of any privilege or a claim that such documents constitute attorney work product, Defendant is hereby requested to provide the information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure and Local Civil Rule 26.2, including the following information: (a) the date of the document; (b) the name of the document's originator; (c) the name of the person(s) to whom it is addressed, and the names of all person(s) who were shown copies or to whom copies were distributed; (d) a general physical description of the type of document, and the subject matter to

**A-46**

which it pertains; (e) the document's current custodian; and (f) the precise grounds on which the claim of privilege or other objection to production is based.

7.    Each request for documents seeks production of the document in its entirety, without abbreviation or redaction.  If any information is redacted from a document, clearly mark the redacted document with the words "REDACTED," and state the basis for the redaction of the information and, if applicable, comply with Local Civil Rule 26.2 with respect to the redacted information.

## DEFINITIONS

8.    "Agreement" is used in the broadest sense, and includes, but is not limited to, a contract, license, barter, arrangement, or understanding, formal or informal, oral or written, between two or more persons or entities.

9.    "Polvision" means Polvision Chicago's Polish Television Station (d/b/a www.polvision.com and broadcasting on the Polvision digital channel 24.4), and its current and former officers, directors, partners, members, agents, employees, parents, subsidiaries and affiliates.

10.    "SEI" means Plaintiff Spanski Enterprises, Inc. and its current and former officers, directors, partners, members, agents, employees, parents, subsidiaries and affiliates including, but not limited to, Spanski.

11.    "TVP" means Defendant Telewizja Polska S.A., its current and former officers, directors, partners, members, agents, employees, parents, subsidiaries and affiliates.

## DOCUMENTS REQUESTED

**Request No 1.**    For the period from January 1, 2005 to the present, complete and fully executed copies of all Agreements (including but not limited to any barter agreement, license,

sub-license, extension thereof or settlement agreement) between TVP and Polvision, as well as all drafts thereof.  (See also First Request for Documents at Request No. 2).

**Request No 2.**        Complete and fully executed copies of all Agreements (including but not limited to any barter agreement, license or sub-license agreement, as well as any extension thereof) between TVP and EULive, EULive Broadcasting and/or EULiveTV (including their parents, subsidiaries and affiliates) concerning the distribution of any TVP programming content. (See also First Request for Documents at Request No. 3).

**Request No 3.**        Complete and fully executed copies of all Agreements (including but not limited to any license or sub-license agreement, as well as any extension thereof) between TVP and Roku, Inc. (including its parents, subsidiaries and affiliates) concerning the distribution of any TVP programming content.  (See also First Request for Documents at Request No. 3).

**Request No 4.**        Complete and fully executed copies of all Agreements (including but not limited to any license or sub-license agreement, as well as any extension thereof) between TVP and Redefine Sp. and/or Redefine Sp. z o.o, doing business as www.ipla.pl, (including their parents, subsidiaries and affiliates) concerning the distribution of any TVP programming content. (See also First Request for Documents at Request No. 3).

**Request No 5.**        Complete and fully executed copies of all Agreements (including but not limited to any license or sub-license agreement, as well as any extension thereof) between TVP and TVN or any other party concerning the TVP programs "Czterej pancerni i pies" or "Stawka wieksza niz zycie" and/or any other programming content (including series and/or mini-series) licensed by TVP to third-party broadcasters or distributors.

**Request No 6.**        All internal TVP communications and/or memoranda concerning TVP's decision to remove the program *Klan* from the *TVP Polonia* channel, including but not limited to

A-48

the letter referred to in TVP 00291 (from Maria Nadolna, with TVP reference no.: BWK/MN/275/2011) including all drafts thereof. (See also First Request for Documents at Request No. 10).

**Request No 7.**    From 1998 to the present, all communications between TVP and Polvision, including but not limited to documents concerning all payments made by Polvision to TVP. (See also First Request for Documents at Requests Nos. 13 and 18).

**Request No 8.**    Documents sufficient to establish the specific programming content of TVP's television channel *TVP Polonia* from January 1, 2007 to the present. (See also First Request for Documents at Requests No. 19).

**Request No 9.**    All documents concerning actual or potential third-party infringement of SEI's exclusive distribution rights in the Territory (and, in the case of certain Internet infringers, TVP's rights outside the Territory), including all internal TVP communications and/or memoranda concerning such actual or potential third-party infringement, and all documents concerning any action taken by TVP to combat or prevent any such actual or potential infringement. (See also First Request for Documents at Requests Nos. 20 and 21).


Dated: New York, New York
      December 28, 2011

By: _____
    Jonathan Zavin (JZ-1846)
    John A. Piskora (JP-1224)
    345 Park Avenue
    New York, NY 10154
    Main: (212) 407-4000
    Fax: (212) 407-4990

    *Attorneys for Plaintiff and Counterclaim*
    *Defendant Spanski Enterprises, Inc.*

A-49

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------- X
                                   :

SPANSKI ENTERPRISES, INC.,
                                   :

         Plaintiff,                   :          10 Civ. 4933 (ALC)(GWG)

            -against-               :          **JOINT PRE-TRIAL ORDER**

                                     :

TELEWIZJA POLSKA, S.A.,
                                   :

         Defendant.               :

----------------------------------------------------- X

         Pursuant to Rule 16 of the Federal Rules of Civil Procedure and Rule 5.A of this Court's Individual Rules of Practice, the parties have conferred and hereby submit the following Joint Pretrial Order:

**I.**      **Caption**:  The full caption of this action is set forth above.

**II.**     **Trial Counsel**:

         A.      Trial counsel for Plaintiff Spanski Enterprises, Inc. ("SEI"):

                Jonathan Zavin        212-407-4161       jzavin@loeb.com
                John A. Piskora      212-407-4082       jpiskora@loeb.com
                Michael Barnett      212-407-4163       mbarnett@loeb.com
                LOEB & LOEB LLP
                345 Park Avenue
                New York, New York 10154-0037
                (212) 407-4000
                fax (212) 407-4990

         B.      Trial counsel for Defendant Telewizja Polska, S.A. ("TVP"):

                Stanley McDermott III    212-335-4790       stanley.mcdermott@dlapiper.com
                David S. Wenger       212-335-4702       david.wenger@dlapiper.com
                DLA PIPER LLP (US)
                1251 Avenue of the Americas
                New York, NY 10020-1104
                (212) 335-4500
                fax: (212) 884-8602

III.    <u>**Subject Matter Jurisdiction**</u>: The parties stipulate that this Court has jurisdiction over the subject matter of this action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1603(a)-(b), and 1605(a)(1)-(2), as Defendant TVP has engaged in commercial activity within the United States and has otherwise waived immunity by expressly agreeing to litigate any and all contractual disputes before this Court.

IV.    <u>**Summary of Claims and Defenses to be Tried**</u>:

     A.    Plaintiff's Summary of Claims to be Tried

         1.    Claims to be tried:

             Plaintiff SEI has asserted the following breach of contract claims (concerning the parties' December 14, 1994 written agreement (the "Agreement," as amended by a November 4, 1999 First Addendum and an April 29, 2002 Second Addendum), as well as an August 11, 2009 written settlement agreement (the "Settlement Agreement")) against Defendant TVP which remain to be tried:

             (a)    Breach of contract (Amended Complaint, "First Claim for Relief") arising from TVP's licensing and distribution of certain Polish-language television content to one of SEI's competitors in the United States in violation of SEI's exclusive distribution rights under the Agreement and Settlement Agreement, for which SEI seeks damages;

             (b)    Breach of contract (Amended Complaint, "Second Claim for Relief"), arising from TVP failure to assist and provide support for SEI's actions to protect its exclusive distribution rights in the Territory, and TVP's negotiations and support for an infringer of SEI's exclusive distribution rights, in breach of the parties' First Addendum, Settlement Agreement, and the implied covenant of good faith and fair dealing thereunder, for which Plaintiff seeks damages; and

             (c)    Breach of contract (Amended Complaint, "Third Claim for Relief"), arising from TVP's removal of the long-running and popular television series *Klan* from the television channel TVP exclusively licensed to SEI for distribution in North and South America such that TVP could purportedly justify its licensing and distributing of this very same programming content to SEI's direct competitor, in breach of the parties' Agreement, Settlement Agreement, and the implied covenant of good faith and fair dealing thereunder, for which Plaintiff seeks damages.

         2.    Previously asserted claims not to be tried: None.

NY1168125.3
209881-10007

A-51

B.    Defendant's Summary of Defenses

1.    Defenses to be tried:

(a) SEI's Polvision Claim

TVP did not breach the parties' Agreement or Settlement Agreement through the three agreements TVP entered with Polvision: (a) the June 2008 Polvision Agreement; (b) the August 31, 2009 Polvision Licensing Agreement; and (c) the July 2010 Polvision Annex (the "Polvision Agreements").

TVP's defense applicable to all the Polvision Agreements is that the Agreement and the Settlement Agreement did not prevent TVP from licensing individual *TVP Polonia* programming to Polvision. Clause E of the Settlement Agreement only prevented TVP from distributing other channels with the same programming content as *TVP Polonia*.

TVP also has specific defenses to the claims concerning each of the Polvision Agreements:

(a)    As to the June 2008 Polvision agreement, when that agreement was signed, there was no restriction on TVP licensing re-runs of the licensed episodes to Polvision.

(b)    As to the August 31, 2009 Polvision Licensing Agreement, TVP signed that agreement on July 2, 2009, more than a month before it signed the Settlement Agreement. When Polvision countersigned the August 31, 2009 Licensing Agreement after TVP had signed the Settlement Agreement, TVP in good faith (despite disagreeing with SEI's interpretation of Clause E) immediately began to renegotiate the August 31, 2009 Polvision Licensing Agreement to replace the licensed episodes.

(c)    As to the July 2010 Polvision Annex, the episodes included in the July 2010 Annex never appeared on *TVP Polonia*. SEI has rights to individual episodes, if at all, only to episodes actually broadcast on *TVP Polonia*.

As to the damages SEI alleges for its Polvision claim, SEI has abandoned the earlier implausible lost subscribers theory described in its Interrogatory Responses, and instead advances various alternative lost profits theories. SEI's three new alternative damages theories seek lost profits based on the values of the individual episodes in the Polvision agreements. All these theories are fatally flawed because SEI had no right under the Agreement or the Settlement Agreement to syndicate individual TVP programming content to other networks. And in the 18 years since the parties entered into the Agreement, SEI has never done so.

3

NY1168125.3
209881-10007

Furthermore, SEI's damages theories rely on improper high-end values for various inputs used to determine SEI's claimed per-episode values to support its lost profits claim.

SEI's first theory, its industry-standard market value theory, improperly relies upon incorrect pricing for advertising, an implausible 100-percent advertising time sellout rate, no volume discounts, and marked-up per-episode acquisition costs that Polvision would not have spent to purchase the episodes from SEI.

SEI's second damages theory, the stated-market value theory, improperly uses greater episode values than the values assigned in the TVP/Polvision agreements.

For all of its theories, SEI improperly includes claims for episodes Polvision broadcast prior to the Settlement Agreement, and claims for episodes that were part of the July 2010 Polvision Annex which TVP never broadcast on *TVP Polonia*.

### (b) SEI's Unauthorized Distributor Claim

SEI has no claim arising from TVP's alleged failure to join SEI's litigation in Canada against an unauthorized distributor of TVP content. In the 1999 Addendum to the 1994 Agreement, TVP appointed SEI as its representative in the Territory to protect against infringement, and SEI is fully capable of doing so without TVP joining that litigation. TVP has offered to provide SEI with whatever information SEI needs to pursue its claim. TVP decided not to join the Canadian litigation because, among other things, the extent of SEI's distribution rights, which is disputed by TVP, is likely to be a central issue in that case.

SEI seeks reimbursement from TVP for all its legal expenses for the Canadian litigation. Nowhere in the Agreement or the Settlement Agreement did TVP agree to pay SEI's attorney's fees for such actions.

### (c) SEI's Klan Claim

SEI has no claim arising from TVP's decision to remove the *Klan* program from its *TVP Polonia* programming lineup. TVP has complete control over its programming decisions, and SEI has no control over such decisions. In the Agreement, TVP specifically "reserved the right to make changes to the TV Polonia programming." Nothing in the Agreement or the Settlement Agreement gives SEI any control over TVP's programming decisions. SEI's website acknowledges that SEI has no control over the content on *TVP Polonia*.

TVP decided to remove the *Klan* program along with other programming from *TVP Polonia* during its Spring 2010 bi-annual review of *TVP Polonia* programming, before SEI filed its complaint concerning the August 31, 2009 Polvision Licensing Agreement. TVP made these changes to free up time for programming required by the Ministry of Foreign Affairs and to generate greater viewing audiences among the critical

NY1168125.3
209881-10007

18 to 49-year-old age group. TVP's editorial process was consistent with typical industry-standard decision-making on updating programming content, particularly due to a generally declining interest in long-running soap operas.

As to SEI's claim for damages resulting from a diminished subscriber growth rate, SEI cannot link any diminished growth in subscribers to the removal of *Klan* from *TVP Polonia*. SEI has abandoned its lost subscribers damages theory for the Polvision claim because it could not show any causal link between TVP's actions and subscriber behavior.

The same causation problem is fatal to SEI's damages theory for its *Klan* claim, for many reasons. First, SEI ignores all of the other reasons subscribers cancel or do not subscribe, such as normal customer attrition. Second, customers do not cancel or not subscribe because of one show. Third, if subscribers would have reacted to the removal of *Klan*, they would have done so within 60 days of its removal from *TVP Polonia*, not for the extended cancellation period used by SEI. Fourth, SEI's calculation of net additional subscribers fails to account for subscriber changes due to changes to SEI's distribution network. Fifth, SEI's diminished growth rate theory ignores SEI's net gain of 2,647 subscribers during its damages period. Sixth, SEI fails to account for different behaviors by television and internet subscribers. Finally, SEI's failure to support its case with cookies showing viewer histories (which are available to SEI) confirms SEI's inability to attribute any alleged diminished subscriber growth rate to the removal of *Klan*.

C.    Defendant's Summary of Counterclaims

    1.    Claims to be tried:

TVP's counterclaim seeks damages for SEI's breach of the Agreement owing to SEI's failure to maximize subscribers to TVP's Polish-language television programming via satellite, cable, and Internet distribution. Included in this claim is SEI's failure to address material deficiencies in the website through which SEI distributes TVP's programming content. TVP's industry expert has assessed the level of subscribers SEI should have achieved given the market for Polish-language television, and has concluded that SEI has failed to achieve adequate market penetration levels. TVP's damages expert has calculated the resulting damages to TVP.

    2.    Previously asserted Counterclaims not to be tried:

        (a)    Rescission of the parties' Agreements.

        (b)    TVP's claims for damages relating to SEI's underreporting of subscriber revenues.

        (c)    To the extent damages arise before the parties' August 11, 2009 Settlement Agreement, TVP's claim for SEI's failure to maximize subscribers.

NY1168125.3
209881-10007

D.    Plaintiff's Summary of Defenses to Counterclaims:

1.    Defenses to be tried:

TVP cannot establish its counterclaim for the alleged "failure to maximize subscribers" because SEI has no such express or implied contractual obligation to maximize subscribers (as compared to an implied contractual obligation to use reasonable efforts). Further, TVP has no evidence whatsoever as to any purported lack of resonable efforts by SEI, and no admissible evidence that the number of subscribers were not maximized (which they were). Similarly, TVP cannot establish any claim based upon alleged "material deficiencies" in SEI's website, because (1) the parties' Agreement (as amended) does not require SEI to maintain an Internet website at all, let alone any specific type of website, but rather specifically provides that "Decisions as to distribution technologies for Program broadcast within the Territory will be at the sole discretion of SEI;" and (2) there were no material deficiencies in the website in any event. In addition, SEI asserts the following defenses to be tried:

(a)    The counterclaims and alleged damages related thereto are barred by the Parties' Agreement (as amended), and TVP's material breaches thereof, as well as TVP's failure to comply with the Agreement's notice and cure provisions (an express condition precedent);

(b)    The counterclaims and alleged damages related thereto are barred by TVP's representation in the Settlement Agreement of SEI material compliance with the Agreement (as amended), and by the doctrines of estoppel, laches, waiver, consent, ratification and/or acquiescence;

(c)    The counterclaims are barred because TVP has not suffered any cognizable damages;

(d)    The counterclaims and alleged damages related thereto are barred because TVP has failed to mitigate any damages; and

(e)    The counterclaims are subject to offset in any event.

2.    Previously asserted defenses to Counterclaims not to be tried:

(a)    SEI's defenses that TVP's counterclaims are barred, in whole or in part, by applicable statutes of limitation and/or by settlement and release need not be tried in light of this Court's summary judgment Decision and Order.

(b)    SEI's equitable defense of unclean hands need not be tried in light of TVP's withdrawal of its equitable claim.

NY1168125.3
209881-10007

A-55

**V. Finder of Fact:** The parties stipulate that this action shall be tried to the Court. The parties expect the trial will take five (5) business days to be completed.

**VI. Trial by Magistrate:** The parties do not agree to a trial by Magistrate Judge.

**VII. Stipulated Facts and Law:** See Exhibit 1 attached.

**VIII. Witnesses** (the parties have no objections to the witnesses identified herein):

The parties intend offer evidence from, including calling at trial, as they deem necessary, witnesses from the following list of persons, who will testify by declaration (with availability for in person cross-examination)[1] unless otherwise designated. The parties reserve the right to call any witness on each other's list of proposed witnesses. The parties reserve the right not to call any of these persons if they decide that their testimony is unnecessary. The parties also reserve the right to supplement this list with additional witnesses for impeachment or rebuttal purposes, or both, based upon the proof at trial:

A. Plaintiff's Witnesses

1. Boguslaw M. Spanski (fact witness: owner of SEI, concerning the facts underlying SEI's claims and damages, as well as SEI's defenses to TVP's counterclaims);

2. Tomasz Gladkowski (fact witness: employee of SEI, concerning the operation and use of SEI's website);

3. Casey Chisick (fact witness: Counsel for SEI, concerning the Canadian action pending against alleged infringer IMB+ Records Inc., the costs thereof, and TVP's lack of participation and support in connection with that action);

4. Stephen W. Shulman, CPA, ABV, CVA, CFF, FCPA (expert witness: damages expert/rebuttal expert, via expert reports);

4. Larry Gerbrandt (expert witness: industry expert/rebuttal expert, via expert reports);

---

[1] The parties reserve their rights to make an appropriate application with the Court to submit the deposition testimony of any witness instead of a declaration by the witness should that witness become unavailable for any reason.

7

5.     TVP (by its designated corporate representative, Maria Nadolna (live cross examination and via deposition testimony) concerning the facts underlying SEI's claims, TVP defenses (if any), and TVP's counterclaims);

6.     Polvision (by its designated corporate representative, Walter Kotaba (via deposition testimony) concerning TVP's licensing of programming content to Polvision in breach of SEI's exclusive distribution rights); and

7.     Piotr Lenarczyk (fact witness: former TVP employee, concerning SEI's rights pursuant to the parties' Agreement (as amended), as well as TVP's representations and obligations pursuant to the Settlement Agreement;

8.     Any necessary document custodians.

B.     Defendant's Witnesses

1.     Maria Nadolna (fact witness: former employee of TVP, concerning the facts underlying TVP's defenses to SEI's claims);

2.     Gary Arlen (TVP's expert witness: industry expert/rebuttal expert, via expert reports and deposition testimony);

3.     Timothy Hart, CPA, CFE (TVP's expert witness: damages expert/rebuttal expert, via expert reports and deposition testimony);

4.     Ivan Reyes (TVP's expert witness: industry expert, via expert report and deposition testimony)

5.     Prof. Marek Wierzbowski (TVP's expert witness: via expert report and deposition testimony)

6.     SEI (by its designated corporate representative, Boguslaw Spanski (possible live cross examination and via deposition testimony) concerning the facts underlying SEI's claims, TVP's defenses, and TVP's counterclaims);

7.     Polvision (by its designated corporate representative, Walter Kotaba (via deposition testimony) concerning TVP's licensing of programming content to Polvision;

8.     Stephen W. Shulman, CPA, ABV, CVA, CFF, FCPA (SEI's expert witness: possible live cross examination and via deposition testimony); and

9.     Larry Gerbrandt (SEI's expert witness: possible live cross examination and via deposition testimony).

NY1168125.3
209881-10007

IX.    **Designation of Deposition Testimony:**

    A.    Plaintiff's designations (together with Defendant's counter-designations) are set forth in Exhibit 2 attached hereto.

    B.    Defendant's designations (together with Plaintiffs' counter-designations) are set forth in Exhibit 3 attached hereto.

X.    **Schedule of Exhibits with Objections:**

    A.    A list of Plaintiff's proposed exhibits is set forth in Exhibit 4 attached hereto.

    B.    A list of Defendant's proposed exhibits is set forth in Exhibit 5 attached hereto.

    Given that the vast majority of the documentation relevant to this action is in the Polish language, the parties have agreed to exchange exhibits together with English-language translations thereof on or before February 21, 2013, and to further exchange evidentiary objections (if any) as soon as practicable thereafter.

XI.    **Statement of Damages:**

    A.    SEI seeks compensatory damages of: (1) $603,685 related to its first claim; (2) $143,245 and; (3) $1,262,878 related to its third claim.

    B.    TVP seeks $6,603,285 in damages arising from SEI's failure to maximize subscribers.

XII.    **Parties Consent to Less than Unanimous Verdict:** Not applicable.

NY1168125.3
209881-10007

A-58

Dated: New York, New York
      February 7, 2013


Respectfully submitted,

LOEB & LOEB LLP              DLA PIPER LLP (US)


By: _____       By: _____
    Jonathan Zavin (JZ-1846)      Stanley McDermott III (SM-0530)
    John A. Piskora (JP-4082)      David S. Wenger (DW-9121)
345 Park Avenue            1251 Avenue of the Americas
New York, New York 10154    New York, NY 10020-1104
(212) 407-4000             (212) 335-4500
(212) 407-4990 FAX       (212) 884-8602 FAX

*Attorneys for Plaintiff*        *Attorneys for Defendant*
*Spanski Enterprises, Inc.*      *Telewizja Polska S.A.*




SO ORDERED:


_____
      U.S.D.J.

10

NY1168125.3
209881-10007

A-59

**EXHIBIT 1**

**STIPULATED FACTS AND LAW**

1.　Plaintiff Spanski Enterprises, Inc. ("SEI") is a Canadian corporation.  SEI (together with its subsidiaries and affiliated companies) distributes Polish-language television and radio content in North and South America via satellite and cable television and over the Internet.

2.　Defendant Telewizja Polska, S.A. ("TVP") is a business corporation organized under the laws of Poland (and is wholly-owned by the Polish government).  TVP produces and distributes  10 Polish-language television channels including the channels *TVP Polonia* (f/k/a *TV Polonia*) and *TVP Info* (f/k/a *TVP 3 Regionalna*).

3.　Pursuant to a written agreement dated December 14, 1994 (hereinafter, the "Agreement") TVP granted SEI the right to broadcast the programming content of TVP's television channel *TVP Polonia* in North and South America (the "Territory") for an initial period of 25 years.  In exchange for the distribution rights granted to SEI pursuant to the Agreement, SEI agreed to pay TVP certain royalties.

4.　The *TVP Polonia* channel contains a variety of the "best-of" TVP's Polish programming from other TVP channels.  As is relevant to the claims raised in this action, the *TVP Polonia* channel included the series entitled *Plebania*, *Klan*, *Na Dobre i na Zle*, and *M jak Milosc*.

5.　On November 4, 1999, SEI and TVP entered into an addendum to the Agreement (the "First Addendum").

6.      Pursuant to the First Addendum, TVP granted SEI the further right to distribute *TVP Polonia* programming content over the Internet within the Territory.

7.      Pursuant to the First Addendum, TVP designated SEI as its representative in the Territory authorized to protect TVP's rights, and further agreed to "provide appropriate support for the activities of SEI" in this regard.

8.      TVP and SEI entered into a second addendum to the Agreement, dated April 29, 2002 (the "Second Addendum").

9.      Pursuant to the Second Addendum, TVP granted SEI distribution rights to the programming content of a second TVP channel, *TVP Info*.

10.     In 2007, in response to an arbitration proceeding commenced by TVP in Warsaw, SEI commenced an action before this Court (entitled *Spanski Enterprises Inc., et al. v. Telewizja Polska S.A., et al.*; S.D.N.Y. Case No. 07 CIV 930) (hereinafter, the "Prior Action") that concerned, among other things, the scope of SEI's exclusive rights to distribute *TVP Polonia* and *TVP Info* programming in the Territory.

11.     The Prior Action was resolved by the parties' August 11, 2009 Settlement Agreement (with the sole exception of SEI's then-pending motion for sanctions against TVP for discovery abuse, which motion was later ruled upon by the Court).

12.     Pursuant to the Settlement Agreement, TVP agreed that "SEI is and shall remain the exclusive distributor of *TV Polonia* and *TVP Info* programming content in the territory of North and South America by any and all means of distribution" [subject to a "sole exception" not relevant to the claims raised in this action].

A-61

13.     Pursuant to the Settlement Agreement, TVP represented that SEI was then in

material compliance with the terms of the Agreement (as amended).

14.     The Agreement (as amended) between SEI and TVP is to be construed pursuant

to the laws of New York.

15.     TVP entered into a Barter Agreement with Polvision/Polstudios, dated March 17,

2008, whereby TVP licensed to Polvision for broadcast certain *TVP Polonia*

programming content.

16.     TVP entered into a License Agreement with TV Polvision, dated June 27, 2008,

whereby TVP licensed to Polvision for broadcast certain *TVP Polonia*

programming content.

17.     TVP entered into a License Agreement with Polvision/Polstudios, dated August

31, 2009, whereby TVP licensed to Polvision for broadcast certain *TVP Polonia*

programming content.

18.     TVP entered into an Annex to the Agreement of August 31, 2009 with

Polvision/Polstudios, dated July 16, 2010, whereby TVP licensed to Polvision for

broadcast certain programming content which included new episodes of series of

which previous episodes  had previously been broadcast on *TVP Polonia*.

A-62

**Plaintiff's Designations for the Deposition of Maria E. Nadolna**
**(November 9, 2011)**

| Designation (pg:ln) | Objections | Counter-Designation |
|---|---|---|
| 23:21 – 23:25 | | |
| 24:25 – 26:23 | | |
| 29:20 – 29:23 | | |
| 39:24 – 41:2 | | |
| 43:8 – 45:15 | | |
| 46:17 – 49:9 | | |
| 50:9 – 50:25 | | |
| 51:9 – 51:18 | | |
| 52:22 – 53:7 | | |
| 53:15 – 54:19 | | |
| 54:23 – 55:14 | | |
| 63:10 – 63:13 | | |
| 108:11 – 108:18 | | |
| 119:17 – 120:23 | | |
| 151:5 – 152:4 | | |
| 156:11 – 156:24 | | |
| 158:3 – 158:24 | | |
| 161:2 – 161:7 | | |
| 161:23 – 162:7 | | |
| 187:6 – 188:9 | | |
| 215:8 – 215:21 | | |
| 217:3 – 217:5 | | |
| 231:2 – 232:3 | | |
| 244:7 – 246:14 | | |
| 261:17 – 268:16 | | |
| 268:18 – 270:14 | | |

NY1166630.2

| | | |
|---|---|---|
| 272:9 – 273:22 | | |
| 292:20 – 293:3 | | |
| 293:16 – 294:23 | | |
| 296:11 – 296:25 | | |
| 298:21 – 298:24 | | |
| 300:12 – 301:13 | | |
| 304:8 – 304:23 | | |
| 313:10 – 313:20 | | |
| 314:16 – 315:21 | | |
| 316:24 – 317:20 | | |
| 318:9 – 319:21 | | |
| 321:3 – 321:6 | | |
| 325:5 – 325:9 | | |
| 326:11 – 326:22 | | |
| 327:9 – 327:12 | | |
| 328:14 – 328:17 | | |
| 329:15 – 329:17 | | |
| 331:5 – 333:15 | | |
| 338:3 – 338:8 | | |
| 344:5 – 345:25 | | |
| 346:10 – 346:25 | | |
| 355:12 – 358:10 | | |
| 361:11 – 362:15 | | |
| 363:11 – 363:15 | | |

A-64

**Plaintiff's Designations for the Deposition of Walter Kotaba**
**(November 14, 2011)**

| Designation (pg:ln) | Objections | Counter-Designation |
| --- | --- | --- |
| 4:7 – 4:14 | | |
| 6:2 – 6:13 | | |
| 7:1 – 8:1 | | |
| 8:13 – 8:18 | | |
| 9:3 – 9:8 | | |
| 16:7 – 16:9 | | |
| 18:17 – 18:20 | | |
| 19:5 – 19:7 | | |
| 19:12 – 19:15 | | |
| 26:23 – 27:4 | | |
| 32:10 – 32:12 | | |
| 34:23 – 35:1 | | |
| 35:17 – 35:19 | | |
| 37:8 – 37:15 | | |
| 38:2 – 38:4 | | |
| 38:19 – 38:21 | | |
| 39:11 – 41:6 | | |
| 42:9 – 42:19 | | |
| 44:12 – 45:2 | | |
| 45:11 – 45:13 | | |
| 49:17 – 50:13 | | |
| 51:1 – 51:6 | | |
| 53:20 – 54:13 | | |
| 55:12 – 55:18 | | |
| 56:9 – 56:24 | | |
| 60:16 – 64:5 | | |

NY1166689.1

| | | |
|---|---|---|
| 70:4 – 70:11 | | |
| 73:13 – 73:24 | | |
| 74:20 – 75:3 | | |
| 75:8 – 75:14 | | |
| 77:18 – 77:24 | | |
| 78:19 – 79:2 | | |
| 83:13 – 86:13 | | |
| 90:15 – 91:18 | | |
| 94:12 – 94:14 | | |
| 96:17 – 98:12 | | |
| 125:18 – 125:20 | | |
| 142:4 – 142:13 | | |

**Pre-Trial Order Exhibit 3**

**TVP's Deposition Designations**

| Boguslaw Spanski | Walter Kotaba | Larry Gerbrandt | Stephen Schulman | Gary Arlen | Ivan Reyes | Timothy Hart |
|---|---|---|---|---|---|---|
| 48:15-51:12 | 23:12-24:8 | 21:16-22:13 | 10:15-21 | 51:15-52:9 | 15:2-18 | 102:8-12 |
| 57:15-18 | 28:2-4 | 26:24-27:12 | 26:19-27:12 33:13-23 | 133:13-25 | 54:7-21 | |
| 61:17-61:22 | 30:15-31:22 | 36:9-15 | 50:13-51:16 | 160:25-161:16 | 60:5-6 | |
| 63:12-17 | 39:12-41:6 | 63:15-64:13 | 65:24-66:4 67:7-13 | 233:12-234:3 | | |
| 66:18-70:12 | 43:2-9 45:17-21 47:2-5 | 78:22-81:21 | 72:3-14 73:15-76:10 | | | |
| 83:20-84:4 | 84:6-13 | 83:19-25 | 106:15-23 | | | |
| 85:17-88:16 | 96:3-8 | 86:2-8 | 109:3-22 | | | |
| 132:23-133:5 136:2-6 | 97:8-98:7 | 90:13-21 | 110:17-22 | | | |
| 136:7-137:19 | 116:22-118:3 | 100:10-22 | 122:22-124:16 | | | |
| 150:18-153:24 | 128:11-21 | 116:6-117:3 | 145:19-25 | | | |
| 158:25- 165-24 | 132:4-13 136:3-9 | 133:8-134:9 | 151:25-152:8 | | | |
| 183:9-189:3 | 139:2-141:7 | 142:8-143:15 | 159:7-15 161:18-162:6 | | | |
| 185:9-11 | | 148:11-15 150:14-151:5 | 176:25-177:10 | | | |
| 199:8-199:17 | | 154:13-16 | 188:4-12 192:17-193:13 | | | |
| 218:2-7 | | 165:16-167:12 | 199:14-200:6 | | | |
| 224:10-14 | | 172:20-174:4 174:5-175:7 | 217:24-219:7 | | | |
| 250:3-9 | | 175:20-176:9 | 228:17-229:8 | | | |
| 261:16-21 262:11-20 | | | 236:11-17 | | | |
| 266:22-267:5 | | | 239:17-240:6 | | | |
| 274:14-275:12 | | | 244:6-245:2 | | | |
| 318:5-319:7 | | | 249:6-250:7 | | | |
| 331:4-323:2 | | | 269:8-20 | | | |
| 341:5-342:16 | | | | | | |

**Plaintiff SEI's Objections and Counter-designations to TVP's deposition designations**

1.  Plaintiff objects to the introduction of the deposition testimony of Gary Arlen, Ivan Reyes, and Timothy Hart on Defendant's direct case, on the ground that these not adverse parties but rather are TVP's own expert witnesses that TVP intends to call on its direct case and, accordingly, any direct testimony must be in person or, by declaration pursuant to the Court's Individual Practices. Fed. R. Civ. P. 32(a).

2.  Plaintiff objects to the introduction of the deposition testimony of Stephen Shulman and/or Larry Gerbrandt on Defendant's direct case, since these are not adverse parties, but rather expert witnesses who will be available for cross-examination at trial. Fed. R. Civ. P. 32(a).

3.  As to the designations pertaining to the deposition testimony of Walter Kotaba, SEI counter-designates those parts of Mr. Kotaba's deposition identified in Exhibit 2, as well as the following additional testimony (pg:ln): 19:5 – 19:15; 25:21 – 26:1; and 141:22 - 144:11.

**EXHIBIT 4**

**PLAINTIFFS' TRIAL EXHIBITS**

| | Plaintiffs' Proposed Exhs. | Defendant's Stipulations[1] |
|---|---|---|
| | | |
| 1. | December 14 1994 Agreement between TVP and SEI (in original Polish) (P00001-7) | |
| 2. | Certified English translation of document 1 | |
| 3. | November 4, 1999 First Addendum between TVP and SEI (in original Polish) (P00016-18) | |
| 4. | Certified English translation of document 3 | |
| 5. | November 4, 1999 Second Addendum Addendum between TVP and SEI (in original Polish) (P00023-25) | |
| 6. | Certified English translation of document 5 | |
| 7. | August 11, 2009 Settlement Agreement between TVP and SEI (P00030-33) | |
| 8. | March 10, 1995 letter from Wieslaw Walendziak and Adam Brodziak to To Whom it May Concern (in original Polish) (SEI 000004) | |
| 9. | March 10, 1995 letter from Wieslaw Walendziak and Adam Brodziak to To Whom it May Concern (in original English) (SEI 000005) | |
| 10. | March 10, 1995 letter from Wieslaw Walendziak and Adam Brodziak to To Whom it May Concern (in original Polish) (TP 7000086) | |
| 11. | March 10, 1995 letter from Wieslaw Walendziak and Adam Brodziak to To Whom it May Concern (in original English) (TP 7000087) | |
| 12. | March 15, 1995 letter from Wieslaw Walendziak to Edward Moskal (in original Polish) (TP 7004249) | |
| 13. | Certified English translation of document 12 | |
| 14. | May 24, 1995 Legal Opinion by Ryszard Swiderski (in original Polish) (TP 7006700) | |
| 15. | Certified English translation of document 14 | |
| 16. | June 8, 1995 Fax from Marta Suchodolska to Andrej Sikora and Waclaw Tylawski (in original Polish) (P00204) | |
| 17. | Certified English translation of document 16 (P00203) | |
| 18. | June 12, 1995 fax from Marta Suchodolska to Boguslaw M. Spanski (in original Polish) (TP 7003598) | |

---

[1]     "*" indicates documents to which no party objects on the grounds of authenticity
        "**" indicates documents to which no party objects on any grounds

**A-69**

| | | |
|---|---|---|
| 19. | Certified English translation of document 18 | |
| 20. | June 9, 1997 letter from Robert Telennea to Jack Piotr Latallo (in original Polish) (TP 7003479) | |
| 21. | Certified translation of document 21 | |
| 22. | March 17, 2008 Barter Agreement between TVP and Polvision/Polstudios (in original Polish) (POL00038-45) | |
| 23. | Certified translation of document 22 | |
| 24. | June 27, 2008 License Agreement between TVP and Polvision (POL00054-57) | |
| 25. | August 31, 2009 License Agreement between TVP and Polvision (in original Polish) (POL00058-62) | |
| 26. | Certified translation of document 25 | |
| 27. | September 3, 2009 E-mail string between TVP and Polvision (in original Polish) (TVP 101111 0338-39) | |
| 28. | Certified translation of document 27 | |
| 29. | November 28, 2009 e-mail from TVP to Polvision (in original Polish) (TVP 101111 0355) | |
| 30. | Certified translation of document 29 | |
| 31. | December 21, 2009 e-mail from TVP to Polvision (in original Polish) (TVP 101111 0351) | |
| 32. | Certified translation of document 31 | |
| 33. | December 23, 2009 e-mail string from TVP to Polvision (P00172) | |
| 34. | January 6, 2010 e-mail from TVP to Polvision (in orignal Polish) (TVP 10111 0352) | |
| 35. | Certified translation of document 34 | |
| 36. | January 25, 2010 letter from TVP to Polvision (in original Polish) (TVP 051611 00044) | |
| 37. | Certified translation of document 36 | |
| 38. | January 26, 2010 letter from Polvision to TVP (in original Polish) 9TVP 00045-47) | |
| 39. | Certified translation of document 38 | |
| 40. | February 18, 2010 internal TVP letter (in original Polish) (TVP 101111 0353) | |
| 41. | Certified translation of document 40 | |
| 42. | March 30, 2010 internal TVP letter (in original Polish) (TVP 072011 0298-99) | |
| 43. | Certified translation of document 42 | |
| 44. | April 1, 2010 meeting notes (in original Polish) (TVP 101111 0356-57) | |
| 45. | Certified translation of document 45 | |
| 46. | April 8, 2010 internal TVP letter (in original Polish) (TVP 051611 00062) | |
| 47. | Certified translation of document 46 | |
| 48. | May 5, 2010 letter from TVP to Polvision (in original | |

| | | |
|---|---|---|
| | Polish) (TVP 051611 00070) | |
| 49. | Certified translation of document 48 | |
| 50. | May 5, 2010 letter from TVP to SEI (in original Polish) (TVP 051611 00290) | |
| 51. | Certified translation of document 50 | |
| 52. | May 13, 2010 internal TVP letter (in original Polish) (TVP 051611 0071) | |
| 53. | Certified translation of document 52 | |
| 54. | May 18, 2010 internal TVP letter (in original Polish) (TVP 051611 00076-77) | |
| 55. | Certified translation of document 554 | |
| 56. | May 18, 2010 letter from TVP to Polvision (in original Polish) (TVP 051611 00079-80) | |
| 57. | Certified translation of document 56 | |
| 58. | June 8, 2010 letter from TVP to Polvision (in original Polish) | |
| 59. | Certified translation of document 58 | |
| 60. | 26, 2010 letter from TVP to Polvision (in original Polish) (TVP 051611 00088) | |
| 61. | Certified translation of document 60 | |
| 62. | July 1, 2010 letter from TVP to Polvision (in original Polish) (TVP 051611 00089-92) | |
| 63. | Certified translation of document 63 | |
| 64. | July 1, 2010 internal TVP letter (in original Polish) (TVP 051611 00093) | |
| 65. | Certified translation of document 64 | |
| 66. | July 2, 2010 letter from Polvision to TVP (in original Polish) (TVP 051611 00094-95) | |
| 67. | Certified translation of document 67 | |
| 68. | July 12, 2010 internal TVP letter (in original Polish ) (TVP 051611 00096) | |
| 69. | Certified translation of document 68 | |
| 70. | July 16, 2010 Annex to August 31, 2009 Agreement between TVP and Polvision (in original Polish) (POL00063-65) | |
| 71. | Certified translation of document 70 | |
| 72. | April 7, 2011 letter from TVP to Polvision (in original Polish) (P00328; P002010) | |
| 73. | Certified translation of document 72 | |
| 74. | February 26, 2010 letter from Cassels Brock to TVP (TVP 051611 00053-55) | |
| 75. | April 9, 2010 letter from TVP to SEI (in original Polish) (TVP 051611 00063-64) | |
| 76. | Certified translation of document 76 | |
| 77. | March 11, 2011 E-mail and letter from Cassels Brock to | |

| | | |
|---|---|---|
| | TVP (P00154-57) | |
| 78. | October 8, 2010 e-mail from IMB+ Records to TVP (in original Polish) (TVP 051611 00122-132) | |
| 79. | Certified translation of document 78 | |
| 80. | October 15, 2010 notes of meeting in original Polish (TVP 051611 00133-34) | |
| 81. | Certified translation of document 80 | |
| 82. | October 18, 2010 e-mail from IMB+ Records to TVP (in original Polish) (TVP 051611 00138-39) | |
| 83. | October 27, 2010 e-mail from IMB+ Records to TVP (in original Polish) (TVP 051611 00140-142) | |
| 84. | Certified translation of document 83 | |
| 85. | March 22, 2011 letter from IMB+ Records to TVP (in original Polish) (TVP 051611 00276-278) | |
| 86. | Certified translation of document 85 | |
| 87. | Webpages concerning Polvision (P001100, 1105, 1655-59, 2073, 2104, 2115; 2148, 2186-87) | |
| 88. | Directories of TVP Polonia programming (TVP 021012 458-493; and www.tvp.pl.prosa/TVPPolonia) | |
| 89. | Polvision Mediakit (2010) and advertising rate card (2012) | |
| 90. | Cassels Brock invoices (P001680 – 2286) | |
| 91. | Quarterly Subscriber Numbers (as referenced in Shulman Report, Exh. II (SEI 000103-140; TVP 051611 00154-191) | |
| 92. | Polvision programming schedules (P000 329-34, 2031-72) | |
| 93. | Spreadsheets of terminated Internet subscribers (P001827-2009, 2246-2279) | |
| 94. | Spreadsheets of lost Globecast subscribers (P001785-1826, 2239-2245) | |
| 95. | March 24, 2011 letter from TVP to SEI (in original Polish) (P00158) | |
| 96. | Certified translation of document 95 | |
| 97. | March 5, 2011 E-mail from SEI to TVP (in original Polish) (P00159-67) | |
| 98. | Certified translation of document 97 | |
| 99. | January 2010 e-mail string between counsel for SEI and counsel for Polvision (P00225-227) | |
| 100. | January 19, 2010 e-mail from counsel for SEI to counsel for Polvision (P00242) | |
| 101. | January 6, 2010 letter from counsel to SEI to Polvision (P00249) | |
| 102. | Amended Statement of Claim (Canadian Action) (P01133-58) | |

A-72

| | | |
|---|---|---|
| 103. | Statement of Defence (Canadian Acion) (P01159-85) | |
| 104. | July 26, 2010 letter from TVP to counsel for SEI (P00327) | |
| 105. | August 2, 2010 letter from SEI's counsel to TVP (P00179-83) | |
| 106. | May 21, 2010 letter from TVP to counsel for SEI (P00201-02) | |
| 107. | May 2007 EchoStar presentation for TVP (TP9000140-172) | |
| 108. | February 18, 2009 letter from Polvision to TVP (original in Polish) (TVP051611 0008-9 | |
| 109. | Certified translation of document 109 | |
| 110. | TVP Form e-mail regarding Klan (original in Polish) (TVP 072011 0305) | |
| 111. | Certified translation of document 110 | |
| 112. | January 28, 1994 Meeting Notes (in original Polish) (TP 7004886-87) | |
| 113. | Certified translation of document 112 | |
| 114. | February 1994 Proposal (in original Polish) (TP 7006364-70) | |
| 115. | Certified translation of document 114 | |
| 116. | February 9, 1994 TVP Memorandum (in original Polish) (TP7006378-79) | |
| 117. | Certified translation of document 116 | |
| 118. | March 15, 1995 letter from TVP to Moskal (in original Polish) ((TP 7004249-50) | |
| 119. | Certified translation of document 118 | |
| 120. | January 7, 1999 letter with legal opinion (in original Polish) (TP 7006672-74) | |
| 121. | Certified translation of document 120 | |
| 122. | March 24, 1998 TVP letter (SEI 000166) | |
| 123. | March 25, 1998 fax from TVP to EchoStar (SEI 000721) | |
| 124. | April 1999 TVP Board of Directors eport on Company Activities (in original Polish) (TP9000632-682) | |
| 125. | Certified translation of document 124 | |
| 126. | June 1, 2998 TVP press release (in original Polish) (TP 7005054-55) | |
| 127. | Certified translation of document 126 | |
| 128. | February 8, 2007 screenshot of TVP webpage (in original Polish) (SEI 000246-49) | |
| 129. | Certified translation of document 128 | |
| 130. | October 5, 1999 internal TVP letter (in original Polish) (TP 7006692) | |
| 131. | Certified translation of document 130 | |
| 132. | TVP Board Position (in original Polish) (SEI 000055-57) | |

| 133. | Certified translation of document 132 | |
|------|----------------------------------------|--|
| 134. | April 3, 2002 e-mail string between TVP and EchoStar (TP 7003157-58) | |
| 135. | April 6, 2002 e-mail from TVP to EchoStar (SEI 001140) | |
| 136. | June 14, 2002 letter from EchoStar to TVP (TP 7005252) | |
| 137. | June 8, 2002 e-mail from TVP to EchoStar (TP 7003182) | |
| 138. | July 1, 1999 letter from TVP to NIK (in original Polish) (TP 7001215-18) | |
| 139. | Certified translation of document 138 | |
| 140. | March 3, 2005 TVP internal memo (in original Polish) (TP 7007953-55) | |
| 141. | Certified translation of document 140 | |
| 142. | Shulman Expert Report and Rebuttal Report (including attachments) | |
| 143. | Gerbrandt Rebuttal Report (including attachments) | |

**Pre-Trial Order Exhibit 5**

**TVP's List of Trial Exhibits**

| Tab | Date | Description |
|---|---|---|
| 1. | 12/14/1994 | TVP/SEI Agreement |
| 2. | 11/04/1999 | TVP/SEI Addendum |
| 3. | 04/29/2002 | TVP/SEI Addendum |
| 4. | 2005-2012 | SEI Quarterly Revenue and Subscriber Reporting |
| 5. | 03/17/2008 | TVP/Polvision Barter Agreement, with Annex |
| 6. | 06/27/2008 | TVP/Polvision License Agreement |
| 7. | 03/09/2009 | Email Pokropek to Zaniewska |
| 8. | 04/20/2009 | Email Pokropek to Zaniewska |
| 9. | 06/04/2009 | Email Zaniewska to Pokropek |
| 10. | 06/04/2009 | Emails Pokropek to Zaniewska |
| 11. | 06/30/2009 | Polvision Agreement Certificate |
| 12. | 07/02/2009 | Letter Zaniewska to Pokropek |
| 13. | 07/24/2009 | Email Pokropek to Zaniewska |
| 14. | 08/04/2009-08/05/2009 | Emails between Zaniewska and Pokropek |
| 15. | 08/06/2009 | Letter Zaniewska to Pokropek |
| 16. | 08/11/2009 | TVP/SEI Settlement Agreement |
| 17. | 08/31/2009 | TVP/Polvision Licensing Agreement |
| 18. | 09/01/2009-09/03/2009 | Emails between Zaniewska and Pokropek |
| 19. | 10/23/2009 | Email Zaniewska to Pokropek |
| 20. | 11/28/2009 | Email Herezinska to Pokropek |
| 21. | 11/30/2009 | TVP fax to Kotaba |
| 22. | 12/09/2009- 12/21/2009 | Emails Lenarczyk and Zaniewska to Pokropek |
| 23. | 12/23/2009 | Email Zaniewska to Herezinska |
| 24. | 12/23/2009 | Email Herezinska to Pokropek |
| 25. | 01/06/2010 | Email Zaniewska to Pokropek |
| 26. | 02/23/2010 | Letter Kotaba to Orzel |
| 27. | 04/01/2010 | TVP/Polvision meeting minutes |
| 28. | 05/05/2010 | Letter Nadolna to Kotaba |
| 29. | 05/05/2010 | Letter Nadolna to Spanski |
| 30. | 05/13/2010 | Letter Nadolna to Kotaba |
| 31. | 05/13/2010 | Letter Orzel to Kotaba |
| 32. | 05/17/2010 | Letter Kotaba to Orzel |
| 33. | 05/18/2010 | Letter Nadolna to Kotaba |
| 34. | 05/19/2010 | Letter Kotaba to Orzel |
| 35. | 06/08/2010 | Letter Nadolna to Kotaba |
| 36. | 06/14/2010 | Letter Nadolna to Kotaba |
| 37. | 06/25/2010 | Letter Nadolna to Kotaba |
| 38. | 07/01/2010 | Letter Nadolna to Kotaba |
| 39. | 07/08/2010 | Letter Nadolna to Kotaba |
| 40. | 07/16/2010 | Annex to August 31, 2009 TVP/Polvision License Agreement |

| 41. | 04/09/2010 | Letter Boberek to Spanksi |
|-----|------------|---------------------------|
| 42. | 09/03/2010 | Letter Tomasz Sieniutyck to IMB |
| 43. | 11/08/2011 | Excerpt from Deposition of Boguslaw Spanski |
| 44. | 11/19/2010 | Amended Statement of Claim |
| 45. | 03/04/2011 | Statement of Defence |
| 46. | 11/23/2011 | Order |
| 47. | N/A | TV Polonia Webpage- About Us |
| 48. | N/A | Chart with TVP Polonia viewership numbers |
| 49. | 02/08/2007 | SEI/TVP Complaint, 07-CV-930 |
| 50. | 06/24/2010 | SEI/TVP Original Complaint, 10-CV-4933 |
| 51. | 10/01/2010 | SEI/TVP Amended Complaint, 10-CV-4933 |
| 52. | 2009-2011 | SEI's list of cancelled internet subscriptions |
| 53. | 2009-2011 | TV Polvision Programming |
| 54. | 01/2009 – 12/2010 | IMB subscriber chart |
| 55. | 03/16/2009 | Oral Argument Transcript, 07-CV-930 |
| 56. | 12/2009 – 12/2010 | IMD summary reporting to SEI |
| 57. | 08/12/2011 | List of SEI's cancelled Globecast subscribers |
| 58. | 02/15/2012 | SEI's Amended Responses to TVP's Interrogatories |
| 59. | 04/16/2012 | Expert Report of Gary Arlen |
| 60. | 04/16/2012 | Expert Report of Tim Hart |
| 61. | 04/16/2012 | Expert Report of Ivan Reyes |
| 62. | 04/16/2012 | Expert Report of Marek Wierzbowski |
| 63. | 05/16/2012 | Supplemental Expert Report of Tim Hart |
| 64. | 05/16/2012 | Supplemental Expert Report of Gary Arlen |
| 65. | N/A | TV Series Broadcast History |
| 66. | N/A | TV Polonia Webpage - Terms |
| 67. | N/A | Polvision Media Kit |
| 68. | N/A | Polvision Rate Card |
| 69. | 01/08/2013 | Opinion and Order, 10-CV-4933 |
| 70. | 1994 | SEI Business Plan |
| 71. | 04/18/08 | Excerpt from Deposition of Boguslaw Spanski |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                    :

SPANSKI ENTERPRISES, INC.,         :

     Plaintiff,                  :     10 Civ. 4933 (ALC)(GWG)

           -against-         :

TELEWIZJA POLSKA, S.A.,       :

     Defendant.           :
------------------------------------------------------X

## DECLARATION OF MARIA NADOLNA

## TABLE OF CONTENTS

**Page**

I.  Introduction .................................................................................................... 1

II.  Summary of Declaration ................................................................................ 1

    A.  TVP's Contracts with Polvision ........................................................... 1

    B.  SEI's Canadian Litigation Against An Unauthorized Distributor ........ 2

    C.  Removal Of *Klan* From *TVP Polonia* .................................................. 3

IIII.  Background ..................................................................................................... 3

    A.  TVP ....................................................................................................... 3

    B.  The *TVP Polonia* Channel .................................................................. 3

    C.  The 1994 TVP/SEI Agreement And Amendments ............................... 4

IV.  TVP's 2008 Contracts with Polvision. .......................................................... 4

V.  TVP Sends Polvision The August 31, 2009 TVP/Polvision Licensing Agreement ........... 5

VI.  TVP And SEI Conclude The August 11, 2009 TVP/SEI Settlement Agreement ........... 6

VII.  TVP's Extensive Efforts To Provide Replacement Programming To Polvision ............... 7

VIII.  SEI's Canadian Litigation Against An Unauthorized Distributor Of TVP Channels ................................................................................................... 10

IX.  TVP's Decision To Remove The *Klan* Program From *TVP Polonia* ............................ 12

    A.  SEI Has No Control Over TVP's Editorial Decisions ......................... 13

    B.  TVP Decided To Remove The *Klan* Program From *TVP Polonia* For Reasons Unrelated To TVP's Relationship With SEI .......................... 13

-i-

## I.  Introduction

1.   I, Maria Nadolna, submit this declaration on behalf of Telewizja Polska, S.A. ("TVP").

2.   I have worked for TVP based in Warsaw, Poland from August 1997 through September 2012 in various positions. From 1997 through 2005 I was a Manager, and then the Deputy Managing Director, of TVP's advertising department. From 2006 until I left TVP in September 2012, I was the Managing Director of TVP's International Affairs Department.

3.   I have been deposed in this case on November 8-9, 2011, and I attended a settlement conference before Judge Gabriel W. Gorenstein the following day. I am fully familiar with the claims asserted by Spanski Enterprises Inc. ("SEI") in this case, and the facts relating to those claims.

## II.  Summary Of Declaration

4.   I discuss below facts relating to SEI's three claims against TVP:

   (a)   TVP's contracts with the Chicago television station Polvision;

   (b)   SEI's litigation in Canada against an unauthorized distributor of TVP programming; and

   (c)   TVP's removal of the *Klan* program from TVP's television channel *TVP Polonia*.

### A.   TVP's Contracts with Polvision

5.   SEI's first claim is that TVP breached its December 14, 1994 Agreement ("the 1994 Agreement") with SEI by entering into several agreements with Polvision to distribute TVP programming in the Chicago area.

6.   As I explain below in more detail, TVP did not breach its agreement with SEI by entering into licensing agreements with Polvision.

7.   In summary, in March and June 2008, TVP and Polvision entered into two agreements whereby TVP licensed to Polvision the rights to broadcast reruns of certain old programming on *TVP Polonia*. When those agreement were signed in 2008, SEI had only one-off use ("first run") rights to the *TVP Polonia* channel programming content. All of the programming TVP licensed to Polvision had already been broadcast on *TVP Polonia* many years earlier. Nothing prevented TVP from licensing reruns of *TVP Polonia* programming to Polvision.

8.   On July 2, 2009, TVP signed an additional licensing agreement with Polvision for the subsequent episodes of the programs TVP had licensed to Polvision in the 2008 agreements. When TVP signed that agreement on July 2, 2009, the status of the SEI/TVP relationship was unchanged: SEI had rights only to first runs of the *TVP Polonia* programming content. Nothing prevented TVP from licensing reruns to Polvision.

9. Though TVP signed and sent that next licensing agreement to Polvision for counter-signature on July 2, 2009, it was not until August 31, 2009 after Polvision's principal returned from vacation that Polvision countersigned the agreement (the "August 31, 2009 TVP/Polvision Licensing Agreement"). In the interim, on August 11, 2009, SEI and TVP entered into a settlement agreement resolving their previous litigation.

10. In TVP's view, the August 11, 2009 Settlement Agreement ("Settlement Agreement") TVP entered into with SEI did not prevent TVP from licensing individual programming to Polvision and from performing under the August 31, 2009 TVP/Polvision Licensing Agreement. Clause II.E of the Settlement Agreement restricts TVP from distributing other channels with the *TVP Polonia* programming content, but does not prohibit TVP from distributing individual *TVP Polonia* programming such the programming TVP licensed to Polvision.

11. Nevertheless, because SEI claimed the Settlement Agreement prevented TVP from licensing individual programming to Polvision, TVP in good faith (despite disagreeing with SEI's interpretation of the Settlement Agreement) immediately began to negotiate with Polvision to replace the episodes licensed in the August 31, 2009 TVP/Polvision Licensing Agreement with other programming never shown on *TVP Polonia* to avoid further conflict with SEI. At the same time, TVP sought to avoid conflict with Polvision.

12. TVP's extensive negotiations with Polvision for replacement programming concluded in July 2010, resulting in an Annex to the August 31, 2009 TVP/Polvision Licensing Agreement (the "July 2010 Annex"). TVP substituted the episodes it had licensed to Polvision in August 2009 with programming never shown on *TVP Polonia*. Thus, SEI had no even arguable rights to that programming.

13. TVP did all that it could in good faith to comply with its obligations under the 1994 Agreement and Settlement Agreement with SEI, on the one hand, while complying with its obligations to Polvision, on the other hand.

**B.    SEI's Canadian Litigation Against An Unauthorized Distributor**

14. SEI's second claim seeks reimbursement from TVP for legal fees arising from SEI's litigation in Canada against an alleged unauthorized distributor of TVP programming.

15. TVP never agreed to pay SEI's legal fees for such a litigation. Furthermore, I never understood TVP to have any obligation to join SEI in a foreign litigation against a third party.

16. TVP specifically designated SEI as TVP's representative authorized to protect against unauthorized distribution. Because issues raised in the Canadian litigation implicate a dispute between TVP and SEI over the precise distribution rights TVP has granted SEI, specifically whether SEI has exclusive distribution rights to individual *TVP Polonia* programming, TVP had good reason to not get involved in the Canadian litigation.

2

### C. Removal Of *Klan* From *TVP Polonia*

17. SEI's third claim concerns TVP's removal of the *Klan* program from *TVP Polonia.*

18. TVP has full control over its editorial decisions and never relinquished that control to SEI. TVP decided to remove the *Klan* program from *TVP Polonia* for reasons unrelated to its relationship with SEI.

19. The 1994 Agreement confirms TVP's unequivocal control over *TVP Polonia* programming decisions, which TVP would have never ceded to SEI. On its own website, SEI acknowledges TVP's control over its *TVP Polonia* programming. SEI, only one company in a network of *TVP Polonia* distributors around the world, had no right to dictate TVP's programming decisions.

20. I understand that SEI claims that after SEI filed its original complaint in this case on June 24, 2010 relating to the August 31, 2009 TVP/Polvision Licensing Agreement, TVP removed the *Klan* program from *TVP Polonia* to be able to provide subsequent *Klan* episodes to Polvision as part of the replacement programming in the July 2010 Annex.

21. As I explain, TVP decided to remove the *Klan* program from *TVP Polonia* as part of its regular quarterly programming review process, in order to attract a younger audience and to free up time for other required programming, before the filing of the original complaint in this case, and without consideration of TVP's relationship with SEI and the August 31, 2009 TVP/Polvision Licensing Agreement.

## III. Background

### A. TVP

22. TVP is the acronym for Telewizja Polska, which means "Polish Television." TVP is Poland's state-owned, publicly-financed national public broadcasting company.

23. TVP's predecessor entity, PIT, broadcast the first Polish television programming after World War 2, starting in 1951. In 1992, the year after free Polish elections marked the end of communism, the Polish Parliament separated PIT's television and radio divisions and formed TVP as Poland's national public-television broadcaster.

24. TVP presently produces the content for 10 television channels. TVP's channels include TVP's main general channels, *TVP 1* and *TVP 2*, as well as thematic channels such as *TVP Historia, TVP Seriale, TVP Kultura,* and *TVP Sport.*

### B. The *TVP Polonia* Channel

25. TVP created its *TVP Polonia* channel in 1993 as Poland emerged from communism and refocused on its national cultural heritage. Under Poland's Broadcasting Act, TVP is required to disseminate through *TVP Polonia* to the large, scattered Polish Diaspora an assortment of TVP's most popular shows from its domestic Polish channels such as *TVP*

3

A-81

*1, TVP 2,* and *TVP Kultura.* TVP is statutorily required to reach the largest viewing audience possible for *TVP Polonia.*

26. Programming on *TVP Polonia* includes Polish feature films, short films, fictional television series, documentaries, cartoons, historical and cultural programs, classical music concerts, theater performances, and children's series. The *TVP Polonia* channel is available domestically in Poland. In addition, through arrangements with distributors, TVP makes the *TVP Polonia* channel available in various countries around the world, including the Americas, throughout Europe, and Australia and New Zealand.

    **C.**    **The 1994 Agreement And Amendments**

27. On December 14, 1994, TVP and Canada-based SEI entered into the 1994 Agreement under which TVP granted SEI rights for 25 years to distribute in North and South America (the "Territory") the first runs of the programming content broadcast on the *TVP Polonia* channel.

28. In exchange for the right to distribute the first runs of the *TVP Polonia* programming content, SEI is to pay TVP 8 percent of SEI's subscriber and advertising revenue. (The 1994 Agreement is attached as **Ex. 1**, *see* § 10.1.)

29. On November 4, 1999, TVP and SEI amended the 1994 Agreement, granting SEI the further right to distribute the *TVP Polonia* programming content over the Internet within the Territory. (The 1999 Addendum is attached as **Ex. 2.**)

30. On April 29, 2002, TVP and SEI again amended the 1994 Agreement (the "2002 Amendment"), granting SEI the further right to distribute another of TVP's television channels in North and South America – the *TVP Info* news channel, formerly known as TVP 3 Regionalna ("*TVP Info*"). (The 2002 Addendum is attached as **Ex. 3**.) SEI's rights to distribute *TVP Info* have expired in April 2012. I understand that SEI claims in a separate litigation against TVP that it has rights to prevent TVP from distributing *TVP Info* in the Territory even though SEI's rights to distribute that channel have indisputably expired.

31. For many years, the parties have been performing under the 1994 Agreement as amended for the distribution of *TVP Polonia.* SEI has been slowly growing its subscriber base in the Territory to *TVP Polonia* programming through satellite and cable television and the Internet, and has been paying TVP royalties from the revenues SEI has earned from distributing TVP's programming in the Territory. (A collection of SEI's quarterly reporting of revenue and subscriber information to TVP for U.S. and Canada distribution, preceded by a summary page, is attached as **Ex. 4.**)

**IV.**    **TVP's 2008 Contracts with Polvision**

32. TVP and its predecessor entity PIT had been providing various programming to the Polvision television channel in Chicago since 1987, long before TVP entered into a relationship with SEI in 1994.

4

33.  Two of the more recent TVP/Polvision contracts were entered into in March and June of 2008 as a continuation of the on-going cooperation. On March 17, 2008, TVP and Polvision entered into a barter agreement under which TVP licensed certain programming to Polvision in exchange for Polvision-created news content. (The "March 17, 2008 TVP/Polvision Barter Agreement," with an Annex, is attached as **Ex. 5.**) On June 27, 2008, TVP and Polvision entered into a licensing agreement under which TVP provided Polvision with additional programming in exchange for payment. (The "June 27, 2008 TVP/Polvision Licensing Agreement" is attached as **Ex. 6.**)

34.  Under the March and June 2008 TVP/Polvision agreements, TVP provided to Polvision the first episodes of the following television series: *Na Dobre* (1-100), *Plebania* (1-100), *Klan* (1-51), and *Zlotopolscy* (1-51). Each of these episodes had been included in the *TVP Polonia* broadcast years earlier, between 1998 and 2004.

35.  As mentioned, as of 2008, under the 1994 Agreement SEI had "one-off use" rights, or the rights to distribute the first run, of the *TVP Polonia* programming content in the Territory. (Ex. 1, 1994 Agreement, § 2.2). Because each of the episodes TVP licensed to Polvision in 2008 had already been broadcast on *TVP Polonia*, the 1994 Agreement with SEI did not prevent TVP from licensing reruns of those episodes to Polvision.

36.  When the March 17, 2008 TVP/Polvision Barter Agreement neared expiration in March 2009, Polvision asked TVP if it could enter a new agreement with TVP for the next episodes of the four series licensed by TVP to Polvision in the 2008 TVP/Polvision agreements. (March 9, 2009 Email from Agnieszka Pokropek to Urszula Zaniewska, attached as **Ex. 7.**)

**V.    TVP Sends Polvision The August 31, 2009 TVP/Polvision Licensing Agreement**

37.  TVP's Urszula Zaniewska negotiated with Polvision's Agnieszka Pokropek on the terms of a new agreement between TVP and Polvision.

38.  On April 20, 2009, Pokropek proposed terms for the new agreement. (April 20, 2009 Email from Pokropek to Zaniewska, attached as **Ex. 8.**) TVP would provide Polvision with the next 100 consecutive episodes of the four series it had previously provided to Polvision in the March and June 2008 agreements: *Na Dobre* (101-200), *Plebania* (101-200), *Klan* (52-150), and *Zlotopolscy* (52-150).

39.  The episodes requested by Polvision for the new licensing agreement, like the episodes TVP licensed to Polvision in the 2008 agreements, had all been shown on *TVP Polonia* years earlier (in the case of the *Klan* and *Zlotopolscy* approximately ten years earlier), so nothing prevented TVP from licensing those episodes to Polvision.

40.  The terms Polvision proposed for the new agreement were acceptable to TVP. On June 4, 2009, Zaniewska wrote to Pokropek confirming that TVP and Polvision had reached an understanding on the terms of the agreement. Zaniewska told Pokropek that TVP would begin its internal process of approving and signing the agreement, which would take some time, and would begin recording the episodes to be sent to Polvision. (June 4, 2009 Email from Zaniewska to Pokropek, **Ex. 9.**) Pokropek said Polvision looked forward to

A-83

receiving the signed contract from TVP. (June 4, 2009 Email from Pokropek to Zaniewska, **Ex. 10**.)

41. TVP then began its typical internal contracting process of obtaining internal approvals from various TVP departments, including TVP's institutional contracting, economic, and legal departments, and from a TVP director. By June 30, 2009, all of the internal approvals needed for TVP to conclude the Polvision contract were completed. (Agreement Certificate, June 30, 2009, **Ex. 11**.)

42. Two days later, on July 2, 2009 Zaniewska sent Pokropek three hard copies of the agreement between TVP and Polvision for Polvision's signature. The agreement had already been signed by TVP. (July 2, 2009 Letter from Zaniewska to Pokropek, **Ex. 12**.)

43. The Polvision agreement was subject to Polish law. As TVP understood Polish law, after the agreement was approved internally and sent to Polvision for signature, the agreement was binding upon TVP. Thus, from July 2, 2009 onwards, TVP viewed the Polvision agreement to be legally binding upon TVP. As such, TVP began to record the episodes licensed to Polvision even though Polvision had not yet countersigned the agreement.

44. On July 24, 2009, Pokropek told Zaniewska that she had just received the agreement signed by TVP which TVP had sent on July 2, 2009, but her boss Walter Kotaba was away in Poland on vacation until mid-August. Pokropek would have to wait until Kotaba returned, and then she would immediately return the agreement with Polvision's signature. (July 24, 2009 Email from Pokropek to Zaniewska, **Ex. 13**.)

45. On August 4, 2009, Pokropek told Zaniewska that Kotaba would return to Chicago on August 16, and she would ask him to sign the agreement as soon as he returned. She asked Zaniewska whether in the meantime TVP could send some of the episodes included in the agreement because Polvision wanted to continue to show sequential episodes of the programming it had been showing, without interruption. (August 4, 2009 Email from Pokropek to Zaniewska, **Ex. 14**.)

46. On August 6, 2009, Zaniewska sent some of the episodes included in the agreement as Pokropek had requested. (August 6, 2009 Letter from Zaniewska to Pokropek, **Ex. 15**.)

**VI.    TVP And SEI Conclude The August 11, 2009 TVP/SEI Settlement Agreement And Polvision Returns The Signed Licensing Agreement**

47. In the meantime, while TVP waited for Polvision to countersign and return the licensing agreement TVP had sent to Polvision on July 2, 2009, on August 11, 2009 TVP and SEI entered into a Settlement Agreement to resolve a litigation which had begun in 2007 in the Southern District of New York. The Settlement Agreement is attached as **Ex. 16**.

48. Clause II.E of the Settlement Agreement provides:

> "TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in North and South America that

6

contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TV Info*."

Clause II.E prevents TVP from distributing in the Territory "any other channels" that contain the same programming content as *TVP Polonia*. However, Clause E does not prohibit TVP from distributing individual programming contained on *TVP Polonia*.

49.  On August 31, 2009, TVP received from Polvision the countersigned licensing agreement. (The August 31, 2009 TVP/Polvision Licensing Agreement is attached as **Ex. 17.**) Under the agreement, Polvision was to pay TVP $50,270 in total for the 400 episodes licensed by TVP to Polvision.

50.  As compared to TVP's relationship with SEI, the revenue TVP would earn from the Polvision agreement was little. As compared to the total payment of $50,270 from Polvision, SEI was paying TVP approximately $60,000 to $70,000 per quarter as its 8 percent royalty payment under the parties' 1994 Agreement (Ex. 4).

51.  TVP did not understand the August 31, 2009 TVP/Polvision Licensing Agreement to conflict with the Settlement Agreement. Clause II.E of the Settlement Agreement expanded SEI's rights beyond its previous first-run rights to the *TVP Polonia* programming content by now precluding TVP from distributing other channels containing a repeat of the *TVP Polonia* programming content. However, Clause II.E's restriction on TVP distributing "other channels" containing *TVP Polonia* programming did not prevent TVP from distributing individual programming on *TVP Polonia*.

## VII.  TVP's Extensive Efforts To Provide Replacement Programming To Polvision

52.  Despite TVP's view that the August 31, 2009 TVP/Polvision Licensing Agreement did not conflict with the Settlement Agreement, having just concluded a two-year-long litigation with SEI culminating in the Settlement Agreement, TVP wanted to avoid further conflict with SEI. At the same time, TVP sought to avoid conflict with Polvision.

53.  To attempt to avoid conflict with SEI, on September 1, 2009 Zaniewska told Pokropek that certain provisions of the Settlement Agreement complicated the cooperation between TVP and Polvision, and asked Pokropek to confirm with SEI that Polvision could broadcast the episodes TVP had licensed to it in the August 31, 2009 TVP/Polvision Licensing Agreement. Pokropek responded that Polvision's agreement was with TVP, and indicated that Polvision planned to broadcast the licensed episodes. Zaniewska replied that TVP may have to terminate its agreement with Polvision, but would also try to renegotiate Clause II.E of the Settlement Agreement with SEI to clarify that it should not be read to preclude TVP's arrangements with Polvision. (September 1-3, 2009 Emails between Zaniewska and Pokropek, **Ex. 18.**)

54.  TVP could not reach agreement with SEI on modifying Clause II.E of the Settlement Agreement. Thus, in good faith, to comply with SEI's interpretation of Clause II.E, TVP began to try to find programming never broadcast on *TVP Polonia* that Polvision would accept as replacement programming instead of the content licensed in the August 31, 2009 TVP/Polvision Licensing Agreement.

7

55.   On October 23, 2009, Zaniewska wrote to Pokropek offering the first of such
      replacement programming. (October 23, 2009 Email from Zaniewska to Pokropek, **Ex.
      19.**) TVP also informed Pokropek that as of December 1, 2009, Polvision should stop
      broadcasting the episodes it had already received from TVP which were licensed in the
      August 31, 2009 TVP/Polvision Licensing Agreement. (November 28, 2009 Email from
      Elzbieta Herezinska to Pokropek, **Ex. 20.**)

56.   On November 30, 2009, TVP told Polvision that TVP was rescinding the implementation
      of the August 31, 2009 TVP/Polvision Licensing Agreement. (November 30, 2009 Fax
      from TVP to Walter Kotaba, **Ex. 21.**) Nevertheless, in order to avoid a dispute with
      Polvision, TVP still tried to reach agreement with Polvision on replacement content.

57.   On December 9, 2009, TVP told Polvision that it was still working on an offer of
      replacement programming. (December 9, 2009 Email from Piotr Lenarczyk to Pokropek,
      **Ex. 22.**)

58.   On December 21, 2009, TVP followed up with Polvision to confirm that Polvision had
      stopped broadcasting the episodes TVP had already provided to Polvision. (December 21,
      2009 Email from Zaniewska to Pokropek, **Ex. 22.**) TVP already had provided to
      Polvision a total of 238 episodes of the 400 episodes that TVP had agreed to provide.
      (December 23, 2009 Email from Zaniewska to Herezinska, **Ex. 23.**)

59.   TVP continued to work on assembling an offer to Polvision of replacement
      programming. On December 23, 2009, TVP wrote to Polvision to update Polvision on its
      efforts. (December 23, 2009 email from Elzbieta Herezinska to Pokropek, **Ex. 24.**) On
      January 6, 2010, TVP sent Polvision a further proposal for replacement programming.
      (January 6, 2010 Email from Zaniewska to Pokropek, **Ex. 25.**)

60.   On February 23, 2010, Polvision wrote to TVP rejecting TVP's offers for replacement
      content, and stating that it would hold TVP to the obligations TVP had agreed to in the
      August 31, 2009 TVP/Polvision Licensing Agreement. Polvision threatened to sue TVP if
      TVP did not comply. (February 23, 2010 Letter from Kotaba to Romulad Orzel, **Ex. 26.**)

61.   On April 1, 2010, Polvision met with TVP in Warsaw to further discuss possibilities for
      TVP offering Polvision replacement programming. (Minutes of April 1, 2010 meeting,
      **Ex. 27.**)

62.   On May 5, 2010, I followed up with Polvision and asked Kotaba if Polvision would
      accept the replacement series TVP discussed with Polvision at the April 1 meeting. (May
      5, 2010 Letter from Maria Nadolna to Walter Kotaba, **Ex. 28.**) That same day, I updated
      SEI's owner Boguslaw Spanski that TVP was trying to find replacement programming
      that Polvision would accept to replace the programming in the August 31, 2009
      TVP/Polvision Licensing Agreement. (May 5, 2010 Letter from Nadolna to Boguslaw
      Spanski, **Ex. 29.**)

63.   On May 13 and May 17, 2010, TVP again wrote to Polvision asking Kotaba to respond to
      TVP's offer of replacement programming, and demanding that Polvision stop
      broadcasting the episodes TVP had sent to Polvision and return those episodes to TVP.

8

(May 13 and May 17, 2010 Letters from Nadolna and Romuald Orzel to Kotaba, **Exs. 30, 31.**) Kotaba again refused TVP's offer of replacement programming, and again threatened to sue TVP. (May 17, 2010 Letter from Kotaba to Orzel, **Ex. 32.**)

64. On May 18, 2010, I tried yet again to convince Polvision to accept TVP's offer of replacement programming and to immediately stop broadcasting the episodes TVP had already provided to Polvision. I also asked Kotaba to make a financial proposal for TVP to pay Polvision a sum of money in exchange for stopping to broadcast the episodes. (May 18, 2010 Letter from Nadolna to Kotaba, **Ex. 33.**) In response, Polvision again threatened to sue TVP. (May 19, 2010 Letter from Kotaba to Orzel, **Ex. 34.**)

65. On June 8, 2010, I wrote Kotaba asking him once again to make a financial proposal, and to stop broadcasting and return the episodes TVP had sent to Polvision. (June 8, 2010 Letter from Nadolna to Kotaba, **Ex. 35.**) Kotaba ignored my June 8 letter, so I followed up with the same requests in two subsequent letters to him on June 14 and 25, 2010. (June 14 and 25, 2010 Letters from Nadolna to Kotaba, **Exs. 36, 37.**)

66. On June 30, 2010, TVP held a teleconference with Kotaba during which we were finally able to reach a preliminary agreement on replacement programming content. I memorialized our discussion in a letter I sent to Kotaba the next day attaching a draft of an annex to the August 31, 2009 TVP/Polvision Licensing Agreement. (July 1, 2010 Letter from Nadolna to Kotaba, **Ex. 38.**) After some further discussion with Kotaba, on July 8, 2010 I sent Kotaba a further draft of a proposed annex listing the episodes TVP and Polvision agreed that TVP would provide as replacement episodes. (My July 8, 2010 letter enclosing the draft Annex is attached as **Ex. 39.**)

67. On July 16, 2010, Polvision signed the Annex (the "July Annex"). (The signed July 2010 Annex is attached as **Ex. 40.**) All of the episodes in the July 2010 Annex had never been shown on *TVP Polonia*.

68. As of August 1, 2010, when the July 2010 Annex went into effect, Polvision had broadcast 215 of the 400 episodes originally licensed by TVP. Polvision certified that it would not broadcast the remainder of the episodes. (July 2010 Annex, Ex. 40, "Whereas" No. 1, and Art. 4.2)

69. In summary, nothing prevented TVP from entering into the March and June 2008 agreements. Similarly, nothing prevented TVP from signing the August 31, 2009 TVP/Polvision Licensing Agreement which TVP sent to Polvision on July 2, 2009. After the August 11, 2009 Settlement Agreement was concluded, from TVP's perspective it could still perform under the licensing agreement later countersigned by Polvision.

70. In good faith, to avoid further disputes with SEI, TVP expended extensive time and effort putting together offers of replacement content for Polvision (and asking Polvision for a financial settlement), though it took some time for Polvision to ultimately agree to the replacement content that TVP offered.

A-87

**VIII. SEI's Canadian Litigation Against An Unauthorized Distributor Of TVP Channels**

71.     In early 2010, SEI requested that TVP join SEI in its efforts to try to prevent an unauthorized distributor of TVP programming in Canada, IMB+ Records Inc. ("IMB"), from distributing TVP programming through an Internet-based television platform. SEI claimed that IMB was distributing the TVP channels *TVP 1*, *TVP 2*, *TVP Historia*, *TVP Kultura*, and *TVP Sport* without authority from TVP.

72.     SEI has sued IMB in the Ontario Superior Court of Justice, in Toronto, Canada. I understand that SEI now claims that TVP must pay for SEI's attorney's fees incurred in pursuing that litigation against IMB. TVP never agreed to pay SEI's attorney's fees for such an action, and TVP has no obligation to pay SEI's attorneys fees. As I explain, TVP had good reason not to join the Canadian litigation against IMB.

73.     In the 1999 Addendum to the Agreement, TVP specifically designated SEI as its representative in the Territory to protect against unauthorized distribution of TVP programming. (1999 Addendum, Ex. 2, amendment No. 5 adding a new Section 7.) TVP agreed to provide "appropriate support" to SEI to protect against unauthorized distribution. But TVP never agreed to join SEI in a litigation against a third party, much less to fund SEI's legal fees.

74.     SEI has the exclusive right to distribute the *TVP Polonia* channel in the Territory. To the extent that the Canadian litigation concerns SEI's rights to distribute *TVP Polonia*, SEI should be able to protect its rights against IMB without TVP's participation in the lawsuit. Short of participating in the lawsuit, TVP has offered to support SEI in any reasonable way.

75.     TVP would not join SEI's litigation against IMB because TVP and SEI have different views on the precise distribution rights TVP has granted to SEI. That issue is centrally relevant to the Canadian litigation, as explained below. TVP did not want to be placed in the position of litigating with SEI in Canada over the precise distribution rights TVP has granted to SEI, especially considering that TVP had just recently concluded a lengthy, expensive litigation against SEI culminating in the Settlement Agreement.

76.     As mentioned above in the discussion of the facts relating to the Polvision agreements, SEI and TVP have different views of the distribution rights TVP has granted SEI. The dispute centers around the parties' conflicting interpretations of Clause II.E of the August 2009 Settlement Agreement. Clause II.E provides:

> "TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in North and South America that contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TV Info*."

> (August 11, 2009 Settlement Agreement, Ex. 15, Clause II.E.)

77.     SEI's view is that since Clause II.E prohibits TVP from licensing other channels containing *TVP Polonia* programming, the clause gives SEI exclusive distribution rights

10

to all of the individual programming on TVP's nine other television channels if such programming also appears on *TVP Polonia*.

78. On the contrary, TVP's view is that Clause II.E prohibits TVP from distributing "other channels" containing *TVP Polonia* programming. In other words, SEI has the exclusive rights to distribute the content of the *TVP Polonia* channel as a whole unit, but TVP has not given SEI distribution exclusivity to individual programs on TVP's other channels simply because such programs also appears on *TVP Polonia*.[1]

79. The director of TVP's Legal Department, Lukasz Boberek, explained to Spanski on April 9, 2010 why TVP would not join the Canadian litigation. Boberek told Spanski that the TVP channels IMB was allegedly distributing (*TVP 1*, *TVP 2*, *TVP Historia*, *TVP Kultura*, and *TVP Sport*) were not included in TVP's agreement with SEI and that SEI had no rights to programming on those channels. Boberek said that TVP would not agree to any interpretation of the SEI/TVP Agreement which would expand SEI's rights to programming on those channels. (April 9, 2010 Letter from Boberek to Spanski, **Ex. 41**.)

80. Although TVP refused to join the Canadian litigation, TVP took affirmative steps to assist SEI. On September 3, 2010 TVP wrote to IMB threatening to sue IMB if it continued to distribute TVP programming without authorization. (September 3, 2010 Letter from Tomasz Sieniutycz to IMB, **Ex. 42**.)

81. I understand that the IPTV (internet-based television) department of TVP had some preliminary discussions with IMB to see if a business arrangement could be reached between TVP and IMB. In connection with those discussions, IMB attended a meeting with TVP in Warsaw on October 14, 2010. But TVP never reached any agreement with IMB and never authorized IMB to distribute any of TVP's programming. TVP provided no support to IMB relating to its litigation with SEI in Canada.

82. On March 5, 2011, Spanski forwarded to me the Statement of Defense IMB filed in the Canadian litigation. The position IMB appeared to be taking in defense to SEI's claims confirmed to TVP that its decision to refuse to join the Canadian litigation was the correct decision.

83. SEI had claimed (under its incorrect interpretation of Clause II.E) that it has exclusive distribution rights to any individual programming appearing on all of TVP's channel so

---

[1]     I understand that Spanski testified at his November 8, 2011 deposition that Clause II.E was intended to address SEI's claim in the 2007 litigation that TVP was planning to distribute an alternative channel to *TVP Polonia* containing *TVP Polonia* content. (November 8, 2011 Deposition of Boguslaw Spanski, pgs. 88:1-7, **Ex. 43**.) Clause II.E would restrict TVP from creating and distributing such an alternative channel to *TVP Polonia* containing the same content.

A-89

long as that programming also appeared on *TVP Polonia*.[2] (SEI's November 19, 2010 Amended Statement of Claim, **Ex. 44, ¶¶ 2, 14.**)

84.  IMB's position in the Canadian litigation was to the contrary. IMB's Statement of Defense rejected SEI's claims on the ground that SEI had no rights to channels other than *TVP Polonia* and therefore no standing to complain about IMB's distribution of other TVP channels. (IMB's March 4, 2011 Statement of Defense, **Ex. 45, ¶¶ 9-12.**)

85.  As such, the dispute between SEI and IMB appears to center around whether, as SEI claims, SEI has exclusive distribution rights to individual programming on TVP's other channels (such as *TVP 1, TVP 2*, etc.) where such programming overlaps with *TVP Polonia* programming, or whether, as IMB claims, SEI's rights are restricted to distributing the *TVP Polonia* channel and do not extend to individual overlapping programming contained on TVP's other channels. SEI and IMB anticipate that preparation for the trial of their case will be lengthy, expert witnesses will be required, and the trial will be lengthy. (November 30, 2011 Order, SEI v. IMB, Schedule B Nos. 4-5, **Ex. 46.**)

86.  In summary, TVP did not want to get involved in a lengthy litigation in Canada where the proper interpretation of Clause II.E is at issue. TVP has correctly decided not to join the Canadian litigation. TVP never agreed to join such a litigation or to fund SEI's legal bills. In the circumstances, where SEI has in its filings incorrectly stated the rights TVP has granted to SEI, joining the litigation cannot be considered the "appropriate support" that TVP has agreed to provide to SEI to protect against unauthorized distribution.

**IX.   TVP's Decision To Remove The *Klan* Program From *TVP Polonia***

87.  I discussed above in connection with SEI's Polvision claim TVP's extensive efforts in good faith despite disagreeing with SEI's interpretation of Clause II.E, to provide programming to Polvision to replace the programming TVP had licensed to Polvision as part of the August 31, 2009 TVP/Polvision Licensing Agreement.

88.  I understand that SEI claims that as part of TVP's effort to provide replacement programming to Polvision, in response to SEI filing its original complaint in this case on June 24, 2010, and "in an effort to frustrate SEI's claims to protect its contractual exclusive distribution rights" (SEI's October 1, 2010 Amended Complaint, ¶ 46), TVP removed the *Klan* program from the *TVP Polonia* programming lineup in order to license subsequent episodes of *Klan* to Polvision.

89.  First, SEI has no basis for any claim relating to TVP's removal of the *Klan* program from *TVP Polonia* because SEI has no control over TVP's programming decisions for *TVP*

---

[2]    I understand that SEI has taken a similar, incorrect position—that it has rights to individual programming on TVP's channels—in the other case between TVP and SEI pending before this Court relating to SEI's expired rights to TVP's *TVP Info* channel, *SEI v. TVP*, No. 12-CV-2897 (ALC)(GWG).

*Polonia.* Second, as I explain, SEI is incorrect about the timing of TVP's decision to remove the *Klan* program from *TVP Polonia*; that decision was made in TVP's normal course of editorial review prior to SEI's filing of the original complaint in this case, and, as I explain, for reasons unrelated to TVP's relationship with SEI.

### A. SEI Has No Control Over TVP's Editorial Decisions

90. There is no contractual basis for SEI's claim because the 1994 Agreement specifically provides that "TVP reserves the right to make changes to the TV Polonia programming..." (1994 Agreement, Ex. 1, § 9.4.)

91. SEI acknowledges that it has no control over TVP's programming decisions. SEI's website through which it distributes *TVP Polonia* programming in the Territory states that SEI is distributing *TVP Polonia* pursuant to a license from TVP, and SEI has "no influence" over *TVP Polonia* programming content. (Screenshot of SEI's website, "About Us" page, accessed November 1, 2011, **Ex. 47**.)

92. TVP would have never granted an outside party such as SEI control over its programming lineup which TVP must sometimes modify to fulfill its statutory mission of disseminating popular TVP programming via *TVP Polonia* to the widest possible audience.

### B. TVP Decided To Remove The *Klan* Program From *TVP Polonia* For Reasons Unrelated To TVP's Relationship With SEI

93. TVP's decision to remove *Klan* from the *TVP Polonia* programming lineup was made prior to the filing of SEI's original complaint based upon programming requirements from Poland's Ministry of Foreign Affairs and audience-expansion considerations. TVP's decision to remove *Klan* had no connection to TVP's relationship with SEI or Polvision.

94. During each of the four seasons of the year, editorial groups for each of TVP's channels conduct an editorial review of programming scheduled for that channel two seasons ahead of time.

95. The same practice is followed for TVP's *TVP Polonia* channel. An editorial group for *TVP Polonia* conducts its review four times annually to adjust programming on *TVP Polonia* to meet TVP's statutory requirements of disseminating *TVP Polonia* programming to the widest audience possible. The review for the *TVP Polonia* Spring programming each year is typically performed during the previous Fall season in November, and the review for the *TVP Polonia* Fall programming is performed during the previous Spring season in May.

96. In 2009, TVP hired Witold Laskowski as its new director of *TVP Polonia* programming. The *TVP Polonia* viewership in Poland amongst the most desirable age group, 16-to-49 year olds, had been declining for a while, and TVP wanted to grow its viewership. In November 2009, as part of TVP's Fall 2009 review of the *TVP Polonia* programming lineup for the Spring of 2010, TVP significantly revised its programming lineup to attempt to increase its Poland-based viewing audience in the 16-49 year-old age group.

13

97. TVP's changes as part of the Fall 2009 review resulted in greater viewing audiences in the 16-to-49 year-old age group beginning in the Spring of 2010. However, the *Klan* program, which was being broadcast during prime-time remained unchanged during that Fall 2009 editorial review and remained on *TVP Polonia* during the Spring of 2010 despite attracting a smaller audience than TVP's average audience levels during non-prime-time hours.

98. During the Spring of 2010, Poland's Ministry of Foreign Affairs directed TVP to begin broadcasting *Poland 24*, a current events program produced by TVP for Poles living abroad, on *TVP Polonia*.

99. To free up time for *Poland 24*, and to address the increasingly-declining ratings for *Klan* which had fallen even further below average *TVP Polonia* audience levels, as part of its Spring 2010 programming review in May 2010 TVP decided to remove *Klan* along with other programming beginning in the Fall of 2010 and to add more popular news, current affairs, educational, and cultural programming which would attract younger audiences. (The chart annexed as **Ex. 48** shows the declining *Klan* viewership in Poland in the months between January 2009 and June 2010 against the average *TVP Polonia* viewership in all age groups and in the 16-49 year-old age group.) As part of its Spring 2010 review of changes to be implemented in the Fall of 2010, TVP also decided to stop producing its *Zlotopolscy* soap opera series, which had been broadcast on TVP's channels since 1997.

100. TVP's Spring 2010 editorial changes implemented in the Fall of 2010 were proven justified. After TVP introduced *Poland 24* and replaced *Klan* with other more popular programming including the programs *Londynczycy, Czas honoru, Ojciec Mateusz, Przystan,* and *Dom nad rozlewiskiem*, overall *TVP Polonia* prime time viewership increased substantially for all shows, including among TVP's target 16-49 year-old age group.

101. It is incorrect for SEI to claim that after SEI filed its complaint in this case on June 24, 2010 TVP decided removed the *Klan* program from *TVP Polonia* to license the program to Polvision. As I explained, that decision was made almost two months earlier in May 2010 for reasons unrelated to TVP's relationship with SEI and TVP's offering of replacement programming to Polvision.

102. In addition to Poland, the *TVP Polonia* audience is spread throughout the world. The North American audience for *TVP Polonia* is only a small portion of the *TVP Polonia* worldwide audience. For example, while in the US and Canada some 45,000 viewers subscribe to SEI's television and internet offerings of *TVP Polonia*, in Lithuania alone there are some 300,000 viewers of *TVP Polonia*. TVP would have no interest in decreasing overall worldwide viewership of *TVP Polonia* by removing *Klan* so TVP could license certain subsequent episodes to Polvision as part of an agreement worth $50,270, less than SEI's average quarterly payment to TVP for distributing *TVP Polonia*.

14

I declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

Dated: Warsaw, Poland
       February 27, 2013

Maria Nadolna

15

A-93

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                      :

SPANSKI ENTERPRISES, INC.,          :

          Plaintiff,             :

          v.                :    10 CV 4933 (ALC)(GWG)

                                    :

TELEWIZJA POLSKA S.A.,         **TRIAL DECLARATION**

                          :  **OF PIOTR LENARCZYK**

          Defendant.          :

                                      :

                                      :
-------------------------------------------------------X

     I, Piotr Lenarczyk, declare under penalties of perjury under the laws of the United States

of America, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

<u>**BACKGROUND**</u>

     1.    I am currently employed by Polcast Television, as its head of acquisitions and

programming in connection with two of its Polish-language television channels, Water Planet

and Novela TV. From early 2006 until March 2010, I was employed by Telewizja Polska S.A.

("TVP"). I began my employment with TVP in its Corporate Affairs Department. Eventually, I

became deputy director and then director of TVP's Programming Acquisitions, Sales and

International Affairs Department, and was responsible for the acquisition and licensing of TVP

programming in Poland and around the world. On this basis, and for the reasons further

described below, I have personal knowledge of the facts set forth herein.

     2.    While employed by TVP, I supervised and oversaw TVP's response to a lawsuit

that Spanski Enterprises, Inc. ("SEI") filed against TVP and others in New York federal court

(the "Prior Action"). SEI commenced the Prior Action on February 8, 2007, in response to an

**A-94**

arbitration proceeding that TVP started in Warsaw, and the lawsuit ended via a Settlement Agreement between the parties dated August 11, 2009. A true and correct copy of the parties' Settlement Agreement can be found at **Plaintiff's Trial Exhibit** 7.

       3.     I was the person at TVP in charge of the negotiation of the Settlement Agreement on TVP's behalf, and know its provisions and what the parties intended by including them. In connection with these negotiations, I had numerous personal telephone conversations and meetings with Bogusław M. Spanski, SEI's President, as well as internal discussions at TVP. In addition, I explained the Settlement Agreement and its provisions to Piotr Farfal, then the sole member of TVP's Management Board, who signed the Settlement Agreement on behalf of TVP. Further, my signature appears on the Settlement Agreement, as I approved the terms in advance of Mr. Farfal's signing the Settlement Agreement.

## BY THE SETTLEMENT AGREEMENT, TVP REPRESENTED THAT SEI WAS IN MATERIAL COMPLIANCE WITH THE PARTIES' AGREEMENT

       4.     It was the intent of the parties in entering into the Settlement Agreement to fully and finally resolve the parties' various claims raised in the Prior Action (including, as is relevant here, TVP's counterclaims that SEI had breached the parties' 1994 Agreement (as amended) in numerous ways, and SEI's corresponding claims seeking declaratory relief that SEI was not in breach).

       5.     In order to effectuate the above intent, the Settlement Agreement contained a representation by TVP that SEI had been and remained in material compliance with the parties' 1994 Agreement. It was clearly understood by both parties that this was a representation made by TVP (and insisted upon by SEI), to put an end to any and all claims against SEI based upon any claimed breach of the 1994 Agreement.



A-95

6.    By the Settlement Agreement, and TVP's representation therein concerning SEI's material compliance with the terms of the parties' 1994 Agreement, TVP also approved and agreed to the manner pursuant to which SEI was then operating under the 1994 Agreement. Thus, while TVP represented in the August 11, 2009 Settlement Agreement that SEI was in material compliance, TVP also recognized and understood that SEI would not be in breach of the 1994 Agreement if SEI continued to so operate in accordance with the 1994 Agreement and Settlement Agreement. Indeed, until my departure from TVP in March 2010, I was not aware of any claim by TVP that SEI (or notice by TVP to SEI) of any claimed contractual breach by SEI. In that respect, TVP was aware of the marketing efforts made by SEI, and the number of subscribers to *TVP Polonia* through SEI, both as of the date of the Settlement Agreement and in March 2010; and, to the best of my knowledge, TVP did not believe that SEI was in breach of the 1994 Agreement.

### INTERNET DISTRIBUTION PURSUANT TO THE PARTIES' AGREEMENT

7.    I understand that TVP claims in this action that SEI's web site for the distribution of TVP's television programming over the Internet in North and South America is somehow deficient, and that such purported deficiencies have damaged TVP in the form of lost subscribers. As to these assertions, however, it is important to note that under the parties' 1994 Agreement (a true and correct copy of which can be found at **Plaintiff's Trial Exhibit 1**, with certified English translation at **Plaintiff's Trial Exhibit 2**), SEI has no obligation to maintain any web page or Internet presence, as "[d]ecisions as to distribution technologies for Program broadcast within the Territory [by SEI] will be at the sole discretion of SEI." See id. at § 5(1).

8.    I further understand that TVP is now claiming that SEI's web site is somehow deficient because the programming offered on it does not include Spanish- and Portuguese-

3

language versions or subtitles. Pursuant to the parties' 1994 Agreement, however, SEI

"[u]nder[took] to preserve the full integrity of each TV POLONIA show," and the 1994

Agreement nowhere provides that SEI has the right, let alone the obligation, to unilaterally add

Spanish- or Portuguese-language subtitles to TVP's programming. See id. at § 3(3). Indeed,

TVP does not offer Spanish- or Portuguese-language subtitles on its own web site (www.tvp.pl)

nor on its satellite broadcast in Europe – both of which reach Spain and Portugal. Nor, to my

knowledge, has TVP offered to provide such subtitled programming for distribution by SEI in

North and South America.

9. While I was employed at TVP, no one complained to me, or in my presence,

about SEI's web site or Internet-based distribution of TVP programming; and certainly no one

sent a deficiency notice to SEI concerning its web site or its Internet-based distribution.

### TVP'S DISTRIBUTION AGREEMENTS WITH POLVISION

10. In my capacity as director of TVP's Programming Acquisitions, Sales and

International Affairs Department, I executed on TVP's behalf an August 31, 2009 license

agreement with Polvision (a true and correct copy of which can be found at **Plaintiff's Trial**

**Exhibit 25**, with a certified English translation at **Plaintiff's Trial Exhibit 26**), a Chicago-based

distributor of Polish-language television programming. The August 31, 2009 license agreement

purported to grant Polvision the right to distribute certain television programs that had previously

been broadcast on and appeared as part of *TVP Polonia*.

11. I actually signed the August 31, 2009 license agreement with Polvision prior to

signing the August 11, 2009 Settlement Agreement with SEI (Polvision's counter-signature came

after the August 11, 2009 Settlement Agreement). When negotiating the Settlement Agreement

with Mr. Spanski of SEI, however, I did not tell him about the Polvision license agreement.

4

12.    After the execution of the parties' Settlement Agreement, I and others at TVP realized that its license of *TVP Polonia* programming to Polvision was a mistake and in breach of SEI's contractual exclusivity.

13.    Accordingly, in November and December 2009, I instructed that TVP advise Polvision that it must immediately cease the broadcast of any TVP programming that had appeared on *TVP Polonia* (including the serials *Na dobre I na zle*, *Plebania*, *Klan* and *Zlotoplscy*). I and my colleagues (at my direction) had numerous written and over-the-phone discussions with Polvision about this issue and requested that Polvision cease from distributing *TVP Polonia* programming. See, e.g., **Plaintiff's Trial Exhibits 29** (Polish) and **30** (certified English-language translation of a November 28, 2009 e-mail sent by my then-colleague, Elzbieta Herezinska, to Agnieszka Pokropek of Polvision, stating that: "Director Piotr Lenarczyk has informed me today that as a result of the most recent negotiations between us and Mr. Spanski you [Polvision] must as of December 1 of this year and until further notice cease broadcasting the following series provided by us:  For Good and For Bad, The Vicarage, The Clan and Zlotopolscy."); **Plaintiff's Trial Exhibits 31** (Polish) and **32** (certified English-language translation of December 2009 e-mails sent by Ms. Herezinska and me to Ms. Pokropek of Polvision); **Plaintiff's Trial Exhibit 33** (original Polish and certified English-language translation of December 23, 2009 e-mails to Polvision).

I declare under penalties of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on ___01/03___ 2013
         1st of march

PIOTR LENARCZYK

5

A-98

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                               :

SPANSKI ENTERPRISES, INC.,
                               :   10 Civ. 4933 (ALC)(GWG)

         Plaintiff,
                               :

        v.                         :   **TRIAL DECLARATION OF BOGUSLAW**

                                 **SPANSKI ON BEHALF OF PLAINTIFF**
TELEWIZJA POLSKA S.A.,          :   **SPANSKI ENTERPRISES, INC.**

         Defendant.
                               :

                               :
------------------------------------------------------- X

     I, BOGUSLAW M. SPANSKI, declare under penalties of perjury under the laws of the

United States of America that the following is true and correct:

**Overview of SEI's Claims**

     1.     I am the owner[1] of Spanski Enterprises Inc. ("SEI"), the plaintiff in this action.  In

1994, SEI entered into an agreement with Defendant Telewizja Polska S.A. ("TVP") whereby

SEI acquired the exclusive right to distribute TVP's Polish-language television channel *TVP*

*Polonia* in North and South America by any and all means.  I have personal knowledge of the

matters set forth herein, and respectfully submit this trial declaration, pursuant to the Court's

individual rules, on behalf of Plaintiff SEI and in support of SEI's claims based upon TVP's

multiple contractual breaches.

     2.     As set forth more fully below, Plaintiff SEI seeks damages for Defendant TVP's

breach of a December 14, 1994 written agreement (the "Agreement," as amended by a

---

[1] I own an 89% interest in SEI and my wife Maria owns the other 11%.

November 4, 1999 First Addendum and an April 29, 2002 Second Addendum, as well as an

August 11, 2009 written settlement agreement (the "Settlement Agreement")) pursuant to which

TVP respectively granted and confirmed the grant to SEI of the exclusive right to broadcast

certain Polish-language television programming in the United States, among other locations.

Just weeks after TVP executed the 2009 Settlement Agreement (which settled a multi-year prior

action between the parties pending before this Court) and confirmed therein that "SEI is and

shall remain the exclusive distributor of [certain TVP] … programming content in the territory of

North and South America by any and all means of distribution …," TVP  breached the

Agreement and Settlement Agreement by purportedly licensing and distributing this very same

programming to Polvision, a competitor of SEI in Chicago (one of the largest Polish-American

markets in the United States).  As a clear and direct result of TVP's breach of contract, SEI has

suffered substantial monetary damages.  See generally Expert Report of Stephen Shulman

(submitted herewith).

     3.     Notwithstanding that TVP admitted to me that TVP's license to Polvision was in

breach of TVP's agreements with SEI and that TVP would undertake to promptly cure this

breach, TVP falsely wrote to me that it had terminated its license to Polvision.  Shortly after I

discovered that TVP's representation was not true, and  SEI initiated this action,  TVP responded

by removing the longest-running and most popular television series in the history of TVP from

the *TVP Polonia* channel exclusively licensed to SEI in North and South America, in an apparent

attempt to justify its licensing and distribution of this program series to Polvision, thus further

breaching the Agreement and Settlement Agreement by depriving SEI of its contractual benefits

thereunder.  As a clear and direct result of TVP's breach of contract and removal of this popular

program series, SEI has suffered substantial monetary damages.  See generally Expert Report of Stephen Shulman (submitted herewith).

4.        In addition, and contrary to its clear contractual obligations, TVP has failed to support and cooperate with SEI in its efforts to stop an unauthorized party from infringing SEI's exclusive rights as to *TVP Polonia* programming in Canada.  To the contrary, the documentary evidence produced by TVP in this action clearly reveals that at the same time SEI requested TVP's contractually-promised assistance to fight an infringer of exclusive distribution rights in Canada (which TVP refused to provide), TVP was in actual negotiations with this infringer, who offered to provide TVP "legal assistance" during the pendency of the parties' prior action to disprove that SEI's distribution rights were exclusive.  As a clear and direct result of TVP's breach of contract, SEI has suffered substantial monetary damages.  See generally Expert Report of Stephen Shulman; Trial Declaration of Casey Chisick, Esq. (submitted herewith).

**The Parties' Agreement – TVP Grants SEI Exclusive Distribution Rights**

5.        Plaintiff Spanski Enterprises, Inc. ("SEI") is a corporation organized under the laws of Canada with its principal place of business in Mississauga, Ontario.  SEI and its subsidiaries are engaged in, among other things, the distribution of Polish-language television and radio content in North and South America via satellite and cable television, as well as via the Internet.

6.        Defendant Telewizja Polska, S.A. ("TVP") is a business corporation organized under the laws of Poland and is wholly owned by the Polish government.  TVP owns and operates several Polish-language television channels including *TVP Polonia* (f/k/a *TV Polonia*) and *TVP Info* (f/k/a *TVP3 Regionalna*).

3

7.     TVP launched the satellite television channel called *TVP Polonia* in March 1993. One of TVP's former divisions, the TV Polonia Programming Department (which was responsible for the *TVP Polonia* channel), had the mandate of creating and distributing Polish-language public television addressed to the Polish-diaspora worldwide.

8.     In late 1993, I was approached by Mr. Paweł Jedlewski, who was then employed by TVP in its TV Polonia Programming Department, with the suggestion that I should become involved in the distribution of *TVP Polonia* in North America.  Mr. Jedlewski advised me that TVP was actively searching for a new partner who would underwrite the risk and expense of transmitting the signal of *TVP Polonia* to North America, and to develop a market for its distribution there, as TVP's original partner had failed to accomplish the task.

9.     During the negotiations that followed between the parties, TVP's representatives advised me that TVP did not want to incur any of the necessary costs and expenses related to the transmission of the *TVP Polonia* signal to North America or the development of a North American market for the channel's distribution.  TVP viewed this as a very high-risk venture, and it was not TVP's mandate to undertake such high-risk strategies.  Thus, TVP's primary interest was to enter into an agreement with a partner who could fully underwrite the costs associated with such distribution, including all "start-up" costs.  In order for the venture to be economically feasible to SEI, I explained and clearly presented to TVP that in exchange, TVP would have to grant SEI the long-term, exclusive right to distribute and re-broadcast *TVP Polonia* in North and South America.

10.     TVP has produced in this action minutes of a January 28, 1994 meeting that I attended in Poland to discuss the proposed cooperation between TVP and SEI.  See **Plaintiff's Trial Exhibits 112** (Polish) and **113** (certified English translation). The meeting minutes

document that SEI's demand for an exclusive license to re-broadcast *TVP Polonia* was the lynchpin of any proposed agreement:

> The Canadian party [SEI] is inclined to establish cooperation in respect to introducing TV POLONIA on the American market **provided they obtain the exclusive rights** for the transmission in the DBS system [Direct Broadcasting System].

**Plaintiff's Trial Exhibit 113** at ¶ 9 (emphasis added).

11.    Very shortly after this meeting, on or about February 1, 1994, SEI sent TVP a "Proposal of Cooperation with TV POLONIA on the North American Market." See **Plaintiff's Trial Exhibits 114** (Polish) and **115** (certified English translation).  In this proposal SEI made clear that:

> The basic condition for realizing the venture of bringing TV POLONIA onto the North American market is the acquisition from [TVP] of an **exclusive license for re-broadcast of the whole and integral TV POLONIA program** on the North America continent.

**Plaintiff's Trial Exhibit 115** at 2 (TP7006367) (emphasis added).

12.    In exchange for TVP's grant to SEI of the exclusive right to re-broadcast *TV Polonia* in North America, SEI proposed to underwrite the costs associated with transmitting the television signal to North America and agreed to pay TVP an "[a]llocation of 8% to TELEWIZJI POLSKIEJ S.A. [TVP] from the gross revenues received by [an SEI affiliated company] as compensation" in connection with the "re-broadcast" of the program.  See **Plaintiff's Trial Exhibit 115** at 3 (TP7006368).  SEI also forecast that yearly revenues "should stabilize at around 2-3 million dollars annually" – exactly as it turned out. See id. at 3 (TP7006368).

13.    In a memorandum dated February 9, 1994 (**Plaintiff's Trial Exhibits 116** (Polish) and **117** (certified English translation)), Adam J. Gałczyński of TVP's *TV Polonia* Promotional Department summarized and analyzed SEI's proposal, and concluded that the

proposed royalty of 8% of the gross revenues received by the SEI affiliated companies was a "safe" one, and proposed that a contract be entered into with SEI providing "[t]hat **exclusive rights be granted to broadcast [the] TV POLONIA program** on the DBS system." Id. at TP7006379 (emphasis added).

14.     After nearly one year of negotiations, SEI and TVP entered into an agreement (the "Agreement") dated as of December 14, 1994. See **Plaintiff's Trial Exhibits 1** (Polish) and **2** (certified English translation).

15.     Pursuant to the Agreement – and in accordance with the parties' prior proposals and discussions – SEI acquired the exclusive, long-term right to distribute *TVP Polonia*, including its copyrighted content, in North and South America (the "Territory") via satellite, cable, as well as any other signal distribution technology. See **Plaintiff's Trial Exhibit 2** (Agreement) at §§ 2(2), 2(3), 5(1) ("TVP gives SEI the **exclusive right** to one-time use of TV Polonia shows in its Program"; "To implement Section 2 above, **TVP grants SEI the exclusive right to receive and use the Signal in the Territory**") (emphasis added); id. at § 10 (providing for a term of twenty-five (25) years with an option to extend for ten (10) additional years). It was the intent of the parties and well understood by TVP (and in conformity with the parties' negotiations and the express language of the Agreement itself), that SEI was granted the exclusive right to re-broadcast the *TVP Polonia* channel (in its entirety or any individual show) in North and South America.

16.     In exchange for TVP's grant to SEI of the exclusive right to distribute *TVP Polonia* in the Territory, SEI agreed, among other things, to bear the costs associated with the transfer and re-broadcast of the signal, and to pay TVP a sum equal to eight percent (8%) of the revenues SEI received each calendar quarter derived from its exploitation of *TVP Polonia*,

6

specifically from the revenues received by SEI from subscription fees and advertisements.  See id. (Agreement) at §§ 4(3), 6.

17.    After the execution of the Agreement, TVP (by its Management Board) executed and delivered to SEI a number of English- and Polish-language statements, which were to be provided to SEI's potential distribution partners in North America, confirming the exclusive distribution rights of SEI (and its affiliated companies, Telewizja Polska USA and Telewizja Polska Canada).  The first set of statements, applicable to the territory of the United States, provided that:

> **Telewizja Polska USA Inc. represented by Mr. B.M. (Bob) Spanski and Mr. B.T. (Bob) Pisarek is the only legal entity having the right, granted by exclusive agreement, to receive and rebroadcast on the territory of the United States of America the satellite programme produced by TELEWIZJA POLSKA S.A. known as TV Polonia.**

**Plaintiff's Trial Exhibits at 8** (Polish) and **9** (English original) at SEI 000005 (emphasis added).

18.    The second set of statements (true and correct copies of which can be found at **Plaintiff's Trial Exhibits 10** (Polish) and **11** (English original)) similarly confirmed that SEI and its affiliates had the exclusive right to receive and rebroadcast *TVP Polonia* in Canada.  See Exhibit 18 at TP7000087; see also **Plaintiff's Trial Exhibits 12** (Polish) and **13** (certified English translation) at TP7004250 (March 15, 1995 letter from the President of the TVP Management Board, Wiesław Walendziak, to the Chairman of the Polish American Congress, Edward Moskal, stating: "In accordance with [the Agreement], Spanski Enterprises Inc., with the goal of bringing this venture into existence, has founded two companies – Telewizja Polska USA Inc. and Telewizja Polska Canada Inc., **having the exclusive right to receive and distribute the satellite programs of Telewizja Polska S.A. in North America under the name TV POLONIA.**") (emphasis added).

7

19.     TVP was well aware that the exclusivity that it had granted SEI extended beyond the signal of *TVP Polonia* in its entirety, and included exclusivity in the Territory as to each of the individual shows that comprised *TVP Polonia.* For instance, on May 24, 1995, TVP's legal advisor, Ryszard Świderski, issued a legal opinion (true and correct copies of which can be found at **Plaintiff's Trial Exhibits 14** (Polish) and **15** (certified English translation)) that warned TVP that providing American or Canadian television stations with individual shows of *TVP Polonia* would cause TVP to be in breach of section 2(2) of the Agreement between SEI and TVP:

**LEGAL OPINION**

> Regarding the interpretation of paragraph 2, section 2 of the agreement of December 14, 1994, between TVP S.A. and Spanski Enterprises Inc.
>
> Upon analysis of the text of paragraph 2, section 2 of the abovementioned agreement, there is no doubt that TVP S.A. granted SEI <u>exclusive rights</u> to the use of the TV Polonia Broadcast in the framework of the Program. These exclusive rights are also unequivocally confirmed by paragraph 2, section 3 of the agreement which states that for the purpose of the realization of section 2, TVP grants SEI <u>exclusive rights</u> to receive and use the signal on the Territory.
>
> Providing access to "Wiadomości" and "Panorama" to local Polonia stations in the USA and Canada would infringe on the exclusive rights granted SEI under paragraph 2, sections 2 and 3 of the agreement and could have the following consequences:
>
> a) a determination that TVP S.A. has seriously breached the agreement ….

**Plaintiff's Trial Exhibit 15** at TP7006700 (emphasis in original).

20.     As is particularly relevant to the claims asserted in this action, on June 8, 1995, TVP wrote to Polvision (a competing Polish-language television station based in Chicago), advising Polvision that: "In connection with the "TV Polonia" satellite transmission, which will

be activated as of 1.07.1995 on the territory of North America, we are forced, effective as of that date, to cancel our permission (which was issued on 18.08.1992) [for Polvision] to make use of [the *TVP Polonia* shows] "Wiadomosci" and "Panorama" in the "POLVISION" programming."

<u>See</u> **Plaintiff's Trial Exhibits 16** (Polish) and **17** (certified English translation).

21.     Shortly after the forgoing legal opinion and fax to Polvision, on June 12, 1995, Marta Suchodolska, Deputy Director of TVP's Bureau of Trade and Foreign Cooperation, sent me a fax (a true and correct copy of which can be found at **Plaintiff's Trial Exhibits 18** (Polish) and **19** (certified English translation)) confirming SEI's exclusive rights in the Territory as to the individual programming that comprised *TVP Polonia*:

> … I would like to advise you … that I have informed local Polonia stations, that from this day forward we are suspending (in accordance with the Agreement between TVP S.A. and Spanski Enterprises Inc.) access to "*Wiadomości*" (News), "*Panorama*", "*Teleexpress*", and "*Magazyn Kulturalny*" (Culture Magazine), that form an integral part of the "TV POLONIA" program.

**Plaintiff's Trial Exhibit 19** at TP7003598; <u>see also</u> **Plaintiff's Trial Exhibits 20** (Polish) and **21** (certified English translation of June 9, 1997 letter from TVP to Polish Television-Chicago advising "that the rights to news programs, within the TV Polonia program, are held by Mr. Spanski").

22.     Similarly, in a fax of September 18, 1995, TVP's then Management Board member Jerzy Romanski wrote to me confirming that: "...I respectfully advise you that Telewizja Polska S.A. has withdrawn, by means of a written communication (like above) the approval that it had granted to the "POLVISION" program in Chicago for the airing of new materials that comprise an integral part of the TV POLONIA program."). <u>See</u> **Plaintiff's Trial Exhibits 147** (Polish) and **148** (certified English translation).

9

23.     In a February 19, 1996 letter from TVP's Deputy Director of the *TV Polonia*

Satellite Program to a Member of the Polish National Council on Radio and Television, TVP

succinctly explained:

> It is a known fact that Telewizja Polska S.A. for three years has
> been trying to have the program TV POLONIA, aimed to our
> countrymen abroad, reach the American continent.  Without
> having any resources from any sources for investments that would
> make it possible to disseminate the TV POLONIA signal in
> America, TVP S.A., after several unsuccessful attempts, found a
> partner prepared to take the financial risk of such an undertaking –
> Spanski Enterprises Inc., with which it concluded an agreement.
> The Agreement contains specific requirements and limitations, ie.
> it gives our Partner exclusive rights to the TV POLONIA signal.
> These exclusive rights are a sine qua non, considering the
> difficulty of this undertaking and the significant costs of
> implementing it, which are borne by the signatory to our
> Agreement.  In view of this, broadcasts within the TV POLONIA
> lineup may not be made available by us to local Polish language
> stations in America.  This would violate the terms of the
> Agreement, which may cause it to be dissolved ....

See **Plaintiff's Trial Exhibits 149** (Polish) and **150** (certified English translation).

24.     At various later dates, TVP similarly confirmed SEI's exclusive rights to

distribute *TVP Polonia* programming content in the Territory.  See **Plaintiff's Trial Exhibits**

**122** at SEI 000166 (March 24, 1998 statement co-executed by TVP's President, Ryszard Miazek,

and Vice President Adam Brodziak); **123** (March 25, 1998 fax from TVP's Director of the

International Relations Department, Jerzy Romański, providing that: "This is to confirm that

Telewizja Polska USA, Inc., based in Elk Grove Village, Illinois **holds the exclusive rights** to

the television programming produced by Telewizja Polska S.A. in Warsaw, and known as TV

Polonia for the territory of USA.") (emphasis added); **126** (Polish) and **127** (certified English

translation of June 1, 1998 TVP press release, stating that: "**In accordance to the Agreement**

**dated December 14, 1994, the exclusive distributor of TV Polonia in North America is the**

10

**Spanski Enterprises, Inc. (SEI)** company that has assumed to bear all costs associated with this new venture.") (emphasis added); **134-136** ("… [W]e [TVP] understand that our **exclusive partner** has made numerous proposals (including substantial concessions) to extend the reciving [*sic*: receiving] [of] TV Polonia. […] Once again, we want to remind you, that Mr. Spanski is the party [to whom] you should be directing your queries, as **he is our exclusive partner for America**.") (emphasis added); **137** (e-mail from TVP to EchoStar: "Once again, we would like to advise you, that Mr. Spanski is our exclusive, trusted and long term partner in territories including the United States of America ….").

**The First Addendum to the Parties' Agreement**

25.     Following numerous discussions and negotiations that took place between July and November 1999, SEI and TVP entered into an addendum to the Agreement (the "First Addendum" dated November 4, 1999).  True and correct copies of the First Addendum can be found at **Plaintiff's Trial Exhibits 3** (Polish) and **4** (certified English translation).

26.     Among other things, by the First Addendum, TVP expressly granted SEI the exclusive right to distribute *TVP Polonia* programming via the Internet within the Territory.  <u>See</u> **Plaintiff's Trial Exhibit 4** (First Addendum) at § 1(2)-(3) ("TVP grants SEI the exclusive right to use TV Polonia Shows in its programming on the Internet."; "In order to implement Sections 2 and 3, TVP gives SEI [the] exclusive right to receive and use the signal on the Territory").  It was the intent of the parties and the purpose of the First Addendum to make it expressly clear that the Internet distribution of *TVP Polonia* that SEI and its affiliated companies had in fact engaged in since September 1998 – *i.e.* the "Video on Demand" of the individual programs of *TVP Polonia* – was fully authorized and approved.

11

27.    The First Addendum also contained a provision by which TVP designated SEI as TVP's representative throughout the Territory with authority from TVP to combat illegal piracy and infringement of *TVP Polonia* programming content, and that TVP will provide support to SEI in connection therewith. See id. at § 1(5). Specifically, the First Addendum provides that: "TVP designates SEI as its representative in the Territory, authorized to prevent any violations and to protect TVP rights. Any legal action on behalf of TVP, in particular incurring costs, may be undertaken only by prior approval by TVP. **TVP will provide appropriate support to SEI actions in this regard**." Id. (emphasis added).

**The Second Addendum to the Parties' Agreement**

28.    By instrument dated April 29, 2002, SEI and TVP entered into a second addendum to the Agreement (the "Second Addendum"). True and correct copies of the Second Addendum can be found at **Plaintiff's Trial Exhibits 5** (Polish) and **6** (certified English translation).

29.    The most significant provision of the Second Addendum included the grant from TVP to SEI of the exclusive rights in and to the distribution in the Territory of a second channel, *TVP Info* (f/k/a *TVP3 Regionalna*). See **Plaintiff's Trial Exhibit 6** (Second Addendum) at § 1 (amending the Agreement to refer to the channels "TV Polonia and TVP3"). The Second Addendum provided for a ten-year term as to SEI's affirmative right to distribute *TVP Info* programming content, which has now expired.

30.    The Second Addendum was also significant in that it changed the governing law and the venue for any future disputes that might arise between the parties. Specifically, the Second Addendum unambiguously provides that "[t]he Agreement is subject to the law of the

State of New York, United States of America, and all disputes will be regulated [*i.e.* resolved] by

the Federal Court in New York City." See id. (Second Addendum) at § 8.

**The "Prior Action" Between the Parties and the Settlement Thereof**

31.     As SEI's efforts over the years to promote and expand the market for *TVP*

*Polonia* and *TVP Info* met with increased success and profitability, TVP's representatives began

to express their view to me that the Agreement was "too favorable" to SEI.  The market for

Polish television in the Territory having now been established by SEI and its affiliates, and SEI

having already made the initial investment to develop the market in the Americas (at no financial

or other risk to TVP), TVP apparently believed that it no longer needed SEI in the equation.

Indeed, TVP sought to terminate, renegotiate, or "break" its contractual agreements with SEI

(and put that desire in writing).

32.     TVP's efforts to deprive SEI of the benefits of the Agreement intensified in 2006

when, due to political changes in Poland, virtually the entire senior management of TVP was

replaced.  TVP's new executives had little to no knowledge of, nor respect for, the parties' intent

and negotiations in entering into the Agreement or its Addenda, or the manner in which SEI and

TVP had performed their respective obligations for the preceding twelve years.

33.     In 2006, despite having agreed to litigate all disputes in Federal Court in New

York, TVP improperly initiated an arbitration proceeding in Warsaw against SEI asserting that

SEI had purportedly breached the parties' Agreement (as amended) in numerous ways, thus

entitling TVP to damages and rescission.  Among other things, TVP alleged that (given the

passage of twelve years since the execution of the Agreement) the Agreement, which had an

initial term of 25 years, was too favorable to SEI.

34.     Because the parties had contractually agreed to litigate their disputes before this Court, SEI brought a declaratory judgment action against TVP in this Court seeking declaratory relief concerning its contractual rights (the "Prior Action," captioned *Spanski Enterprises, Inc. et. al v. Telewizja Polska S.A., et al.*; SDNY Index No. 07 Civ. 930).

35.     This Court enjoined the Warsaw arbitration, and TVP then counterclaimed in the Prior Action that SEI had purportedly materially breached the Agreement in numerous different ways, including by purportedly failing to use reasonable efforts to promote and exploit TVP's programming.

36.     Litigation of the Prior Action lasted for approximately two and a half years, costing SEI well over $2 million in legal fees and litigation-related expenses.

37.     SEI and TVP settled the Prior Action on August 11, 2009, just weeks before trial was scheduled, by a written settlement agreement (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement can be found at **Plaintiff's Trial Exhibit 7**.

38.     I was directly involved in the negotiation of the Settlement Agreement with TVP, and executed the final Settlement Agreement on SEI's behalf. The settlement was intended by both parties as a complete settlement of all claims made in the litigation, with the sole exception of a pending motion for monetary sanctions against TVP for discovery abuse, which sanctions were later granted by the Court in the amount of $158,932.12.

39.     The Settlement Agreement set forth the terms upon which SEI would agree to settle and resolve the Prior Action. In the Settlement Agreement, the parties' provided for and intended that TVP provide SEI with a representation that SEI had been and remained in material compliance with the Agreement. This representation by TVP squarely addressed and resolved in SEI's favor (1) SEI's then-pending claims for declaratory relief that SEI was not in breach of the

Agreement; and (2) TVP's counterclaims alleging that SEI had materially breach the Agreement in numerous ways.

40.    The Settlement Agreement also confirmed SEI's exclusive right to distribute *TVP Polonia* programming content, as it expressly provided that: "SEI is and shall remain the exclusive distributor of *TV Polonia* and *TVP Info* programming content in the territory of North and South America by any and all means of distribution [subject to a "sole exception" not relevant to this action]." Id. (Settlement Agreement) at II.A.

41.    The Settlement Agreement also unambiguously provided that: TVP shall not distribute ... or permit the distribution of any other channels in North or South America that contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TV Info*." Id. (Settlement Agreement) at II.E.

**SEI's First Claim – Breach of Contract (Exclusivity) by TVP's License to Polvision**

42.    Within weeks of entering into the Settlement Agreement with TVP, I learned that Polvision, a competing Polish-language television company located in Chicago (the largest Polish-American market in the United States), was distributing *TVP Polonia* programming content in the United States.  More specifically, Polvision was distributing some of *TVP Polonia*'s most popular and longest-running serial programs – *Plebania*; *Klan*; *Na Dobre i na Zle*; and *Zlotopolscy*.  See generally **Plaintiff's Trial Exhibit 88** (*TVP Polonia* programming guides evidencing that the series *Plebania, Klan, Na Dobre i na Zle* and *Zlotopolscy* are part of the *TVP Polonia* broadcast); see also **Plaintiff's Trial Exhibits 87** (Polvision programming guide) and **92** (Polvision advertising and programming guides); see also **Plaintiff's Trial Exhibits 25** (Polish) and **26** (certified English translation of August 31, 2009 license agreement between TVP and Polvision); **Exhibit 106**.

43.     Upon discovering this, I immediately contacted TVP's Piotr Lenarczyk, with whom I had negotiated the Settlement Agreement. At no time during the negotiation of the parties' Settlement Agreement, nor during my initial discussions with Mr. Lenarczyk, did TVP disclose that it had in fact purported to license *TVP Polonia* programming content to Polvision. Indeed, at no time in the Prior Action did TVP disclose (via the production of documents or deposition testimony) its prior agreements with Polvision, which date back to at least 2008 (even though TVP's Rule 30(b)(6) corporate representative in the Prior Action was Joanna Skierska, who executed both of the prior agreements with Polvision on TVP's behalf). See **Plaintiff's Trial Exhibits 22** (Polish) and **23** (certified English translation of March 17, 2008 Barter Agreement between TVP and Polvision); **24** (June 27, 2008 License Agreement between TVP and Polvision). In fact, TVP did not produce <u>any</u> of its purported agreements with Polvision in the Prior Action <u>or</u> in this action, even though those documents were required to be produced.

44.     The documentary evidence establishes that in September 2009, unbeknownst to SEI, TVP advised Polvision that it needed SEI's authority and permission to distribute *TVP Polonia* programming content in the United States. See **Plaintiff's Trial Exhibits 27** (Polish) and **28** (e-mail string between TVP and Polvision wherein TVP advised Polvision: "You may obtain information that TVP S.A. recently signed a settlement with Mr. Spanski's company. The provisions of this settlement unfortunately somewhat complicate our cooperation, because Spanski Enterprises in the USA are granted exclusive rights to material[] which has been and will be broadcast by TVP POLONIA. In connection with this you will have to contact Mr. Spanski to get his consent to broadcasting [of episodes of *Plebania*; *Klan*; *Na Dobre i na Zle*; and *Zlotopolscy*] …."; Polvision responded to TVP: "As far as I know, Mr. Spanski has had the exclusiveness to the programs broadcast via TVPolonia's antenna from way back under his

16

agreement and that's why before the cooperation Office sold us series or any other program they

always checked whether there was any collision with broadcasts of [*TVP Polonia*]").

45.     SEI never granted authority to Polvision (or TVP) for Polvision to distribute *TVP*

*Polonia* programming content in the United States. Indeed, SEI would never so license *TVP*

*Polonia* programming to a direct competitor absent a substantial premium above a market-based

license fee (because, among other reasons, such licensing would have the invariable effect of

decreasing SEI's revenues through its subscription-based distribution channels).

46.     By November 2009, TVP repeatedly sought confirmation that Polvision had

ceased its distribution of the program series *Plebania, Klan; Na Dobre i na Zle*, and *Zlotopolscy*.

See **Plaintiff's Trial Exhibits 29** (Polish) and **30** (certified English translation of a November

28, 2009 e-mail from TVP to Polvision: "Director Piotr Lenarczyk has informed me today that as

a result of the most recent negotiations between us and Mr. Spanski you must as of December 1

of this year and until further notice cease broadcasting the following series provided by us ….");

**31** (Polish) and **32** (certified English translation of December 2009 e-mail string between TVP

and Polvision); **33** (Polish and certified English translation of December 2009 e-mail string

between TVP and Polvision). Polvision, however, did not cease its broadcast and distribution of

the subject *TVP Polonia* programming (as conceded by Polvision's Rule 30(b)(6) witness,

Wlater Kotaba, at deposition).

47.     In January 2010, and further unbeknownst to SEI, TVP began to negotiate with

Polvision to replace the *TVP Polonia* programming content provided with alternative

programming content that had not appeared on *TVP Polonia*. See **Plaintiff's Trial Exhibits 35**

(Polish) and **36** (certified English translation of January 2010 e-mail string between TVP and

Polvision wherein TVP offers Polvision alternate programming).

17

48.     SEI, for its part, sent (via counsel) a cease-and-desist letter directly to Polvision. A true and correct copy of SEI's demand letter can be found at **Plaintiff's Trial Exhibit 101**. In the exchange of telephone calls and correspondence between respective counsel for SEI and Polvision that followed (a true and correct copy of which can be found at **Plaintiff's Trial Exhibits 99-100**), SEI learned for the first time that Polvision was distributing *TVP Polonia* programming content pursuant to a claimed license from TVP. At that time, however, neither Polvision nor TVP would provide a copy of the license to SEI or its counsel. Id.

49.     Ultimately, Polvision continued to distribute the *TVP Polonia* programming content that TVP had purportedly licensed. This distribution (free-to-air via satellite), in the largest Polish-American community in the United States, undoubtedly caused substantial damages via lost subscribers (see **Plaintiff's Trial Exhibits 93** and **94**) and/or lost license fees. SEI therefore filed its original complaint against TVP in this action on June 28, 2010, seeking damages for TVP's breach of SEI's exclusive distribution rights.

50.     The documentary evidence produced in this action establishes, however, that TVP attempted to "cure" its contractual breach of SEI's exclusivity by:

        (a) attempting to unilaterally terminate the Polvision license (see **Plaintiff's Trial Exhibits 36** (Polish) and **37** (certified English translation); **40** (Polish) and **41** (certified English translation); **50** (Polish) and **51** (certified English translation)), which Polvision rejected as a pretext (see **Plaintiff's Trial Exhibits 38** (Polish) and **39** (certified English translation));

        (b) continuing its negotiations with Polvision to replace the programming content purportedly licensed to Polvision pursuant to the August 31, 2009 license agreement (see **Plaintiff's Trial Exhibits 44** (Polish) and **45** (certified English translation); **48** (Polish) and **49** (certified English translation); **50** (Polish) and **51** certified English translation); **52** (Polish) and

18

**53** (certified English translation); **56** (Polish) and **57** (certified English translation); **62** (Polish) and **63** (certified English translation); **64** (Polish) and **65** certified English translation)); and

        (c)   attempting to negotiate the paid settlement with Polvision for the early termination of the August 31, 2009 license agreement (see **Plaintiff's Trial Exhibits 58** (Polish) and **59** (certified English translation)).

     51.    TVP recognized, however, that its purported August 31, 2009 license of *TVP Polonia* programming content to Polvision was in breach of SEI's exclusive rights.  See **Plaintiff's Trial Exhibits 42** (Polish) and **43** (certified English translation of internal TVP letter stating that: "In view of the impossibility, in light of the settlement agreement signed by TVP with the firm of Spanski Enterprises, as regards the further implementation of the license agreement entered into between us [TVP] and the Polish-language television station Polvision in Chicago on the subject of showing selected TVP serial programs on the Polvision channel that are being emitted by TV Polonia, I am turning to you with the request that you consider the possibility of deferring the premiere on TVP Polonia of the series that are enumerated in the attachment to this letter."); **46** (Polish) and **47** (certified English translation of internal TVP memorandum stating that: "I hereby kindly inform you that, after receiving a final legal opinion, we have made the decision to cease making available to the Polvision station series not yet aired by TVP Polonia."); **54** (Polish) and **55** (certified English translation of internal TVP memo discussing negotiations with Polvision to provide alternative programming and stating that: "Due to the fact that the series presently aired by Polvision; *"Klan", "Zlotopolscy", "Plebania",* and *"Na dobre i na zle",* in light of the settlement agreement entered into between TVP and the company Spanski Enterprises [SEI] violates solely the rights of that company, TVP, after having obtained information from SEI about the breach of its rights, has carefully analyzed the

possibilities of changing the content to such that has not been, is not, and shall not be relayed on TV Polonia, therefore in accordance with the subject of the accord [*i.e.*, Settlement Agreement]"); **60** (Polish) and **61** (certified English translation of June 25, 2010 letter from TVP to Polvision stating that: "Owing to the fact that we cannot make available for you to air the series and other programs constituting the content of TVP Polonia, … [we ask that you reconsider the airing of alternate programming]"); **72** (Polish) and **73** (certified English translation of July 4, 2010 letter from TVP to Polvision providing that: "Due to the terms and conditions included in the agreements between Telewizja Polska S.A. [TVP] and Spanski Enterprises Inc. concerning the cooperation in North and South America, we would like to inform you that for the duration of the agreements, namely until [] 2019, no cooperation with your company will be possible. Therefore, please contact S.E.I. directly with regard to the business cooperation for broadcasting [TVP] programs in North and South America.").

52.     In light of the foregoing, and at the conclusion of its agreement with TVP, Polvision sought to license additional episodes of the subject *TVP Polonia* programming series directly from SEI (as confirmed by the deposition testimony of Polvision's Wlater Kotaba). SEI declined to so license programming to Polvision.

**SEI's Third Claim – Breach of Contract (Removal of *Klan* from *TVP Polonia*)**

53.     As detailed above, TVP attempted to resolve its breach of contract (based upon its provision of *TVP Polonia* programming to Polvision) by negotiating the termination of its license agreement with Polvision in exchange for either a monetary payment, or TVP's provision of alternate, non-*TVP Polonia* programming. See *supra* at ¶¶ 50-51; see also **Plaintiff's Trial Exhibits 42** (Polish) and **43** (certified English translation of internal TVP letter stating that: "In view of the impossibility, in light of the settlement agreement signed by TVP with the firm of

Spanski Enterprises, as regards the further implementation of the license agreement entered into between us [TVP] and the Polish-language television station Polvision in Chicago on the subject of showing selected TVP serial programs on the Polvision channel that are being emitted by TV Polonia, **I am turning to you with the request that you consider the possibility of deferring the premiere on TVP Polonia of the series that are enumerated in the attachment to this letter**.") (emphasis added); **50** (Polish) and **51** (certified English translation of May 5, 2010 letter from TVP to SEI stating that: "we [TVP] are now conducting discussions with Polvision in the matter of the exchange of content … so that broadcasts by it [Polvision] will not clash with the program content of TVP Polonia").

54.     After receiving a copy of the original Complaint filed in this action, wherein SEI alleged that any license of *TVP Polo*nia programming content from TVP to Polvision was in breach of the Agreement and the Settlement Agreement, TVP (in an unlawful attempt to frustrate SEI's contractual rights under the Agreement and Settlement Agreement and in breach thereof) removed the long-running and highly popular television series *Klan* from the *TVP Polonia* broadcast, while at the same time continuing to provide the *Klan* series programming to SEI's direct competitor, Polvision, for distribution in the United States.

55.     Ultimately, solely to placate Polvision – but to the ultimate detriment to *TVP Polonia* viewers and subscribers worldwide – TVP decided to remove the most popular and longest-running series *Klan* (in what was then announced to be its climatic final season, following continual, yearly airing since 1993) from the *TVP Polonia* channel (which continued to be produced and broadcast on TVP's channel *TVP 1* within Poland). The decision to remove this long-running and popular series from *TVP Polonia* was not made in the ordinary course, but

rather was a last-ditch effort and attempt by TVP to "cure" its contractual breach of SEI's

Agreement (as amended) and Settlement Agreement.

56.     By Annex dated July 16, 2010 (true and correct copies of which can be found at

**Plaintiff's Trial Exhibits 70** (Polish) and **71** (certified English translation)), TVP entered into an

amendment to its August 31, 2009 license agreement with Polvision.  In essence, by this Annex

(which TVP never produced in this action, and which was only obtained by subpoena from

Polvision), TVP agreed to provide substitute programming to Polvision.  Such substitute

programming included, among other programming, the newest episodes of *Klan* (as well as

additional episodes of the *TVP Polonia* series *Plebania*).

57.     On July 26, 2010, TVP wrote to SEI's counsel and advised that "TVP entered into

an agreement which exclude from Polvision's program that have been offered on TV Polonia at

the same time.  The agreement enters into force on August 1, 2010."  See **Plaintiff's Trial**

**Exhibit 104**.  SEI (by counsel) replied to TVP's letter on August 2, 2010, demanding

clarification (as to the issue of shows aired "at the same time"), and demanded that TVP "clarify

as to whether TVP has purported to grant any right to Polvision to broadcast or otherwise

distribute **any** programming from *TV Polonia* or *TVP Info*."  See **Plaintiff's Trial Exhibit 105**.

Of course, TVP could not provide that confirmation (as it had and continued to license *TVP*

*Polonia* programming to Polvision, including but not limited to the "new" episodes of *Klan*,

which had constituted a core part of *TVP Polonia* for well over a decade and which was always

intended to be aired on *TVP Polonia*).

58.     The removal of the *Klan* series from *TVP Polonia* had a direct and significant

negative impact upon subscription revenues for SEI.  See **Plaintiff's Trial Exhibits 91**, **93** and

**94; see also** Export Report of Stephen Shulman (damages expert).

22

59.    When subscribers and viewers ultimately complained to TVP concerning the removal of *Klan*, TVP falsely responded to viewers that "we [TVP] lost the rights to the serial *"Klan"* and under the circumstances, I cannot tell you whether and when we will resume offering this series." See **Plaintiff's Trial Exhibits 110** (Polish) and **111** (certified English translation of TVP's e-mail response to viewer's inquiry as to when TVP will broadcast *Klan* on *TVP Polonia*). TVP, however, always held the rights to distribute *Klan* – and continued to do so in Poland on its channel *TVP 1*, and in the Chicago area via Polvision's broadcast.

**SEI's Second Claim – Breach of Contract (Failure to Provide Support Against Infringers)**

60.    In 2010, SEI and its corporate subsidiary Telewizja Polska Canada, Inc. ("TVP Canada") retained the Canadian law firm of Cassels Brock to represent them in regard to potential claims against IMB+ Records Inc. ("IMB+") and others for, among other things, copyright infringement (under Canadian law) arising from IMB+'s unlicensed and unauthorized distribution of, among other TVP channels and content, *TVP Polonia* and *TVP Info* programming content via the website www.imb-plus.com.

61.    Because IMB+ was distributing both TVP programming content exclusively licensed to SEI (*i.e.* the programming content of *TVP Polonia* and *TVP Info*, some of which is also broadcast on a number of other TVP channels including the channels TVP 1 and TVP 2) and other TVP programming not licensed to SEI, I wrote to and discussed with Romuald Orzel, TVP's then-President and Chairman of the Board, the possibility that TVP would join SEI in a civil action against IMB+, and offered to pay the costs and attorneys' fees associated with such an action. Following that discussion, I directed SEI's legal counsel in Canada, Casey Chisick, Esq. of Cassels Brock, to send an engagement letter to TVP requesting that TVP engage Cassels Brock for that purpose. A true and correct copy of Cassel Brock's letter to TVP, dated February

23

26, 2010, can be found at **Plaintiff's Trial Exhibit 74** (providing that all fees and disbursements related to the action shall be paid by SEI's Canadian affiliated company). TVP declined to join SEI's lawsuit as a party, and replied that, in TVP's view, any obligation that TVP had to support SEI in its protection of rights as against actual infringers actually required TVP's subsequent agreement to pursue such a litigation strategy (thus rendering TVP's covenant to support SEI in such instances pursuant to the parties' First Addendum an absolute nullity). See, e.g., **Plaintiff's Trial Exhibits 75** (Polish) and **76** (certified English translation of April 9, 2010 letter from Lukasz Boberek of TVP stating that: "I also wish to point out that irrespective of any reference to mutual assistance being provided by the parties in § 3, indent 7 of the annex [*i.e.,* First Addendum] that was added to the contract between TVP and SEi, the decision to undertake specific legal steps unequivocally requires TVP's Agreement and also that TVP may likewise not agree to undertaking the legal actions that are being requested by SEI.")

62.     Ultimately, SEI and TVP Canada commenced an action against IMB+ (and certain affiliated parties) (the action is captioned *Spanski Enterprises Inc., et al. v. IMB+ Records Inc. et al.*, Ontario Court File No. CV-10-00413950-000) before the Superior Court of Justice in Ontario (hereinafter, the "Canadian Action")). A true and correct copy of SEI's November 19, 2010 Amended Statement of Claim in the Canadian Action can be found at **Plaintiff's Trial Exhibit 102**.

63.     Between SEI's initiation of the Canadian Action and the filing of SEI's Amended Statement of Claim on November 19, 2010, I was wholly unaware (as is evidenced by the documentation produced by TVP in this action) that IMB+ and TVP were in direct communications and meeting face-to-face in Warsaw concerning IMB+'s proposed distribution of TVP's channels via the Internet in North America. See generally **Plaintiff's Trial Exhibits**

24

**78-86**. More specifically, I was wholly unaware that representatives of IMB+ had a meeting on October 14, 2010 in Warsaw with representatives of TVP (including TVP's legal counsel) where it was discussed (and later documented) that "IMB [was] offering legal assistance [to TVP] for proving the absence of exclusive rights by the present distributor [SEI] for broadcasting TVP channels in the IPTV system in Canada and in the USA ...." See **Plaintiff's Trial Exhibits 80** (Polish) and **81** (certified English translation). Therefore, at the same time that SEI was suing IMB+ to enforce its rights <u>and TVP's rights against an internet pirate, TVP was apparently negotiating with IMB+ to undermine SEI's claim.</u>

64.     On March 4, 2011, IMB+ filed its Statement of Defence in the Canadian Action (a true and correct copy of which can be found as **Plaintiff's Trial Exhibit 103**), wherein IMB+ admitted infringing conduct, but attempted to defend itself by claiming that TVP was not a co-plaintiff in the lawsuit, that TVP was "aware of [IMB+'s] activities in this regard and have chosen neither to pursue nor to promote pursuance of [IMB+] in any jurisdiction for any violations [of copyright]," and that SEI and TVP Canada were purportedly not proper parties to make copyright claims in regard to either the *TVP Polonia* or *TVP Info* channels and programming. See **Plaintiff's Trial Exhibit 103** at ¶¶ 10, 16(d), 25.

65.     Upon receipt of IMB+'s Statement of Defence, I e-mailed representatives of TVP on March 5, 2011 (**Plaintiff's Trial Exhibits 97** (Polish) and **98** (certified English translation)) explaining to TVP that Canadian counsel had expressed the opinion that IMB+'s defense was based entirely "on TVP's failure to support our [SEI's] action," and that TVP's involvement in the proceeding as a co-plaintiff (at SEI's expense) would ensure success. A follow-up letter from Cassels Brock to TVP followed wherein counsel explained the then-existing posture of the Canadian Action and again requested TVP's cooperation and assistance in the Canadian Action

by its appearance as a co-plaintiff, all at SEI's expense. A true and correct copy of Cassels Brock's March 11, 2011 e-mail letter to TVP can be found at **Plaintiff's Trial Exhibit 77**.

66. TVP replied to our renewed requests for assistance on March 24, 2011 (**Plaintiff's Trial Exhibits 95** (Polish) and **96** (certified English translation)), again declining to join the Canadian Action as a co-plaintiff. At that time, I was wholly unaware (as is evidenced by the documentation later produced by TVP in this action) that on March 22, 2011, IMB+ and TVP were again in direct communications concerning IMB+'s proposed distribution of TVP's channels via the Internet in North America. See **Plaintiff's Trial Exhibits 85** (Polish) and **86** (certified English translation) (responding to TVP's inquiry and providing an "[i]nitial proposition for cooperating in the distribution of channels in the IPTV system on the territory of Canada and the USA").

67. If not for TVP's negotiations with IMB+ (pursuant to which IMB+ was to provide "legal assistance" to undermine SEI's contractually granted exclusive distribution rights), and TVP's refusal to provide support and assistance to SEI against IMB+, IMB+ would not have been able to raise the defenses asserted in its Statement of Defence, and SEI would not have had to incur the costs of litigating against IMB+ following the service of the complaint in the Canadian Action.

68. The costs and expenses charged by Cassels Brock to SEI and TVP Canada in regard to the Canadian Action are set forth and contained on monthly invoices, true and correct copies of which can be found collectively at **Plaintiff's Trial Exhibit 90**. SEI has paid each of the invoices attached in **Plaintiff's Trial Exhibit 90**, except for a small percentage of fees that Cassell Brock wrote off, as shown in in the summary accounting spreadsheet also provided at **Plaintiff's Trial Exhibit 90**.

I declare under penalties of perjury under the laws of the United States of America that the following is true and correct.

Dated: March 16, 2013

BOGUSLAW M. SPANSKI

27

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 --------------------------------------------------------- X
                                                                          :
SPANSKI ENTERPRISES, INC.,
                                                                          :
                              Plaintiff,
                                                                          :
                                                                               10 Civ. 4933 (ALC)(GWG)
              v.                                                       :
                                                                          :
TELEWIZJA POLSKA S.A.,
                                                                          :
                              Defendant.
                                                                          :
 --------------------------------------------------------- X

**PLAINTIFF SPANSKI ENTERPRISES, INC.'S PROPOSED**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

      This action having been tried before the Honorable Andrew L. Carter, United States District Judge, without a jury, beginning on July 22, 2013 and continuing each business day until July 26, 2013; and this Court having received and considered the testimony of the witnesses at trial (Boguslaw Spanski, Tomasz Gladkowski, Casey Chisick, Stephen W. Shulman, Larry Gerbrandt, Maria Nadolna, Walter Kotaba, Piotr Lenarczyk, Gary Arlen, Timothy Hart, Ivan Reyes, and Prof. Marek Wierzbowski), and the documents and things received in evidence;

      **NOW, THEREFORE**, this Court does hereby set forth its finding and conclusions of law:

**PROPOSED FINDINGS OF FACT**

I.      **The Parties and Their Agreements**

1.      Plaintiff Spanski Enterprises, Inc. ("SEI") is a Canadian corporation.  SEI (together with its subsidiaries and affiliated companies) distributes Polish-language television and radio content in North and South America via satellite and cable television and over the Internet.  *Joint Pre-Trial Order ("JPTO"), Exh. 1 (Stipulated Facts and Law) at ¶ 1.*

2.      Defendant Telewizja Polska, S.A. ("TVP") is a business corporation organized under the laws of Poland (and is wholly-owned by the Polish government).  TVP produces and distributes 10 Polish-language television channels including the channels *TVP Polonia* (f/k/a *TV Polonia*) and *TVP Info* (f/k/a *TVP 3 Regionalna*).  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 2.*

3.      Pursuant to a written agreement dated December 14, 1994 (hereinafter, the "Agreement") TVP granted SEI the exclusive right to broadcast the programming content of TVP's television channel *TVP Polonia* in North and South America (the "Territory") for an initial period of 25 years.  In exchange for the distribution rights granted to SEI pursuant to the Agreement, SEI agreed to pay TVP certain royalties.  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 3; Opinion and Order, dated January 8, 2013 at 14; Spanski Trial Declaration at ¶¶ 5-2; Plaintiff's Trial Exhibits 1-2, 8-21, 112-117, 122-123, 126-127, 134-136, 137, 147-150.*

4.      On November 4, 1999, SEI and TVP entered into an addendum to the Agreement (the "First Addendum").  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 5; Plaintiff's Trial Exhs. 3-4.*

2

5.      Pursuant to the First Addendum, TVP granted SEI the further right to distribute *TVP Polonia* programming content over the Internet within the Territory. *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 6.*

6.      Pursuant to the First Addendum, TVP designated SEI as its representative in the Territory authorized to protect TVP's rights, and further agreed to "provide appropriate support for the activities of SEI" in this regard. *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 7; Spanski Trial Decl. at ¶ 27.*

7.      TVP and SEI entered into a second addendum to the Agreement, dated April 29, 2002 (the "Second Addendum"). *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 8; Spanski Trial Decl. at ¶ 27; Plaintiff's Trial Exhs. 5-6.*

8.      Pursuant to the Second Addendum, TVP granted SEI distribution rights to the programming content of a second TVP channel, *TVP Info*. *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 9.*

9.      The Agreement (as amended by the First Addendum and Second Addendum) between SEI and TVP is to be construed pursuant to the laws of New York. *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 9.*

## II.      The Prior Action Between the Parties and the Settlement Thereof

10.      In 2007, in response to an arbitration proceeding commenced by TVP in Warsaw, SEI commenced an action before this Court (entitled *Spanski Enterprises Inc., et al. v. Telewizja Polska S.A., et al.*; S.D.N.Y. Case No. 07 CIV 930) (the "Prior Action") that concerned, among other things, the scope of SEI's exclusive rights to distribute *TVP Polonia* and *TVP Info* programming in the Territory. *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 10; Opinion and Order, dated January 8, 2013 at 2.*

11.     The Prior Action was resolved by the parties' August 11, 2009 Settlement

Agreement (with the sole exception of SEI's then-pending motion for sanctions against TVP for

discovery abuse, which motion was later ruled upon by the Court).  *JPTO, Exh. 1 (Stipulated*

*Facts and Law) at ¶ 11; Opinion and Order, dated January 8, 2013 at 2-3; Plaintiff's Trial Exh.*

*7.*

### III.     The Parties' Respective Claims

12.     SEI initiated this action on June 24, 2010 and filed an Amended Complaint on

October 1, 2010.  SEI asserts that TVP breached the parties' Agreement (as amended) and

Settlement Agreement, as well as the implied obligation of good faith and fair dealing

thereunder, by (a) licensing and distribution of certain *TVP Polonia* channel programming

content to one of SEI's competitors for distribution in SEI's exclusive Territory; (b) by

wrongfully removing the long-running and popular television series *Klan* from the *TVP Polonia*

channel and licensing it to one of SEI's competitors; and (c) by failing to assist and provide

support for SEI's actions to protect its exclusive distribution rights in the Territory, and by

TVP's direct negotiations and support for an admitted infringer of SEI's exclusive distribution

rights.  *Opinion and Order, dated January 8, 2013 at 1, 3-4; JPTO at 2.*

13.     On January 26, 2011, TVP filed an Answer to Amended Complaint and

Counterclaims.  TVP's first counterclaim alleged that SEI failed to pay TVP royalties due under

the Agreement.  TVP's second counterclaim alleged that SEI willfully failed to comply with its

contractual obligations, for which TVP sought cancellation and/or rescission of the Agreement

(as amended) and Settlement Agreement.  *Opinion and Order, dated January 8, 2013 at 1, 4.*

14.     On August 15, 2012, SEI moved for partial summary judgment dismissing TVP's

counterclaims, and this Court issued an Opinion and Order, dated January 8, 2013, granting that

motion in part.  As stated fully therein, this Court dismissed (a) the portions of TVP's counterclaims that accrued prior to August 11, 2009 as barred by the Settlement Agreement; and (b) TVP's second counterclaim for cancellation and/or rescission of the parties' Agreement (as amended) and Settlement Agreement in its entirety.  *Opinion and Order, dated January 8, 2013 at 1, 10, 23.*

15.    At trial, TVP proceeded only in regard to its claim that after August 11, 2009, SEI allegedly breached an implied contractual obligation to "maximize subscribers" (which TVP asserted included SEI's alleged "failure to address material deficiencies in the website through which SEI distributes TVP programming content").  *JPTO at 5.*

## IV.    SEI's Claims for Breach of Contract

### A.    SEI's First Claim – TVP Licensed *TVP Polonia* Programming Content to Polvision In Contravention of SEI's Exclusive Distribution Rights in the Territory

16.    The parties' Agreement provides, in relevant part, that: "TVP gives SEI the exclusive right to one-time use of TV Polonia [n/k/a *TVP Polonia*] shows in its Program"; and "To implement Section 2 above, TVP grants SEI the exclusive right to receive and use the Signal in the Territory." *Plaintiff's Trial Exhibits 2-3 (Agreement) at §§ 2(2), 2(3), 5(1).*

17.    Pursuant to the Settlement Agreement, TVP agreed that "SEI is and shall remain the exclusive distributor of *TV Polonia* and *TVP Info* programming content in the territory of North and South America by any and all means of distribution" [subject to a "sole exception" not relevant to the claims raised in this action].  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 12; Plaintiff's Trial Exh. 7 at II.A; Spanski Trial Decl. at ¶ 40.*

18.    Pursuant to the Settlement Agreement, TVP further agreed that: "TVP shall not distribute ... or permit the distribution of any other channels in North or South America that

contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TV Info*." *Plaintiff's Trial Exh. 7 at II.E.*

19.    The *TVP Polonia* channel contains a variety of the "best-of" TVP's Polish programming from other TVP channels.  As is relevant to the claims raised in this action, the *TVP Polonia* channel included the series entitled *Plebania*, *Klan*, *Na Dobre i na Zle*, *M jak Milosc,* and *Zlotopolscy*.  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 4.*

20.    TVP entered into a License Agreement with TV Polvision ("Polvision"), dated June 27, 2008, whereby TVP licensed to Polvision for broadcast (through July 14, 2010) in the United States certain *TVP Polonia* programming content (including individual episodes of the *TVP Polonia* series *Plebania* and *Na Dobre i na Zle*) in exchange for a fee.  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 16; Plaintiff's Trial Exh. 24.*

21.    TVP entered into a License Agreement with Polvision, dated August 31, 2009, whereby TVP licensed to Polvision for broadcast in the United States certain *TVP Polonia* programming content (including individual episodes of the *TVP Polonia* series *Plebania*, *Klan*, *Na Dobre i na Zle*, and *Zlotopolscy*) in exchange for a fee.  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 17; Plaintiff's Trial Exhs. 25-26; Spanski Trial Decl. at ¶ 42; Lenarczyk Trial Decl. at ¶¶ 10-12.*

22.    TVP entered into an Annex to the Agreement of August 31, 2009 with Polvision/Polstudios, dated July 16, 2010, whereby TVP licensed to Polvision for broadcast in the United States certain *TVP Polonia* programming content (including individual episodes of the *TVP Polonia* series *Plebania* and *Klan*) in exchange for a fee.  *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 18; Plaintiff's Trial Exhs. 70-71.*

23.     SEI never granted authority to Polvision (or TVP) for Polvision to distribute *TVP Polonia* programming content in the United States.  *Spanski Trial Decl. at ¶ 45.*

24.     As a direct and proximate result of TVP's licensing of *TVP Polonia* programming content to Polvision, SEI suffered losses in the amount equal to the fair value of SEI's consent or license to distribute such programming (less any applicable royalty owed to TVP pursuant to the Agreement), equal to USD $603,685.00, plus applicable interest thereon.  *Spanski Trial Decl. at ¶ 2; Expert Report of Stephen W. Shulman, CPA at ¶¶ 14, 30-35, 38-52.*

**B.      SEI's Second Claim – TVP Failed to Provide Contractually Required Assistance to SEI to Combat Piracy, and Otherwise Deprived SEI of the Benefits of the Agreement and Settlement Agreement by Taking Actions to Support an Admitted Pirate (and SEI's Litigation Adversary)**

25.     The parties' First Addendum provides, in relevant part, that: "TVP designates SEI as its representative in the Territory, authorized to prevent any violations and to protect TVP rights.  Any legal action on behalf of TVP, in particular incurring costs, may be undertaken only by prior approval by TVP.  TVP will provide appropriate support to SEI actions in this regard." *Plaintiff's Trial Exhs. 3-4 at § 1(5).*

26.     In 2010, SEI and its corporate subsidiary Telewizja Polska Canada, Inc. ("TVP Canada") retained the Canadian law firm of Cassels Brock to represent them in regard to potential claims against IMB+ Records Inc. ("IMB+") and others for, among other things, copyright infringement (under Canadian law) arising from IMB+'s unlicensed and unauthorized distribution of, among other TVP channels and content, *TVP Polonia* and *TVP Info* programming content via the website www.imb-plus.com.  *Spanski Trial Decl. at ¶ 60; Chisick Trial Decl. at ¶ 2.*

27.     In February 2010, SEI asked TVP to join it in pursuing claims against IMB+, but TVP declined to join in such a lawsuit.  *Spanski Trial Decl. at ¶ 61; Chisick Trial Decl. at ¶ 3.*

28.    SEI commenced an action against IMB+ (and certain affiliated parties) (the action is captioned *Spanski Enterprises Inc., et al. v. IMB+ Records Inc. et al*., Ontario Court File No. CV-10-00413950-000) before the Superior Court of Justice in Ontario (hereinafter, the "Canadian Action")), and filed an Amended Statement of Claim in that action on November 19, 2010. *Spanski Trial Decl. at ¶ 62; Chisick Trial Decl. at ¶ 4; Plaintiff's Trial Exhibit 102.*

29.    At the same time SEI was pursuing claims against IMB+, and notwithstanding SEI's request to TVP for assistance as to its efforts to enjoin IMB+'s infringing activities, TVP had direct communications with IMB+ (and an in-person meeting in Warsaw on October 14, 2010) where it was discussed (and later documented) that "IMB [was] offering legal assistance [to TVP] for proving the absence of exclusive rights by the present distributor [SEI] for broadcasting TVP channels in the IPTV system in Canada and in the USA …." *Plaintiff's Trial Exhibits 80-81; see also Exhibits 78-79, 82-86.*

30.    On March 4, 2011, IMB+ filed its Statement of Defence in the Canadian Action, wherein IMB+ admitted infringing conduct, but attempted to defend itself by claiming that TVP was not a co-plaintiff in the lawsuit, that TVP was "aware of [IMB+'s] activities in this regard and have chosen neither to pursue nor to promote pursuance of [IMB+] in any jurisdiction for any violations [of copyright]," and that SEI and TVP Canada were purportedly not proper parties to make copyright claims in regard to either the *TVP Polonia* or *TVP Info* channels and programming. *Plaintiff's Trial Exhibit 103 at ¶¶ 10, 16(d), 25.*

31.    In March 2011, SEI advised TVP of IMB+'s asserted defense in the Canadian Action, and repeated (directly and via counsel) its request that TVP support SEI's action against IMB+, but TVP again declined to join in such a lawsuit. *Spanski Trial Decl. at ¶ 65; Chisick Trial Decl. at ¶¶ 7-10; Plaintiff's Trial Exhs. 77, 95-98.*

32.    Rather, on March 22, 2011, IMB+ and TVP were again in direct communications concerning IMB+'s proposed distribution of TVP's channels via the Internet in North America. *Plaintiff's Trial Exhs. 85-86.*

33.    On July 26, 2011, counsel for SEI wrote to TVP requesting that TVP support SEI's litigation efforts by providing documents and other information (including but not limited to any communications TVP had with IMB+).  TVP never provided any of the requested documents or information, nor provided other assistance to SEI.  *Chisick Trial Decl. at ¶ 11.*

34.    As a direct and proximate result of TVP's failure to provide assistance to SEI, and TVP's communications and discussions with IMB+, SEI would not have had to incur the costs of litigating against IMB+ following the service of the Amended Statement of Claim in the Canadian Action, and SEI has thus been damaged in an amount paid for such legal services and costs in the amount of $206,994.30, plus applicable interest thereon.  *Spanski Trial Decl. at ¶¶ 67-68; Chisick Trial Decl. at ¶¶ 12-13; Expert Report of Stephen W. Shulman, CPA at ¶¶ 64-68 and Exh. I; Supplement to Expert Report of Stephen W. Shulman, CPA at ¶¶ 11-19; Plaintiff's Trial Exh. 90.*

**C.    TVP Deprived SEI of the Benefits of the Agreement by Removing the *Klan* Series from the *TVP Polonia* Channel**

35.    Beginning in January 2010, TVP negotiated with Polvision to replace the *TVP Polonia* programming content provided pursuant to the August 31, 2009 License Agreement with alternative programming content that had not appeared on *TVP Polonia*.  *Plaintiff's Trial Exhibits 35-36, 42-45, 48-53, 56-57, 60-65; Spanski Trial Decl. at ¶¶ 47, 50.*

36.    In order to have programming alternatives to provide Polvision as substitute programming, TVP actively sought to defer the airing of certain television programs on the *TVP Polonia* channel.  *Id.*

37.     Such programming included the newest episodes of the program series *Klan*, which were ultimately licensed to Polvision for distribution in SEI's exclusive Territory pursuant to the July 16, 2010 Annex to TVP's License Agreement with Polvision. *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 18; Plaintiff's Trial Exhs. 70-71; Spanski Trial Decl. at ¶¶ 54-57.*

38.     The *Klan* series was TVP's longest-running and most popular program series (having been aired on the *TVP Polonia* channel each year since 1993), and was an integral part of the *TVP Polonia* channel programming. *Spanski Trial Decl. at ¶¶ 20-22, 54-57; Plaintiff's Trial Exhibits 16-20, 147-150.*

39.     The *Klan* series was not removed from the *TVP Polonia* channel in the ordinary course, but was removed by TVP (in advance of what was then announced to be its climatic final season) to placate Polvision, with whom it had licensing issues. *Spanski Trial Decl. at ¶¶ 20-22, 54-57.*

40.     The removal of the *Klan* series from *TVP Polonia* had a direct and significant negative impact upon subscription revenues for SEI, and SEI has been damaged by this loss of subscriber revenue in the amount of $1,262,878, plus applicable interest. *Spanski Trial Decl. at ¶¶ 3, 58; Plaintiff's Trial Exhibits 91, 93 and 94; Expert Report of Stephen W. Shulman, CPA at ¶¶ 14, 69-90 and Exh. VI.*

**V.     TVP's Counterclaim for the Alleged Failure to Maximize Subscribers**

41.     There is no provision of the parties' Agreement, First Addendum, Second Addendum or Settlement Agreement obligating SEI to maximize subscribers to the TVP programming exclusively distributed by SEI in the Territory. *Opinion and Order, dated January 8, 2013, at 14; Plaintiff's Trial Exhs. 1-7.*

42.     The Court has previously ruled, however, that "SEI has an implied obligation, as the exclusive licensee, to use reasonable efforts to market and distribute TVP's programming in hopes of maximizing subscribers." *Opinion and Order, dated January 8, 2013, at 14.*

43.     At the time the parties executed the Settlement Agreement (and pursuant thereto), TVP represented that SEI was then in material compliance with the terms of the Agreement (as amended). *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 13; Plaintiff's Trial Exh. 7; Spanski Trial Decl. at ¶ 39; Lenarczyk Trial Decl. at ¶¶ 4-6.*

44.     TVP has failed to present any evidence concerning SEI's actual efforts to market and distribute TVP programming during the period following the parties' Settlement Agreement.

45.     SEI has achieved a reasonable number of subscribers in North America for the *TVP Polonia* channel. *Plaintiff's Trial Exhs. 7, 139; Spanski Trial Decl. at ¶39; Lenarczyk Trial Decl. at ¶¶5-6; Gerbrandt Trial Decl. at ¶¶36-39.*

46.     TVP has failed to present any evidence concerning any losses or damages that TVP may have suffered as a direct and proximate result of any purported failure by SEI to maximize subscribers in the period following the parties' August 31, 2009 Settlement Agreement. *Hart Expert Report.*

47.     Although TVP has presented the expert testimony of Ivan Reyes, who opines that the website through which SEI distributes TVP programming on the Internet purportedly suffers from material deficiencies, SEI has no obligation under the Agreement, First Addendum, Second Addendum and Settlement Agreement to maintain any specific type or quality of website, but rather SEI has been granted "sole discretion" pursuant to the Agreement to make decisions as to the means and technologies by which SEI would distribute TVP's programming content in the

Territory.  *Reyes Expert Report; Arlen Expert Report; Hart Expert Report; Wierzbowsky Expert Report; Plaintiff's Trial Exhs. 1-2; Lenarczyk Trial Declaration at ¶¶ 7-9.*

48.    The web site through which SEI distributes *TVP Polonia*, www.tvpolonia.com, has not diminished since August 2009, when TVP signed a Settlement Agreement acknowledging that SEI was in material compliance with all contractual obligations.  *Gladkowski Trial Declaration at ¶5.*

49.    TVP did not complain about SEI's Internet distribution of *TVP Polonia* until it filed counterclaims in this action in January 2011.  *Gladkowski Trial Declaration at ¶7.*

50.    SEI's website has improved since the signing of the Settlement Agreement in August 2009, including increasing its top data transfer speed and undergoing a redesign.  *Gladkowski Trial Declaration at ¶6.*

51.    SEI's website can be viewed by a variety of means by potential customers, is accessible to viewers, and is not materially deficient.  *Gladkowski Trial Declaration at ¶¶10-15.*

52.    TVP has failed to present any evidence concerning any losses or damages that TVP may have suffered as a direct and proximate result of any purported deficiency in regard to SEI's website.  *Hart Expert Report.*

## PROPOSED CONCLUSIONS OF LAW

53.    The parties' Agreement (as amended by the First Addendum and Second Addendum) and Settlement Agreement are valid and binding.  *Opinion and Order, dated January 8, 2013 at 13.*

54.     The parties' Agreement (as amended by the First Addendum and Second Addendum) and Settlement Agreement are to be construed pursuant to the laws of New York. *JPTO at Exh. 1 (Stipulated Facts and Law) at ¶ 14.*

55.     To establish a claim for breach of contract under New York law, SEI must establish the following elements by a preponderance of evidence: the existence of a contract, breach of that contract, and damages resulting from that breach. *Opinion and Order, dated January 8, 2013 at 11 (citing Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994); Lorterdan Props. at Ramapo I, LLC v. Watchtower Bible and Tract Soc'y of New York, Inc., 2012 WL 2873648, at \*7 (S.D.N.Y. July 10, 2012); Labajo v. Best Buy Stores, L.P., 478 F. Supp. 2d 523, 529 (S.D.N.Y. 2007); Arbitron v. Tralyn Broad., Inc., 526 F. Supp. 2d 441 (S.D.N.Y. 2007), aff'd, 327 F. App'x 755 (2d Cir. 2009))..*

56.     In addition to the express terms of a contract, every contract contains an implied obligation by each party to deal fairly with the other and to eschew actions that would deprive the other party of the fruits of the agreement. *Miller v. Almquist, 241 A.D.2d 181, 183, 671 N.Y.S.2d 746, 749 (1st Dep't 1998); Dalton v. Educational Testing Service, 87 N.Y.2d 384, 663 N.E.2d 289, 639 N.Y.S.2d 977, 979 (1995); Jaffe v. Paramount Comm. Inc., 222 A.D.2d 17, 644 N.Y.S.2d 43, 47 (1st Dep't 1996).*

**I.      SEI Established Its Claims for Breach of Contract Against TVP**

      **A.      SEI's First Claim – TVP Breached the Agreement and Settlement Agreement (and SEI's Exclusive Rights Thereunder) by Licensing *TVP Polonia* Programming to Polvision for Distribution in SEI's Exclusive Territory**

57.     Pursuant to the Agreement (as amended) and Settlement Agreement, TVP granted SEI exclusive rights to distribute the *TVP Polonia* channel, and its individual copyrighted

programs, in the Territory.  *Opinion and Order, dated January 8, 2013 at 14; Plaintiff's Trial*

*Exhibit 7 (Settlement Agreement) at II.A and II.E.*

58.    TVP breached SEI's exclusive rights under the Agreement and Settlement

Agreement, as well as the implied covenant of good faith and fair dealing, by entering into a

series of agreements with Polvision, pursuant to which TVP granted Polvision a license to

distribute certain episodes of *TVP Polonia* programs in the Territory.  JPTO at Exh. 1 (Stipulated

Facts and Law) at ¶¶ 15-18; Lenarczyk Trial Declaration at ¶ 12.

59.    As a direct and proximate result of TVP's breaches, SEI is entitled to

compensatory damages, measured as the fair market value of a license from SEI for such

programming (less any royalty that SEI would owe to TVP pursuant to the Agreement).

60.    SEI has suffered compensatory damages in the amount of USD $603,685.00, plus

applicable interest, based upon TVP's breach of SEI's exclusivity.  *Expert Report of Stephen W.*

*Shulman, CPA at ¶¶ 14, 30-35, 38-52.*

**B.    SEI's Second Claim – TVP Breached the Agreement (as amended) and
    Implied Obligations of Good Faith and Fair Dealing by Failing to Assist
    SEI's Efforts against Infringers (and Otherwise Negotiating with These Same
    Infringers Seeking to Undermine SEI's Exclusive Distribution Rights**

61.    Pursuant to the parties' First Addendum, TVP designated SEI as its representative

in the Territory authorized to combat infringement by third-parties.  In connection therewith,

TVP had an obligation to support SEI's efforts, and to not take any action to undermine those

efforts and deprive SEI of the benefits of the Agreement.   Although the parties' Agreement (as

amended) does not expressly state the specific acts TVP must undertake to support SEI's efforts

against infringers, the law imposes an obligation upon TVP that its support must be reasonable in

light of all the facts.  *Plaintiff's Trial Exhs. 3-4 at § 1(5).*

62.     TVP breached its obligation to provide reasonable support in light of all the facts, as well as its implied obligation of good faith and fair dealing, by failing to provide any meaningful support for SEI's efforts to cease the third-party infringement by IMB+ and by instead entering into discussions and negotiations with IMB+ for its distribution of TVP programming in the Territory (which would be in breach of SEI's exclusive rights) in exchange for IMB+'s litigation efforts to attempt to limit or curtail SEI's exclusive rights in the Territory. *Plaintiff's Trial Exhibits 78-86.*

63.     As a direct and proximate result of TVP's breaches, SEI is entitled to damages to compensate SEI for litigation expenses and costs it incurred (in its litigation against IMB+) that would not have been incurred but for TVP's breaches.

64.     SEI has suffered damages in the amount of $206,994.30, plus applicable interest thereon, resulting from TVP's breaches of its obligations to support SEI's efforts as against infringers. *Expert Report of Stephen W. Shulman, CPA at ¶¶ 64-68 and Exh. I; Supplement to Expert Report of Stephen W. Shulman, CPA at ¶¶ 11-19; Plaintiff's Trial Exh. 90.*

**C.      SEI's Third Claim – TVP Breached its Implied Obligations of Good Faith and Fair Dealing Under the Agreement (as amended) and Settlement Agreement by Depriving SEI of the Integral Programming of *TVP Polonia* and, thus, the Benefits of the Parties' Agreement**

65.     TVP breached SEI's exclusive rights under the Agreement and Settlement Agreement, as well as the implied covenant of good faith and fair dealing, by removing the *Klan* series (the most popular and longest-running series in TVP broadcast history, and an integral part of the *TVP Polonia* channel) from the *TVP Polonia* channel for the purpose of licensing this very same programming to a competitor of SEI for distribution in SEI's exclusive Territory.

66.     As a direct and proximate result of TVP's breaches, SEI is entitled to damages to compensate SEI for subscriber revenues.

15

67.     SEI has been damaged in the amount of $1,262,878, plus applicable interest, as a result of TVP's removal of the *Klan* series from *TVP Polonia. Expert Report of Stephen W. Shulman, CPA at ¶¶ 14, 69-90 and Exh. VI.*

**II.      TVP's Counterclaim – TVP has Failed to Establish By a Preponderance of the Evidence that SEI Failed to Use Reasonable Efforts to Market and Promote TVP's Programming**

68.     Although there is no express provision of the parties' Agreement, First Addendum, Second Addendum or Settlement Agreement obligating SEI to use any specific efforts to distribute TVP's programming, SEI has an implied obligation, as the exclusive licensee, to use reasonable efforts to market and distribute TVP's programming in hopes of maximizing subscribers. *Opinion and Order, dated January 8, 2013, at 14; BLD Prods. LLC v. Viacom, Inc., 2011 WL 1327340, at *7-*8 (S.D.N.Y. March 31, 2011); (Wood v. Lucy, Lady Duff Gordon, 222 N.Y. 88, 91 (1917).*

69.     No obligation can be implied, however, which would be inconsistent with the other terms of the contractual relationship. *Bravia Capital Partners Inc. v. Fike, 2010 WL 3359470, at *4-*5 (S.D.N.Y. Aug. 25, 2010) (citing cases).*

70.     TVP has failed to establish, by a preponderance of the evidence, that SEI breached its implied obligation to use reasonable efforts.  Indeed, at the time the parties executed the Settlement Agreement (and pursuant thereto), TVP represented that SEI was then in material compliance with the terms of the Agreement (as amended). *JPTO, Exh. 1 (Stipulated Facts and Law) at ¶ 13; Plaintiff's Trial Exh. 7; Spanski Trial Decl. at ¶ 39; Lenarczyk Trial Decl. at ¶¶ 4-6.*

71.     Ultimate success in the distribution of a product or service does not inform as to the issue of whether the distributor used reasonable efforts.  *Soroof Trading Dev. Co. v. GE Fuel Sys. LLC, 842 F. Supp. 2d 502, 511 (S.D.N.Y. 2012).*

72.     Independently, TVP has failed to establish, by a preponderance of the evidence, that SEI failed to "maximize subscribers," whether a result of website deficiencies or otherwise. *Gerbrandt Trial Decl.; Gladkowski Trial Decl.; Lenarczyk Trial Decl. at ¶¶ 4-9.*

73.     TVP has failed to establish, by a preponderance of the evidence, that it suffered any damages attributable to any alleged breach by SEI of its implied obligation to use reasonable efforts to market and distribute TVP's programming.


Dated: New York, New York                    Respectfully submitted,
          July 1, 2013

                                             LOEB & LOEB LLP


                                             By: /s/ Jonathan Zavin
                                                   Jonathan Zavin (JZ-1846)
                                                   John Piskora (JP-1224)
                                                   Michael Barnett (MB-7686)
                                                   345 Park Avenue
                                                   New York, NY 10154
                                                   Ph: (212) 407-4082
                                                   Fax: (212) 407-4990

                                                   *Attorneys for Plaintiff*
                                                   *Spanski Enterprises Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                                :
SPANSKI ENTERPRISES, INC.,                                      :
                                                                :
                                        Plaintiff,              :  Case No.: 10-4933 (ALC-GWG)
                                                                :
                        v.                                      :
                                                                :
                                                                :
TELEWIZJA POLSKA, S.A.,                                         :
                                        Defendant.              :
----------------------------------------------------------------x


**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

By Defendant Telewizja Polska, S.A.


DLA PIPER LLP (US)

Andrew L. Deutsch
David S. Wenger
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4702
andrew.deutsch@dlapiper.com
david.wenger@dlapiper.com


*Counsel for Telewizja Polska, S.A.*

**TABLE OF CONTENTS**

Page

I.   Preliminary Summary ........................................................................................ 1

PROPOSED FINDINGS OF FACT

II.   Background ...................................................................................................... 4

    A.   The Parties' 1994 Agreement, Amended In 1999 and 2002 ................... 4

    B.   The August 11, 2009 Settlement Agreement ......................................... 5

III.   SEI's Claims Relating To The TVP/Polvision Contracts ................................ 5

    A.   The History of The TVP/Polvision Contracts ......................................... 5

        1.   The 2008 Agreements Between TVP and Polvision ................................ 5

        2.   The August 31, 2009 TVP/Polvision Licensing Agreement ................... 6

        3.   TVP And SEI Conclude The August 11, 2009 TVP/SEI Settlement
           Agreement ................................................................................................ 8

        4.   TVP's Extensive Efforts To Provide Replacement Programming
           To Polvision ............................................................................................ 8

        5.   TVP and Polvision Agree Upon The July 2010 TVP/Polvision
           Annex For Replacement Programming ................................................. 11

    B.   SEI's Damages Theory For Its Polvision Claim ................................... 11

        1.   SEI Has Abandoned Its Lost Subscribers-Based Damages Theory
           For A Theory Based Upon The Value Of The Episodes TVP
           Licensed To Polvision. ......................................................................... 11

IV.   SEI's Claim For Legal Fees Incurred Pursuing Litigation In Canada ............ 12

    A.   The Parties' Disputed Interpretation Of SEI's Distribution Rights Is
        Central To The Canadian Litigation ..................................................... 13

V.   SEI's Claim Relating To TVP's Removal Of The *Klan* Program From *TVP
Polonia* ........................................................................................................ 14

    A.   The 1994 Agreement Confirms TVP's Unequivocal Control Over Its
        Programming Decisions ......................................................................... 14

    B.   TVP Removed *Klan* From *TVP Polonia* Because Of A Declining
        Audience, And To Make Time For Other Government-Mandated
        Programming ......................................................................................... 15

    C.   TVP Decision To Remove *Klan* From *TVP Polonia* Preceded This
        Litigation And Was Unrelated To SEI or TVP's Agreement With
        Polvision .............................................................................................. 16

VI.   SEI Has Not Complied With Its Obligation To Maximize Subscribers To TVP's
Programming ................................................................................................. 17

-i-

**TABLE OF CONTENTS**
(continued)

**Page**

PROPOSED CONCLUSIONS OF LAW

I.    SEI Has Failed To Prove That TVP Breached Its Agreements With SEI ..................... 23

    A.    TVP Did Not Breach Through Its Contracts With Polvision Because TVP Never Granted SEI Distribution Exclusivity To Individual *TVP Polonia* Programming............................................................................................................... 23

    B.    SEI Has No Claim For The June 2008 Agreement Because SEI's Rights Were Limited To One-Off Use Rights, And All The Licensed Episodes Preceded The Settlement Agreement ................................................................. 25

    C.    SEI Has No Claim For The August 31, 2009 Licensing Agreement Because TVP Received From Polvision The Countersigned TVP/Polvision Licensing Agreement After The SEI/TVP Settlement Agreement Was Signed And Immediately Sought In Good Faith To Address Any Potential Conflicts With The Settlement Agreement ......................................................... 26

    D.    SEI Has No Claim Relating To The July 2010 Annex Because None Of The Episodes Included In The Annex Were Broadcasted On *TVP Polonia* ........ 27

    E.    SEI Has No Claim Relating To The Canadian Litigation Because TVP Never Agreed To Join A Litigation Against A Third Party, Especially Where SEI Is Claiming Distribution Rights That TVP Disputes ........................ 27

    F.    SEI Has No Claim Relating To *Klan* Because TVP Has Exclusive Control Over Its Programming Decisions.......................................................................... 29

II.   Even If TVP Did Breach Its Agreements With SEI, As To Each Of Its Claims For Breach of Contract SEI Has Failed To Prove Damages ................................................. 30

    A.    SEI's Damages Theory For Its Polvision Claim Is Incorrect Because SEI Has No Right To Distribute TVP Programming On An Individual Basis And Had Never Done So In The 18 Years It Has Been Distributing *TVP Polonia* ...................................................................................................................... 30

    B.    For SEI's Polvision Claim, SEI's Expert Uses An Incorrect Number of Episodes For Each Of His Three Alternative Damages Schemes ..................... 33

    C.    For His First Polvision Damages Scheme, SEI's Expert Relies Upon Incorrect, High-End-Only Values For His Inputs................................................ 34

    D.    For His Second and Third Polvision-Related Damages Schemes, SEI's Expert Also Uses Improper Inputs...................................................................... 38

    E.    SEI Has Failed To Show A Causal Link Between TVP's Refusal To Join The Canadian Litigation and SEI's Legal Fees .................................................. 41

    F.    For Its *Klan* Claim, SEI Failed to Show A Causal Link Between TVP's Removal of *Klan* And Any Damages .................................................................. 42

**TABLE OF CONTENTS**
(continued)

Page

G.   SEI's *Klan*-Related Damages Theory Also Suffers From Methodological
     Flaws And Sourcing Errors, And Is Partially Duplicative Of SEI's
     Polvision-Related Damages Claim ...................................................................... 44

III.   SEI Breached The 1994 Agreement By Failing To Comply With Its Obligation To
       Maximize Subscribers, And Is Liable For The Lost Profits TVP Has Suffered As
       A Result ......................................................................................................................... 47

Defendant Telewizja Polska S.A. ("TVP") respectfully submits the following proposed findings of fact and conclusions of law for the trial between TVP and Spanski Enterprises Inc. ("SEI").

**I.    Preliminary Summary**

1.    Pursuant to the parties' December 14, 1994 Agreement (subsequently amended in 1999 and 2002) (the "1994 Agreement"), SEI has been distributing TVP's Polish-language *TVP Polonia* channel in the United States and Canada (the "Territory") since 1995.  SEI distributes the *TVP Polonia* channel in the Territory through third-party cable and satellite companies, and via the Internet through subscriber access to SEI's website www.tvpolonia.com.  Subscribers pay a monthly charge to access *TVP Polonia* programming as part of their cable or satellite subscriptions or on SEI's website.

2.    SEI has sued TVP for breach of the 1994 Agreement and the parties' August 11, 2009 Settlement Agreement, resolving prior litigation (the "Settlement Agreement").  As we explain, TVP is not liable for breach of contract.  Even if TVP is liable, SEI cannot prove damages.

3.    SEI's three breach-of-contract claims against TVP concern: (1) TVP's licensing of programming to Polvision, a Chicago-based television channel; (2) TVP's refusal to join a Canadian lawsuit brought by SEI against an alleged unauthorized distributor of TVP programming; and (3) TVP's removal of the *Klan* program series from the programming lineup on its *TVP Polonia* channel.

**A.    Polvision**

4.    The Polvision-related claim should be dismissed because TVP's license of programming to Polvision did not breach TVP's contracts with SEI.   These contracts give SEI the right to distribute the *TVP Polonia* channel as a unit of programming within the Territory, in the same form as the channel is broadcast in Poland by TVP.  However, the contracts do not give SEI distribution exclusivity to individual programs or series broadcast on *TVP Polonia*.

5.    Moreover, even if SEI did have distribution exclusivity to all of the individual programming on *TVP Polonia*, TVP would have a complete defense to liability for its agreements with Polvision.

6.    When TVP entered into the June 2008 TVP/Polvision Licensing Agreement ("June 2008 TVP/Polvision Licensing Agreement"), SEI's contract with TVP only gave SEI rights to first runs of programs.  SEI was given no right to distribute repeat programming.  The June 2008 TVP/Polvision Licensing Agreement, in contrast, only licensed Polvision to distribute repeat programming. In addition, all of the episodes licensed in this agreement were broadcast by Polvision prior to the parties' Settlement Agreement.

7.    Under the August 31, 2009 TVP/Polvision Licensing Agreement ("August 31, 2009 TVP/Polvision Licensing Agreement") TVP licensed additional content to Polvision.  TVP signed that agreement and sent it to Polvision on July 2, 2009 while SEI's rights were still limited to first run rights.  Polvision signed and returned the August 31, 2009 TVP/Polvision

Licensing Agreement on August 31, 2009.  Between the date of TVP's signature and the date of Polvision's signature, TVP signed the Settlement Agreement with SEI.  While the Settlement Agreement gave SEI the new right to repeat broadcasting of the *TVP Polonia* channel content as a programming unit, it did not give SEI any rights to distribute individual programs.

8.     To avoid disputes with SEI, TVP worked with Polvision to provide Polvision with replacement programming that never appeared on *TVP Polonia*.  This agreement was memorialized in the July 2010 Annex to the August 31, 2009 TVP/Polvision Licensing Agreement ("July 2010 Annex") under which TVP licensed to Polvision programming that had never appeared on *TVP Polonia*.  As SEI had no contractual rights to this substitute programming, it has no claim that TVP's entry or performance of the obligations under the July 2010 Annex is a breach of TVP's contractual obligations to SEI.

   **B.     Canadian Litigation**

9.     SEI also cannot show that TVP breached any contractual obligation because TVP decided not to join as a plaintiff in a lawsuit SEI brought in Canada against an alleged unauthorized distributor of TVP programming, because TVP never agreed to join such a litigation.  TVP disagrees with the position taken by SEI in Canada, which is that SEI has distribution exclusivity rights to individual programming on *TVP Polonia*.  TVP is not liable for SEI's legal fees in the Canadian litigation.

   **C.     *Klan***

10.    Third, SEI claims that TVP breached its contracts with SEI by removing the *Klan* series from *TVP Polonia*.  This claim is defeated by the plain wording in the 1994 Agreement that gives TVP the exclusive right to control what content is contained on its *TVP Polonia* channel.

11.    SEI claims that TVP removed the *Klan* series after SEI's filing of the original Complaint in this case in order to license subsequent episodes to Polvision as part of the replacement programming referred to above.  In fact, TVP decided to remove the *Klan* series two months before SEI filed its original Complaint, and for reasons wholly unrelated to SEI:  there was declining viewer interest in the series and TVP had other programming requirements from the Polish government.

   **D.     Damages**

12.    SEI has reduced its total damages claim by more than 90 percent – from its original damages claim in its Amended Complaint of $22.5 million to its current total damages claim of $2,073,557 ($603,685 for the Polvision claim as a high-end amount; $206,994 for the Canadian litigation claim; and $1,262,878 for the *Klan* claim).  However, SEI's reduced damages calculation for each of its three claims remain methodologically flawed and legally incorrect.

13.    For its Polvision claim, SEI advances the theory that it lost profits it could have earned if SEI, rather than TVP, had been able to  license (more accurately stated, to syndicate) that content to Polvision or another channel.  This theory is fatally flawed because even if SEI

had distribution exclusivity to all of the individual programming appearing on *TVP Polonia* (and it does not), it still would not have any right to syndicate individual *TVP Polonia* programs or series for rebroadcast.  This is evidenced by the fact that while SEI has been distributing *TVP Polonia* for the last 18 years, it has never once syndicated individual programs or series carried on *TVP Polonia* to other networks or channels.

14.     Moreover, even if SEI somehow had syndication rights to individual programming, the proposed testimony of SEI's damages expert is based on improper assumptions and incorrect calculations.  It is inadequate to establish any damages.

15.     As to SEI's Canadian litigation claim, SEI has failed to show a causal link between TVP's alleged breach of contract and SEI's claimed damages.  SEI has not demonstrated that had TVP joined the Canadian litigation, SEI's legal fees would have been reduced, much less completely prevented.

16.     As to the *Klan* claim, SEI has failed to show that its alleged diminished subscriber growth rate is in any way attributable to TVP's removal of the *Klan* series from *TVP Polonia*.  Further, like the Polvision claim, SEI's *Klan*-related damages claim relies upon a host of improper assumptions and incorrect sourcing and calculations.

**E.     TVP's Counterclaim**

17.     TVP has asserted a counterclaim against SEI.  SEI has failed to comply with its contractual obligation (which the Court has recognized) to maximize subscribers to SEI's distribution of the *TVP Polonia* channel.  TVP's industry expert has concluded that the approximately 30,000 television and 15,000 Internet subscribers SEI has achieved in the United States and Canada after more than 18 years of distributing *TVP Polonia* has fallen far short of the minimum market penetration level that SEI, had it exercised reasonable commercial efforts, would have attained, considering the available market of 2.5 to 3 million Polish-speaking people within this geographic region.  TVP will present evidence showing that one cause of the shortfall is SEI's outmoded and substandard website, which is incompatible with web browsers used by a majority of Internet users, is incompatible with Apple products, and is not optimized for mobile devices.  TVP will present credible evidence that TVP has lost profits from this breach exceeding $6.6 million.

<u>PROPOSED FINDINGS OF FACT</u>

II.     **Background**

     A.     **The Parties' 1994 Agreement, Amended In 1999 and 2002**

     18.     TVP is a public television broadcasting corporation wholly-owned by the Polish Government.  TVP's predecessor entity, PIT, broadcast the first Polish television programming after World War II, starting in 1951.  In 1992, the year after free elections marked the end of communism in Poland, the Polish Parliament separated PIT's television and radio divisions and formed TVP as Poland's public-television broadcaster.  TVP currently produces and distributes 10 television channels, including news, history, sports, culture, and politics channels.[1]

     19.     TVP's *TVP Polonia* channel presents popular programming from TVP's other domestic channels.  It includes, including soap opera series, comedies, documentaries, current events, political analysis, and news programming.  Under Poland's Broadcasting Act of 1992, TVP is required to create and distribute the *TVP Polonia* channel to the broadest possible audience of the worldwide Polish Diaspora.[2]

     20.     TVP began a relationship with SEI shortly after TVP was established in 1992.  On December 14, 1994, TVP and SEI entered into the 1994 Agreement under which TVP granted SEI the exclusive right to distribute in North and South America (the "Territory") the first run of the programming content of TVP's *TVP Polonia* channel.[3]  The term of the 1994 Agreement is 25 years; it will expire in 2019.

     21.     TVP and SEI signed two later addenda to the 1994 Agreement.  The November 4, 1999 Addendum granted SEI the additional right to distribute the first run of the programming content on the *TVP Polonia* channel via the Internet.[4]  The April 29, 2002 Addendum granted SEI the right to distribute the first run of the programming on an additional TVP news channel, *TVP3* (now called *TVP Info*), until April 29, 2012.[5]  The parties also stipulated  that the United States District Court for the Southern District of New York would have exclusive jurisdiction over any disputes arising out of the amended 1994 Agreement.  The two addenda did not change the payment terms agreed upon in 1994 – SEI keeps 92 percent of revenues it earns from distributing TVP programming to cable and Internet subscribers, and pays an 8 percent royalty fee to TVP on a quarterly basis.[6]

     22.     Since 1995,  SEI has been distributing TVP's *TVP Polonia* channel (and from 2002 through 2012 TVP's *TVP Info* channel) throughout the Territory via third-party cable and

---

[1]  Trial Declaration of Maria Nadolna, dated February 27, 2013 ("Nadolna Decl."), ¶ 24.

[2]  Nadolna Decl. ¶ 25.

[3]  TVP Trial Ex. 1, Section 2.2-3.

[4]  TVP Trial Ex. 2.

[5]  TVP Trial Ex. 3.

[6]  Nadolna Decl. ¶ 28.

satellite television companies, and since 2000 also via the Internet.  SEI's current subscriber base for TVP's programming in the Territory is approximately 30,000 television and 15,000 Internet subscribers.[7]

### B.      The August 11, 2009 Settlement Agreement

23.      In 2007, SEI sued TVP.  Its complaint claimed among other things, that TVP was planning to circumvent SEI's distribution rights under the 1994 Agreement by renaming the *TVP Polonia* channel and distributing the *TVP Polonia* content in the Territory through another distributor on the new renamed channel.[8]

24.      On August 11, 2009, the parties settled that litigation by entering into a Settlement Agreement.  TVP agreed, among other things, that it would not distribute the *TVP Polonia* channel in the Territory as another channel even after the content had already been distributed in the Territory.[9]  Clause II.E of the Settlement Agreement provides that:

> "TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in North and South America that contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TV Info*."[10]

25.      The 1994 Agreement as amended and the Settlement Agreement govern the parties' current relationship.

### III.      SEI's Claims Relating To The TVP/Polvision Contracts

26.      SEI's first claim concerns several agreements TVP entered during 2008,  2009, and 2010 with Polvision, a Chicago free-to-air television station broadcasting Polish-language content, under which TVP licensed certain TVP programming to Polvision for broadcast in the Chicago area.  SEI claims that these breached TVP's agreements with SEI because the programming TVP licensed to Polvision had appeared on *TVP Polonia*.

### A.      The History of The TVP/Polvision Contracts

### 1.      The 2008 Agreements Between TVP and Polvision

27.      SEI's first Polvision-related claim relates to the June 27, 2008 Licensing Agreement between TVP and Polvision.

---

[7]  TVP Trial Ex. 4 is a summary chart followed by supporting quarterly statements showing SEI's subscribers per quarter, quarterly revenue, and royalty payment to TVP. "EuroVu" accounts for U.S. television and Internet-based subscribers; "TVP Canada" accounts for Canadian television subscribers.

[8]  TVP Trial Ex. 49, ¶¶ 23 and 42, and Prayer for Relief "c."

[9]  Nadolna Decl. ¶¶ 48, 51.

[10]  TVP Trial Ex. 16, Clause II.E.

**A-151**

28.     TVP and its predecessor entity had been licensing TVP programming to Polvision for many years, starting in 1987.

29.     On March 17, 2008, TVP and Polvision entered into a barter agreement, amended on December 2, 2008, under which TVP licensed certain programming to Polvision in exchange for Polvision providing TVP with Polvision-created news content.[11]

30.     On June 27, 2008, TVP and Polvision entered into a licensing under which TVP provided Polvision with additional programming in exchange for payment.[12]  This agreement is the subject of SEI's first Polvision-related claim.

31.     Pursuant to the March and June 2008 TVP/Polvision agreements, TVP provided to Polvision, for rebroadcast by Polvision, the indicated episodes of the following television series: *Na Dobre* (1-100), *Plebania* (1-100), *Klan* (1-51), and *Zlotopolsky* (1-51).[13]  These episodes had been broadcast on *TVP Polonia* years earlier, between 1998 and 2004.

32.     When the March 17, 2008 TVP/Polvision Barter Agreement neared expiration in March 2009, Polvision asked TVP to enter a new agreement for the following episodes of the *Na Dobre*, *Plebania*, *Klan*, and *Zlotopolsky* series.[14]

### 2.     The August 31, 2009 TVP/Polvision Licensing Agreement

33.     Urszula Zaniewska, an employee of TVP,  negotiated with Agnieska Pokropek, an employee of Polvision, on the terms of a new agreement between TVP and Polvision for these later episodes.  On April 20, 2009, Polvision proposed that TVP provide Polvision with the following episodes: *Na Dobre* (101-200), *Plebania* (101-200),  *Klan* (52-150), and *Zlotopolsky* (52-150).[15]

34.     These episodes, like those licensed to Polvision in the 2008 agreements, had all been shown on *TVP Polonia* years earlier (in the case of the *Klan* and *Zlotopolsky* episodes, approximately ten years earlier).[16] As of that time, SEI's distribution rights to the *TVP Polonia* content was limited to first run rights under the 1994 Agreement,[17] and the programming to be licensed to Polvision in the new agreement consisted only of programming that had already been broadcast on *TVP Polonia*. The proposed new TVP/Polvision agreement did not conflict with the rights TVP had granted SEI.

---

[11]  TVP Trial Ex. 5.

[12]  TVP Trial Ex. 6.

[13]  Nadolna Decl. ¶ 34.

[14]  *Id.* ¶ 36; TVP Trial Ex. 7.

[15]  TVP Trial Ex. 8.

[16]  Nadolna Decl. ¶ 39.

[17]  TVP Trial Ex. 1, Section 2.2.

35.     The terms Polvision proposed for the new agreement were acceptable to TVP.  On June 4, 2009, TVP's Zaniewska e-mailed Polvision's Pokropek confirming that TVP and Polvision had reached an understanding on the terms of the agreement.  Zaniewska told Pokropek that TVP would begin the process of signing the agreement, which would take some time, and would begin recording the episodes, which would then be sent to Polvision.[18]  Pokropek said Polvision looked forward to receiving the signed contract from TVP.[19]

36.     TVP then began its usual process of obtaining internal approvals for a new contract from various TVP departments, including TVP's institutional contracting, economic, and legal departments, and from a TVP director.  This process was completed by June 30, 2009.[20]

37.     Two days later, on July 2, 2009, Zaniewska sent Pokropek three hard copies of the agreement between TVP and Polvision for Polvision's signature.  The agreement had already been signed by TVP.[21]

38.     The Polvision agreement was subject to Polish law.  As TVP understood Polish law, the agreement was binding upon TVP as soon as it was approved internally and sent to Polvision for signature on July 2, 2009.[22]  TVP thus began to record the episodes licensed to Polvision for transmittal to Polvision, even though Polvision had not yet countersigned the agreement.[23]

39.     On July 24, 2009, Pokropek told Zaniewska that she had just received the agreement signed by TVP which TVP had sent on July 2, 2009, but that Polvision's owner Walter Kotaba was away on vacation until mid-August.  Pokropek would have to wait until Kotaba returned, then she would immediately return the agreement with Kotaba's signature.[24]

40.     On August 4, 2009, Pokropek told Zaniewska that Kotaba would return from vacation on August 16; she would ask him to sign the agreement as soon as he returned.  She asked Zaniewska whether in the meantime TVP could send Polvision some of the episodes included in the agreement because Polvision wanted to continue to show later episodes of the programming it had been previously showing, without interruption.[25]

---

[18]  TVP Trial Ex. 9.

[19]  TVP Trial Ex 10.

[20]  TVP Trial Ex. 11.

[21]  TVP Trial Ex. 12.

[22]  Nadolna Decl. ¶ 43.

[23]  *Id.*

[24]  TVP Trial Ex. 13.

[25]  TVP Trial Ex. 14.

41.     On August 6, 2009, Zaniewska sent episodes included in the new agreement as Pokropek had requested.[26]

### 3.     TVP And SEI Conclude The August 11, 2009 TVP/SEI Settlement Agreement

42.     In the meantime, TVP and SEI were negotiating a settlement of their litigation that had started in 2007, and on August 11, 2009 entered into the Settlement Agreement.

43.     Nearly three weeks after TVP and SEI signed the Settlement Agreement, on August 31, 2009 TVP received back from Polvision the countersigned licensing agreement.[27]

44.     Under the new licensing agreement, Polvision was to pay TVP $50,270 in total for the 400 episodes licensed by TVP to Polvision.[28]  This was a small percentage of the revenue that TVP was receiving from SEI (approximately $60,000 to $70,000 in royalties per quarter under the 1994 Agreement).[29]

45.     There was no conflict between the new TVP/Polvision Licensing Agreement and the Settlement Agreement between TVP and SEI.[30]  Clause II.E of the Settlement Agreement expanded SEI's rights beyond its previous first-run rights to the programming content of *TVP Polonia* to now preclude TVP from distributing any other channels containing a repeat of the *TVP Polonia* programming.  However, Clause II.E's restriction on TVP distributing "other channels" containing *TVP Polonia* programming did not prevent TVP from distributing individual series or shows on *TVP Polonia*, such as TVP licensed to Polvision.

### 4.     TVP's Extensive Efforts To Provide Replacement Programming To Polvision

46.     Although TVP  believed that the August 31, 2009 TVP/Polvision Licensing Agreement did not conflict with the Settlement Agreement, having just concluded a two-year-long litigation with SEI culminating in the Settlement Agreement, TVP wanted to avoid further conflict with SEI.  At the same time, TVP sought to avoid conflict in its long-standing relationship with Polvision.

47.     To attempt to avoid conflict with SEI, on September 1, 2009 Zaniewska told Pokropek that certain provisions of TVP's Settlement Agreement with SEI complicated the cooperation between TVP and Polvision.  She asked Pokropek to confirm with SEI that Polvision could broadcast the episodes TVP had licensed to it in the August 31, 2009 TVP/Polvision Licensing Agreement.[31]  Pokropek responded that Polvision's agreement was

---

[26]  TVP Trial Ex. 15.

[27]  Nadolna Decl. ¶ 49; TVP Trial Ex. 17.

[28]  TVP Trial Ex. 17, Art. 5.1.

[29]  TVP Trial Ex. 4, EuroVu and TVP Canada payments.

[30]  Nadolna Decl. ¶ 51.

[31]  TVP Trial Ex. 18.

with TVP, and indicated that Polvision planned to broadcast the licensed episodes. Zaniewska replied that TVP might have to terminate its agreement with Polvision, but that TVP would try to renegotiate the Settlement Agreement with SEI to clarify that the Settlement Agreement would not be violated by TVP's arrangements with Polvision.[32]

48.     TVP was unable to reach agreement with SEI, which insisted that the Polvision agreement violated Clause II.E of the Settlement Agreement. To comply with SEI's interpretation of Clause II.E, TVP sought replacement programming never broadcast on *TVP Polonia* that Polvision would accept instead of the content licensed in the August 31, 2009 TVP/Polvision Licensing Agreement.[33]

49.     On October 23, 2009, Zaniewska offered Pokropek the first of such replacement programming.[34] TVP also informed Pokropek that as of December 1, 2009, Polvision should stop broadcasting the episodes licensed in the August 31, 2009 TVP/Polvision Licensing Agreement.[35]

50.     On November 30, 2009, TVP told Polvision that TVP was rescinding the implementation of the August 31, 2009 TVP/Polvision Licensing Agreement.[36] However, to avoid a dispute with Polvision, TVP tried to reach agreement with Polvision on replacement content. On December 9, 2009, TVP told Polvision that it was still working on an offer of replacement programming.[37]

51.     On December 21, 2009, TVP followed up with Polvision to confirm that Polvision had stopped broadcasting the episodes TVP had provided to Polvision.[38] TVP already had provided to Polvision 238 of the 400 licensed episodes.[39]

52.     TVP continued to work on assembling an offer to Polvision of replacement programming. On December 23, 2009, TVP wrote to Polvision to update Polvision on its efforts.[40] On January 6, 2010, TVP sent Polvision a further proposal for replacement programming.[41]

---

[32] *Id.*

[33] Nadolna Decl. ¶ 54.

[34] TVP Trial Ex. 19.

[35] TVP Trial Ex. 20.

[36] TVP Trial Ex. 21.

[37] TVP Trial Ex. 22.

[38] TVP Trial Ex. 23.

[39] *Id.*

[40] TVP Trial Ex. 24.

[41] TVP Trial Ex. 25.

53.     On February 23, 2010, Polvision wrote to TVP rejecting TVP's offers for replacement content, and stating that it would hold TVP to its obligations under the TVP/Polvision Licensing Agreement.  Polvision threatened to sue TVP if TVP did not comply.[42]

54.     On April 1, 2010, Polvision met with TVP in Warsaw to further discuss possibilities for TVP offering Polvision replacement programming.[43]

55.     On May 5, 2010, Nadolna followed up with Polvision and asked Kotaba if Polvision would accept the replacement series TVP discussed with Polvision at the April 1 meeting.[44]  Nadolna also reported to SEI's Boguslaw Spanski (the owner of SEI) that TVP was trying to find replacement programming that Polvision would accept instead of the programming in the August 31, 2009 TVP/Polvision Licensing Agreement.[45]

56.     On May 13 and 17, 2010, Nadolna again wrote to Polvision asking Kotaba to respond to TVP's offer of replacement programming, and demanding that Polvision stop broadcasting the episodes TVP had sent to Polvision and return those episodes to TVP.[46]  Kotaba again refused TVP's offer of replacement programming, and again threatened to sue TVP.[47]

57.     On May 18, 2010, Nadolna tried yet again to convince Polvision to accept TVP's offer of replacement programming, and to immediately stop broadcasting the episodes TVP had already provided to Polvision.  She asked Kotaba to make a financial proposal for TVP to pay Polvision a sum of money in exchange for stopping to broadcast the episodes.[48]  In response, Polvision again threatened to sue TVP.[49]

58.     On June 8, 2010, Nadolna wrote Kotaba asking him once again to make a financial proposal, and to stop broadcasting and return the episodes TVP had sent to Polvision.[50]  Kotaba ignored Nadolna's June 8 letter, so she followed up with the same requests in two subsequent letters on June 14 and 25, 2010.[51]

59.     On June 30, 2010, TVP held a teleconference with Kotaba during which TVP and Polvision finally reached a preliminary agreement on replacement programming content.  Nadolna memorialized the discussion in a letter she sent to Kotaba the next day, attaching a draft

---

[42]   TVP Trial Ex. 26.

[43]   TVP Trial Ex. 27.

[44]   TVP Trial Ex. 28.

[45]   TVP Trial Ex. 29.

[46]   TVP Trial Exs. 30, 31.

[47]   TVP Trial Ex. 32.

[48]   TVP Trial Ex. 33.

[49]   TVP Trial Ex. 34.

[50]   TVP Trial Ex. 35.

[51]   TVP Trial Exs. 36, 37.

of an annex to the August 31, 2009 TVP/Polvision Licensing Agreement.[52]  After some further discussion with Kotaba, on July 8, 2010 Nadolna sent Kotaba a further draft of a proposed annex listing the agreed replacement episodes.[53]

### 5.   TVP and Polvision Agree Upon The July 2010 TVP/Polvision Annex For Replacement Programming

60.    On July 16, 2010, Polvision signed the Annex (the "July 2010 Annex") accepting the replacement programming.[54]  All of the episodes identified in the July 2010 Annex had never been shown on *TVP Polonia*.

61.    As of August 1, 2010, when the July 2010 Annex went into effect, Polvision had broadcast 215 of the 400 episodes originally licensed by TVP in the August 31, 2009 Licensing Agreement.  Polvision certified that it would not broadcast the remainder of the episodes.[55]

### B.   SEI's Damages Theory For Its Polvision Claim

### 1.   SEI Has Abandoned Its Lost Subscribers-Based Damages Theory For A Theory Based Upon The Value Of The Episodes TVP Licensed To Polvision

62.    SEI's original damages theory was that as a result of TVP's agreements with Polvision SEI lost profits it would have earned from subscribers who cancelled their subscriptions to SEI's distribution and from potential subscribers who did not subscribe due to Polvision's broadcast in the Chicago area.[56]  SEI claimed that from August 12, 2009 through December 31, 2011 it had lost at least 1,003 television and 1,906 Internet subscribers, along with an untold number of lost potential new subscribers.[57]

63.    When asked about these allegedly lost subscribers at his deposition, Spanski acknowledged that that the list of allegedly lost television subscribers contained subscriptions that were both outside of Polvision's broadcast range and lost before August 2009 (when the relevant agreement was signed).[58]  Further, the list of allegedly cancelled Internet subscriptions also contained cancellations before August 2009 and double-counting of the same subscribers.[59] While Spanski has claimed that he had emails in which customers stated they were cancelling

---

[52]  TVP Trial Ex. 38.

[53]  TVP Trial Ex. 39.

[54]  TVP Trial Ex. 40.

[55]  *Id.*, "Whereas" No. 1 and Art. 4.2.

[56]  TVP Trial Ex. 58, pgs. 5-7.

[57]  *Id.*

[58]  Spanski Dep. Tr. 158:25 – 165:24.

[59]  *Id.* 199:8-17.

11

subscriptions due to Polvision's broadcast,[60] SEI has not produced even one such email.  That is not surprising.  All of the programming TVP had licensed to Polvision was many years old: half of it more than ten years old, and the other programming six or four years old;[61] subscribers would not have cancelled a subscription to SEI's current programming simply because old episodes of that programming was also available on Polvision's free-to-air channel.

64.    Accordingly, when SEI's damages expert Stephen Shulman issued his expert report calculating SEI's damages resulting from TVP's agreements with Polvision, the report contained no claim for damages resulting from allegedly lost subscribers.  SEI abandoned its damages theory based upon lost subscribers.  Shulman explained at his deposition that he moved away from the cancelled subscriptions theory for Polvision because was not comfortable that subscriber cancellations could actually be attributable to Polvision.[62]

65.    Instead, Shulman's expert report described an alternative damages theory, grounded in lost profits based upon the alleged value of the programming TVP had licensed to Polvision.  Shulman's report contained three alternative methods of calculating the value of the programming: (a) an industry-standard  market value of the licensed programs; (b) the market value of the programming as stated in the parties' agreements; and (c) the actual amount paid for the episodes.  Schulman's damages calculations range from $603,685.60 under the industry-standard market value scheme to $100,078 using the actual amount paid for the episodes.

## IV.    SEI's Claim For Legal Fees Incurred Pursuing Litigation In Canada

66.    SEI's second claim against TVP concerns $206,994.30 in legal fees that SEI claims to have incurred since early 2010 to pursue litigation in Toronto against an alleged unauthorized Canadian distributor of TVP programming content.

67.    SEI claims that IMB+ Records Inc. ("IMB") was distributing via the Internet the TVP channels *TVP 1*, *TVP 2*, *TVP Historia*, *TVP Kultura*, and *TVP Sport* without authority from TVP.  SEI claims that because TVP refused to join SEI's litigation against IMB, TVP must now reimburse SEI for all of the legal fees SEI has apparently spent in attempting to stop IMB from distributing those TVP channels.

68.    As Nadolna explains, TVP never agreed to join SEI in any litigation against a third party concerning SEI's distribution rights, nor to pay SEI's legal fees for such a litigation.[63]

69.    TVP would not join SEI's litigation against IMB because TVP and SEI have different views on the distribution rights TVP has granted to SEI, centered around the parties' conflicting interpretations of Clause II.E of the August 2009 Settlement Agreement.[64]  SEI's

---

[60]  *Id.* 136:7-137:19.

[61]  TVP Trial Ex. 59, Section C, pgs. 9-12 and Appendix 9.

[62]  June 7, 2012 Deposition of Stephen Shulman ("Shulman Dep. Tr.") 26:19-27:12.

[63]  *See* Nadolna Decl. ¶ 73.

[64]  *See id.* ¶¶ 76-78.

view is that since Clause II.E prohibits TVP from licensing other channels containing *TVP Polonia* programming, the clause gives SEI distribution exclusivity to all of the individual programming on TVP's other television channels if such programming also appears on *TVP Polonia*. TVP's contrary view is that Clause II.E prohibits TVP from distributing "other channels" containing *TVP Polonia* programming, meaning SEI has the exclusive rights to distribute the content of the *TVP Polonia* channel as a whole unit, but no exclusive distribution rights to individual programs appearing on TVP's other channels merely because such programs also appear on *TVP Polonia*.

### A. The Parties' Disputed Interpretation Of SEI's Distribution Rights Is Central To The Canadian Litigation

70. TVP's and SEI's disputed interpretation of Clause II.E is centrally relevant to the Canadian litigation. SEI has claimed in its Amended Statement of Claim filed in Canada (under its incorrect interpretation of Clause II.E) that it had distribution exclusivity rights to any individual programming appearing on all of TVP's channels so long as that programming also appeared on *TVP Polonia*.[65] Thus, SEI claims, it could prevent IMB from distributing TVP's other channels containing some *TVP Polonia* programming content. IMB's Statement of Defence in the Canadian litigation rejected SEI's claims on the ground that SEI had no rights to channels other than *TVP Polonia* as a channel of programming and therefore no standing to complain about IMB's distribution of other TVP channels.[66]

71. When SEI asked TVP to join its litigation against IMB, the director of TVP's Legal Department, Lukasz Boberek, explained to Spanski that the TVP channels IMB was allegedly distributing (*TVP 1*, *TVP 2*, *TVP Historia*, *TVP Kultura*, and *TVP Sport*) were not included in TVP's agreement with SEI and that SEI had no rights to programming on those channels. Boberek said that TVP would not agree to any interpretation of the SEI/TVP Agreement that would expand SEI's rights to programming on those channels.[67]

72. Although TVP refused to join the Canadian litigation, TVP voluntarily took affirmative steps to assist SEI. TVP wrote to IMB threatening to sue IMB if it continued to distribute TVP programming without authorization.[68]

73. While TVP's IPTV (Internet-based television) department had some preliminary discussions with IMB to see if a business arrangement could be reached between TVP and IMB, and IMB attended a meeting with TVP in Warsaw, TVP never reached any agreement with IMB and never authorized IMB to distribute any of TVP's programming. TVP provided no support to IMB relating to its litigation with SEI.[69]

---

[65] TVP Trial Ex. 44, ¶¶ 2, 14.

[66] TVP Trial Ex. 45, ¶¶ 9-12.

[67] TVP Trial Ex. 41.

[68] TVP Trial Ex. 42.

[69] Nadolna Decl. ¶ 81.

74.     SEI and IMB anticipate that preparation for the trial of their case will be extensive, expert witnesses will be required, and the trial will be lengthy.[70]

## V.     SEI's Claim Relating To TVP's Removal Of The *Klan* Program From *TVP Polonia*

75.     SEI's third claim concerns TVP's decision to stop including the *Klan* program in its *TVP Polonia* programming lineup as of September 2010.  SEI claims that in response to its filing of its original Complaint in this case in June 2010, TVP removed the *Klan* program from *TVP Polonia*.  SEI claims that TVP did so in order to be able to license subsequent *Klan* episodes to Polvision as part of the replacement content TVP licensed to Polvision in the July 2010 Annex to the August 31, 2009 TVP/Polvision Licensing Agreement.

76.     Shulman has offered a damages theory based upon a diminution of the growth rate of SEI's subscriptions to its distribution of *TVP Polonia* programming, allegedly attributable to TVP's removal of the *Klan* program from *TVP Polonia*.  SEI seeks $1,262,878 in damages, which includes damages SEI has allegedly already sustained as a result of having fewer subscribers, and damages SEI will allegedly sustain in the future through the expiration of the 1994 Agreement in 2019.

### A.     The 1994 Agreement Confirms TVP's Unequivocal Control Over Its Programming Decisions

77.     The 1994 Agreement states that TVP has unequivocal control over its programming decisions: "TVP reserves the right to make changes to the TV Polonia programming . . ."[71]  SEI's website through which it distributes *TVP Polonia* programming in the Territory acknowledges TVP's unequivocal control over its editorial decisions.  SEI's website states that SEI has "no influence" over *TVP Polonia* programming content.[72]  Spanski acknowledged that there is no provision in the parties' agreement providing for SEI to have any control over TVP's programming decisions.[73]

78.     As Nadolna explains, TVP would have never granted an outside party such as SEI control over its programming lineup, which TVP must sometimes modify to fulfill its statutory mission of disseminating popular TVP programming via *TVP Polonia* to the widest possible audience in the Polish Diaspora.[74]  TVP's industry expert Gary Arlen explains that television programming producers typically do not contract away their editorial prerogative to determine their programming content to distributors; he sees nothing in the parties' agreements to suggest TVP made such an unusual commitment to SEI to retain any particular programming.[75]

---

[70]  TVP Trial Ex. 46, Schedule B Nos. 4-5.

[71]  TVP Trial Ex. 1, § 9.4.

[72]  TVP Trial Ex. 47.

[73]  Spanski Dep. Tr. 250:3-9.

[74]  Nadolna Decl. ¶ 92.

[75]  TVP Trial Ex. 59, pg. 15.

     **B.**     **TVP Removed *Klan* From *TVP Polonia* Because Of A Declining Audience, And To Make Time For Other Government-Mandated Programming**

     79.     Nadolna explains in detail the history and reasons behind TVP's decision to remove the *Klan* program from *TVP Polonia*.[76]  During each of the four seasons every year, editorial groups for each of TVP's channels conduct an editorial review of the programming scheduled for that channel two seasons ahead of time.  The same practice is followed for TVP's *TVP Polonia* channel.  An editorial group for *TVP Polonia* conducts its review four times annually to adjust programming on *TVP Polonia* to meet TVP's statutory requirements of disseminating *TVP Polonia* programming to the widest Polish Diaspora audience possible.  The review for the *TVP Polonia* Spring programming each year is typically performed during the previous Fall season in November, and the review for the *TVP Polonia* Fall programming is typically performed during the preceding Spring season in May.[77]

     80.     In 2009, TVP hired Witold Laskowski as its new director of *TVP Polonia* programming.  The *TVP Polonia* viewership domestically in Poland had been declining for a while among the most desirable age group, 16-to-49 year olds, and TVP wanted to increase its viewership in that key demographic.  In November 2009, as part of TVP's Fall 2009 review of the *TVP Polonia* programming lineup for the Spring of 2010, TVP significantly revised its programming lineup to attempt to increase its Poland-based viewing audience in the 16-to-49 year-old age group.[78]

     81.     TVP's changes as part of the Fall 2009 review resulted in greater viewing audiences in the 16-to-49 year-old age group beginning in the Spring of 2010.[79]  However, the *Klan* program, which was being broadcast during prime-time, remained unchanged during that Fall 2009 editorial review and remained on *TVP Polonia* during the Spring of 2010 despite attracting a smaller audience than TVP's average audience levels during non-prime-time hours.[80]  Spanski is aware of TVP's efforts to attract younger viewers.  He said that most viewers of *TVP Polonia* are over 50 while the age group that is most sought after is 16-to-49 year olds; he claims he has advised TVP about problems in the programming which prevent TVP from becoming more competitive with a younger audience.[81]

     82.     During the Spring of 2010, Poland's Ministry of Foreign Affairs directed TVP to begin broadcasting *Poland 24*, a current events program produced by TVP for Poles living abroad, on *TVP Polonia*.[82]  To free up time for *Poland 24*, and to address the increasingly-declining ratings for *Klan* which had fallen even further below average *TVP Polonia* audience

---

[76] Nadolna Decl. ¶ 95.

[77] *Id.*

[78] *Id.* ¶ 96.

[79] *Id.* ¶ 97.

[80] *Id.*

[81] Spanski Dep. Tr. 66:18-70:12.

[82] Nadolna Decl. ¶ 98.

levels, in May 2010, TVP, as part of its Spring 2010 programming review, decided to remove *Klan* along with other programming beginning in the Fall of 2010 and to add more popular news, current affairs, educational, and cultural programming which would attract younger audiences.[83] As part of its Spring 2010 review of changes to be implemented in the Fall of 2010, TVP also decided to stop producing its *Zlotopolsky* soap opera series, which had been broadcast on TVP's channels since 1997.[84]

83.     As Arlen explains, the daytime soap opera format of shows such as *Klan* and *Zlotopolsky*, which had both been on *TVP Polonia* for more than ten years, has been in decline in recent years outside of Poland as well.  Arlen cited numerous examples of similar long-running soap operas that have been recently cancelled.  For example, during the period from 2006 through 2012, the major U.S. broadcast networks cancelled most of their long-running daytime soap opera programming such as *All My Children* (cancelled in 2011), *One Life to Live* (2011), *Guiding Light* (2009), and *As the World Turns* (2010).[85] SEI's industry expert Larry Gerbrandt agreed with Arlen that the daytime soap opera format is in decline.[86]  In Arlen's view, TVP's decisions to modify its programming lineup were consistent with recent industry practices to cancel long-running soap operas.[87]

84.     TVP's Spring 2010 editorial changes implemented in the Fall of 2010, including the removal of the *Klan* program and other long-running soap operas  proved to be justified.  After TVP introduced *Poland 24* and replaced *Klan* with other more popular programming, including the programs *Londynczycy, Czas honoru, Ojciec Mateusz, Przystan,* and *Dom nad rozlewiskiem*, overall *TVP Polonia* prime time viewership increased substantially for all shows, including among TVP's target 16-to-49 year-old age group.[88]

### C.     TVP Decision To Remove *Klan* From *TVP Polonia* Preceded This Litigation And Was Unrelated To SEI or TVP's Agreement With Polvision

85.     Although not material, it is incorrect for SEI to claim that after SEI filed its original complaint in this case on June 24, 2010 TVP decided to remove the *Klan* program from *TVP Polonia* and license the program to Polvision.  As noted, that decision was made almost two months earlier in May 2010, as part of TVP's regular editorial review process and for reasons unrelated to TVP's relationship with SEI and TVP's offering of replacement programming to Polvision.  Spanski acknowledged that he did not know when TVP decided to remove *Klan* from

---

[83]  Nadolna Decl. ¶ 99; *see also* TVP Trial Ex. 48 showing the declining Klan viewership in Poland in the months between January 2009 and June 2010 against the average TVP Polonia viewership in all age groups and in the 16-to-49 year-old age group.

[84]  Nadolna Decl. ¶ 99.

[85]  TVP Trial Ex. 59, pgs. 16-17.

[86]  Gerbrandt Dep. Tr. 90:13-21.

[87]  TVP Trial Ex. 59, pg. 18.

[88]  Nadolna Decl. ¶ 100.

*TVP Polonia*.[89] He also was apparently unaware about TVP's bi-annual review process discussed above.[90]

86.     As Nadolna explains, the *TVP Polonia* audience is spread throughout the world. The North American audience for *TVP Polonia* is only a small portion of the *TVP Polonia* worldwide audience.  For example, while in the US and Canada some 45,000 viewers subscribe to SEI's television and Internet offerings of *TV Polonia*, in Lithuania alone there are some 300,000 viewers of *TVP Polonia*.[91]  TVP would have no interest in decreasing overall worldwide viewership of *TVP Polonia* by removing *Klan* just so TVP could license certain subsequent episodes to Polvision in the July 2010 Annex as part of an agreement worth $50,270, less than SEI's average quarterly payment to TVP of approximately $60,000 to $70,000 for distributing *TVP Polonia*, as mentioned above.

87.     In Arlen's view, TVP's decision to remove *Klan* from *TVP Polonia* was "consistent with typical network editorial decisions . . . driven by factors such as overall programming options and goals, including, as mentioned above, audience viewership levels, target demographic considerations, and programming requirements, and considering the implications of programming changes to audiences worldwide."[92]

## VI.    SEI Has Not Complied With Its Obligation To Maximize Subscribers To TVP's Programming

88.     TVP's counterclaim concerns SEI's failure to comply with its obligation to maximize subscribers to SEI's distribution of TVP's *TVP Polonia* channel.  The Court has recognized, as Judge Lynch did in the 2007 litigation, that the 1994 Agreement imposes upon an SEI an ongoing obligation to use reasonable efforts to maximize subscribers.  *Spanski Enterprises, Inc. v. Telewizja Polska, S.A.*, No. 10-CV-4933 (ALC), 2013 WL 81263, at *8 (S.D.N.Y. Jan. 8, 2013)  (quoting Judge Lynch's finding in the previous case: "TVP is right that under New York law there is an implied best efforts obligation on the part of an exclusive licensee to use reasonable efforts to market the product or service to which it has exclusive rights.")

89.     TVP's Polish law expert, Professor Marek Wierzbowski, explains in detail TVP's Polish-law-based public mission for *TVP Polonia* - to disseminate Polish programming to the widest audience possible and how TVP relies upon government subsidies and collaborates with Poland's National Broadcasting Council to fulfill its statutory mission.[93]  Spanski was very clear about this obligation during his deposition in the 2007 litigation: "There is an understanding

---

[89]  Spanski Dep. Tr. 261:16-21.

[90]  *Id.* 262:11-20.

[91]  Nadolna Decl. ¶ 102.

[92]  TVP Trial Ex. 59, pg. 16.

[93]  TVP Trial Ex. 62 - April 16, 2012 Expert Report of Marek Wierzbowski, pgs. 3-5.

which was between TVP and SEI that we will do everything possible to expand the distribution of TVP's programs" and "the main objective of TVP [is] getting the most subscribers."[94]

90.   Arlen and TVP's online video expert Ivan Reyes describe SEI's failures to maximize subscribers to its distribution of TVP's *TVP Polonia* channel.[95]

91.   Arlen's opinion is that SEI has failed to adequately distribute TVP programming in the Territory consistent with the purpose of the 1994 Agreement to maximize *TVP Polonia* viewership.[96]   In Arlen's view, as of the beginning of 2006, ten years after SEI began distributing *TVP Polonia*, SEI should have achieved a minimum of 150,000 television and Internet subscribers.[97]   Arlen assesses the rise in popularity and growth of specialty ethnic channels during the past two decades and finds that viewers are increasingly seeking content from their homelands, which programming distributors are aware of and to which they have responded.[98] Arlen says that the industry's awareness of the value of ethnic markets, combined with the growing digital capacity to offer more channels, has made it easier for specialty distributors such as SEI to create affiliate relationships to expand the market for *TVP Polonia*.[99]

92.   Arlen concludes that "SEI's failure to seek and create distribution deals with more cable and satellite companies represents a lost opportunity to capitalize on the increasing appetite for foreign-language programming during this period."[100]   Spanski acknowledged that Dish Network is another entity with whom SEI could, but does not, have a relationship to distribute *TVP Polonia*.[101]   Spanski did not even know what percentage of the Polish market SEI reaches.[102]   Gerbrandt would not offer any opinion on whether SEI has reached all of the viewers that it could.[103]

93.   Arlen's opinion that SEI should have achieved 150,000 television and Internet subscribers as of the beginning of 2006 is based on his estimate of approximately 10 million people of Polish descent living in the United States and Canada (derived from census data), of which an estimated 2.5 to 3 million speak Polish.[104]   Arlen's view is that the minimum level of

---

[94]   TVP Trial Ex. 70, Spanski April 18, 2008 Dep. Tr. 235:21-25; 237:21-24.

[95]   The key parts of Arlen's and Reyes' testimony are summarized by the Court in *Spanski Enterprises v. Telewizja Polska*,  2013 WL 81263, at *8-9.

[96]   TVP Trial Ex. 59, at 5.

[97]   *Id.* at 19.

[98]   *Id.* at 20-21.

[99]   *Id.* at 22.

[100]   *Id.* at 23.

[101]   Spanski Dep. Tr. 57:15-18.

[102]   *Id.* 63:12-17.

[103]   Gerbrandt Dep. Tr. 78:22-81:21.

[104]   TVP Trial Ex. 59, at 26.

market penetration SEI should have achieved is five to six percent of that Polish-speaking population, or 150,000 subscribers, ten years after beginning to distribute *TVP Polonia*.[105] Arlen says this is "a very low-end reasonable number."[106] Arlen notes that SEI's 1994 Business Plan, while perhaps overly optimistic, stated that SEI expected to achieve 2 million Territory subscribers only four years after beginning to distribute *TVP Polonia*.[107] Arlen's view is that more than eighteen years after SEI has started distributing *TVP Polonia* "[h]aving presently achieved only 45,000 subscribers, less than 2 percent of people in the Territory that speak Polish, SEI has failed to meet minimum industry expectations for reaching this potential audience."[108]

94.     Reyes' opinion focused on deficiencies in SEI's website, www.tvpolonia.com, in six areas, which according to Reyes make SEI's website a "poorly-designed, hard-to-use, non-user-friendly website."[109] The six areas of deficiency Reyes identified are:

1.     *Limited distribution platform*:  SEI's website is incompatible with the web browsers Firefox, Google Chrome, and Safari—which, combined make up 78 percent of the web browser market—without installing plug-in software.[110] Users are reluctant to install plugins,[111] and there are no plugins available to make the website available on the very popular Apple iPad.[112]

2.     *Lack of compatibility with non-Windows based devices and no mobile version*: SEI's website is not compatible with non-Windows based devices including all Apple devices such as MacBook and the iPad. The website also lacks a mobile-optimized version (for subscribers with Windows-based devices) even though users are increasingly using mobile devices to access websites, including viewing video content;[113]

3.     *Video quality issues*:  Most websites offering video content offer higher-quality versions of their content, with encoding settings superior to DVDs, but SEI's website highest-quality offering is slightly less than VHS-quality video;[114]

4.     *No search engine optimization*:  SEI's website has not been optimized for search engines such as Google, preventing a user from easily finding SEI's website using

---

[105]  *Id*.

[106]  Arlen Dep. Tr. 133:13-15.

[107]  TVP Trial Ex. 59, at pg. 27 and Appendix 10.

[108]  *Id*. at 26.

[109]  TVP Trial Ex. 61, pg. 1.

[110]  *Id*. at 2.

[111]  May 31, 2012 Deposition of Ivan Reyes ("Reyes Dep. Tr.") 54:7-21.

[112]  Reyes Dep. Tr. 60:5-6.

[113]  TVP Trial Ex. 61, at 2.

[114]  *Id*. at 2-3.

popular search terms.[115]  If a user enters the terms "Polish Television" or "Polish TV" into Google, the user will not find SEI's website on at least the first five pages of Google search results;[116]

5.   *Poor user Interface*:  The general design and user-friendliness of SEI's website is poor.  Users cannot easily view lists of new and available programming; instead they must hover a cursor over shortened program titles.[117]

6.   *No Spanish/Portuguese versions*:  While SEI's website is available in South America, it is not available in Spanish or Portuguese versions, essential for a website to be well-positioned for the South American viewing audience.[118]  Further, SEI has not advertised its website in South America at all.[119]

95.     Reyes's expert opinion is that SEI has lost existing and potential customers because of these deficiencies.[120]  It does not appear SEI has made any changes to its website to address these deficiencies since Reyes issued his report on April 16, 2012.

96.     Arlen's view is that because of the deficiencies Reyes identified in SEI's website, the site does not fulfill audience expectations.[121]  He concludes that SEI's inability to attract more than 15,000 Internet subscribers (one-third of its 45,000 total subscribers) means that "SEI has completely failed to exploit opportunities to distribute TVP's programming content via this important growing platform."[122]

97.     Arlen's report tracks the rapid growth of high-speed broadband across the United States–which at the end of 2011 reached nearly 80 million households.[123]  That number is likely much higher today in 2013.  Arlen notes that particularly among the Polish-American market, which is largely clustered in major urban areas where broadband deployment is widespread, audiences would especially have access to Internet video services.[124]  Arlen also cites research indicating the growing appeal of Internet video to viewers of all ages, particularly 34 and

---

[115]  *Id.* at 3; *See also* Appendix 4 showing that nearly 75 percent of the website's viewers find the website using the website name, but no users find the website using obvious search terms such as "Polish Television" or "Polish TV".)

[116]  *Id.*, *see also* Appendix 5 containing an analysis indicating the poor correlation between the website's meta tags, keywords and headers, as compared to the website content.)

[117]  *Id.*

[118]  *Id.*

[119]  Spanski Dep. Tr. 341:5-342:16.

[120]  Reyes Dep. Tr. 15:2-18.

[121]  TVP Trial Ex. 59, at 25.

[122]  *Id.*

[123]  *Id.* at 23.

[124]  *Id.*

younger.[125]  SEI's website, in Arlen's view, does not fulfill its contractual obligation to TVP to maximize distribution of TVP programming content through the rapidly-growing Internet-video delivery platform.

98.      SEI has submitted a trial declaration from its web developer Tomasz Gladkowski defending the website he developed (right at the start of his web development career in 2000) and continues to maintain.[126]

99.      Gladkowski's trial declaration: (a) discusses without any specificity that he is "testing and exploring the newest technologies and formats, which we will most likely apply to new videos in the near future";[127] (b) notes that the majority of SEI's website visitors use Microsoft Windows software and Internet Explorer,[128] which is not surprising given that the website is not compatible with other companies' software and web browsers; (c) cites selective reports that puts the Internet browser market share for Internet Explorer at 55%,[129] which would still account for barely a majority of Internet users even if the Court did not accept the 19% market share for Internet Explorer stated in the reports cited by Reyes; (d) does not dispute that non-Internet Explorer users must load plug-ins to access content;[130] (e) does not dispute that SEI's website lacks a version optimized for mobile devices,[131] which Reyes says users are increasingly using to access Internet video content; (f) does not dispute SEI's website's lack of search engine optimization for obvious search terms which would be used to search for the website;[132] (f) says the site's poor user interface is a matter of taste;[133] and (g) says users in South America could use Google Translate to understand the website rather than a translated version.[134]

100.      Missing from Gladkowski's declaration is any discussion of improvements to SEI's website since it was designed in 2000, other than an unspecified redesign in 2010 and a new play-while-browsing feature.[135]  SEI has not acted on Reyes' expert recommendations to improve serious deficiencies in its website, rather it downplays the deficiencies.  SEI's expert Gerbrandt offers no opinion on the quality of SEI's website.

---

[125]  *Id.* at 24-25.

[126]  Trial Declaration of Tomasz Gladkowski, dated March 7, 2013, ¶ 1.

[127]  *Id.* ¶ 9.

[128]  *Id.* ¶¶ 11-12.

[129]  *Id.* ¶ 13.

[130]  *Id.* ¶ 14.

[131]  *Id.* ¶ 15.

[132]  *Id.* ¶ 19.

[133]  *Id.* ¶ 21.

[134]  *Id.* ¶ 24.

[135]  *Id.* ¶ 6.

101.    TVP's damages expert Timothy Hart has calculated TVP's damages resulting from SEI's failure to maximize subscribers to its television and Internet distribution of *TVP Polonia*, including because of SEI's deficient website.  Hart's calculation is based upon Arlen's view that SEI should have achieved at least 150,000 subscribers by the beginning of 2006 (ten years after SEI began distributing *TVP Polonia*).  Hart estimated the number of subscribers SEI should have achieved through the date of his report based upon SEI's actual historical subscriber growth rates, and subtracted from that target number the number of subscribers SEI has actually achieved.  He multiplied the amount of unrealized subscribers by the quarterly revenue per television and Internet subscriber that SEI has realized historically.  He then applied TVP's 8 percent royalty to that lost revenue to calculate TVP's lost profits.[136]

102.    Following the Court's ruling on SEI's summary judgment motion restricting TVP's counterclaim to the period after August 11, 2009, Hart has adjusted his calculation to limit TVP's lost profits claim to post-August 11, 2009 profits.

103.    Hart's updated calculation of TVP's damages is that SEI's failure to comply with its obligation to maximize subscribers has resulted in $6,603,285 in lost profits to TVP.  Hart's updated calculations are detailed in an Updated Exhibit H attached to Hart's February 18, 2013 Letter accompanying his Expert Report and Supplemental Expert Report.[137]

104.    SEI's damages expert Shulman has said that he would agree with Hart's mathematical calculations of TVP's counterclaim damages, if Arlen is correct about the number of television and Internet subscribers SEI should have achieved.[138]

---

[136]  TVP Trial Ex. 60 – Expert Report of Timothy Hart, dated April 17, 2012, "Hart Expert Report," ¶ 86.

[137]  TVP Trial Ex. 60.

[138]  Shulman Dep. Tr. 269:8-20.

<u>Proposed Conclusions of Law</u>

**I.     SEI Has Failed To Prove That TVP Breached Its Agreements With SEI**

1.     In order to sustain a breach of contract claim, a plaintiff must prove by a preponderance of the evidence: (1) the existence of a contract; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4) resulting damages. *Diesel Props Srl v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

2.     As explained below, as to each its claims SEI has not shown that it has any contractual right that TVP has breached.  For its Polvision claim, SEI has failed to prove it has contractual distribution exclusivity to individual programming on *TVP Polonia*; for its Canadian litigation claim, SEI has failed to prove it had any right to require TVP to join its litigation; and for its *Klan* claim, SEI has failed to prove it had any right to control TVP's programming decisions for *TVP Polonia*.

3.     In addition, as to each of SEI's claims, SEI's claimed damages are incorrect and unsupportable.  For its Polvision claim, SEI seeks lost profits it could not have made.  For its Canadian litigation and *Klan* claims, SEI has not shown that the damages it has allegedly sustained were caused by TVP's actions.

4.     In contrast, TVP has shown, in support of its counterclaims, that SEI has breached the parties' agreements by failing to maximize the viewership of *TVP Polonia* in the Territory.

**A.     TVP Did Not Breach Through Its Contracts With Polvision Because TVP Never Granted SEI Distribution Exclusivity To Individual *TVP Polonia* Programming**

5.     SEI claims that TVP breached its agreement with SEI through the June 2008 and the August 31, 2009 agreements, and the July 2010 Annex, that TVP entered into with Polvision.

6.     TVP did not breach its agreements with SEI by entering into any of these contracts with Polvision because SEI does not have distribution exclusivity under the parties' agreements to individual *TVP Polonia* programming.

7.     In the 1994 Agreement, TVP granted SEI the "right to one-off use of TV Polonia Shows as part of the Programming Service" to be distributed by SEI.[139]  In order to implement the agreement, TVP granted to SEI the right to "receive and use the Signal [defined as the signal of TV Polonia programming service broadcast by TVP via satellite] in the Territory."[140]

8.     Thus, the 1994 Agreement gives SEI the exclusive right to distribute in the Territory the *TVP Polonia* chanel signal, or programming service, as it is broadcast by TVP in Poland.  The *TVP Polonia* channel contains a mixture of programming from TVP's other channels.  Nothing in the 1994 Agreement limits TVP from distributing in the Territory any such

---

[139]  TVP Trial Ex. 1, § 2.2-3.

[140]  *Id.*

individual programming from its other channels that has also appeared or will appear on the *TVP Polonia* channel.

9.     The parties' August 11, 2009 Settlement Agreement confirmed the rights TVP granted SEI in the 1994 Agreement, and also expanded those rights.[141]   Clause II.A confirms that TVP has granted SEI the exclusive right to distribute in the Territory the content of TVP's broadcast of the *TVP Polonia* channel: "SEI is and shall remain the exclusive distributor of TV Polonia and TVP Info programming content in the territory of North and South America." Clause II.E expands those rights to repeats of the *TVP Polonia* channel:

> TVP shall not distribute or offer to distribute, or permit the distribution of any other channels in North and South America that contain any of the same programming that is contained, has been contained, or will be contained in either *TV Polonia* or *TV Info*.

10.     In addition to adding to SEI's rights the right to repeat broadcasts of the *TVP Polonia* channel (beyond SEI's previous one-off use rights), Clause II.E prevents TVP from distributing "other channels" containing the *TVP Polonia* broadcast, even after the first broadcast of the *TVP Polonia* channel in the Territory by SEI..  However, TVP did not agree in the Settlement Agreement not to allow others to distribute individual programs or series that had originally been broadcast or that would be broadcast on *TVP Polonia*.

11.     Spanski testified that  one of SEI's concerns and claims in the previous litigation was that TVP intended to create another channel named something other than *TVP Polonia*, that would contain the full *TVP Polonia* programming,  in order to circumvent SEI's rights to *TVP Polonia*.[142]   The purpose of Clause II.E, according to Spanski, was to address that issue – to prevent TVP from distributing another channel containing the same content as *TVP Polonia*.[143] That is why Clause II.E refers to the distribution of "any other channels," rather than the distribution of programming.

12.     As Nadolna explains, Clause II.E of the Settlement Agreement confirmed SEI's rights to prevent TVP from distributing other channels containing the *TVP Polonia* programming content as a unit of programming, but did not prohibit TVP from distributing individual *TVP Polonia* programming.[144]

13.     Gary Arlen, based on his more than 40 years of experience in the cable television industry, reads Clause II.E in the same way.  According to Mr. Arlen:

> A plain reading of Clause E demonstrates that it is meant to restrict TVP from distributing re-runs of TV Polonia or TVP Info, or other

---

[141]  TVP Trial Ex. 16.

[142]  November 9-10, 2011 Deposition of Boguslaw Spanski ("Spanski Dep. Tr.") 85:17-88:16; *see also* TVP Trial Ex. 49, ¶¶ 23, 42, and Prayer for Relief "c."

[143]  Spanski Dep. Tr. 88:8-16.

[144]  Nadolna Decl. ¶ 10.

24

'channels' in full—as wholly-contained broadcasting packages of TVP programming and advertising—that contain the same programming as TV Polonia or TVP Info. However, Clause E does not prevent TVP from distributing individual *programming content* that has appeared on TV Polonia.[145]

14.     Spanski's trial declaration concerning SEI's rights confirms that TVP granted SEI the right to distribute the *TVP Polonia* channel as a unit of programming, but not the right to prevent TVP from distributing individual *TVP Polonia* programming.  Spanski refers to: "an exclusive license for re-broadcast of the whole and integral TV POLONIA program" (¶ 11), "exclusive rights be granted to broadcast the TV POLONIA program" (¶ 13), "the exclusive right to receive and use the Signal" (¶ 15), "to receive and rebroadcast . . . the satellite programme produced by [TVP] known as TV Polonia" (¶ 17), "to receive and distribute the satellite programs of [TVP] in North America under the name TV Polonia" (¶ 18), "exclusive distributor of TV Polonia in North America" (¶ 24).

15.     TVP licensed only individual programs to Polvision.  Because SEI has no distribution exclusivity rights to individual programs on *TVP Polonia*, it follows that TVP did not breach its agreement with SEI by licensing to Polvision individual programs.  SEI's claim for breach of contract should therefore be dismissed.

**B.      SEI Has No Claim For The June 2008 Agreement Because SEI's Rights Were Limited To One-Off Use Rights, And All The Licensed Episodes Preceded The Settlement Agreement**

16.     Even if TVP had granted SEI distribution exclusivity rights to all individual programming that appears on *TVP Polonia*, SEI would have no valid claim of breach of the TVP/SEI Settlement Agreement based on the agreements TVP entered with Polvision.

17.     The first TVP/Polvision agreement for which SEI has asserted a claim is TVP's June 2008 agreement with Polvision. Prior to the 2009 Settlement Agreement, the 1994 Agreement indisputably gave SEI only "one-off use" rights (or first-run rights) to the *TVP Polonia* programming content.[146]  All of the episodes TVP licensed to Polvision as part of the June 2008 agreement had already been shown on *TVP Polonia* years earlier.[147] To the extent SEI had any rights to individual programming on *TVP Polonia*, at that time it did not even arguably have any rights to such programming after it had already been broadcast on *TVP Polonia*.  Thus, SEI has no claim relating to TVP's June 2008 agreement with Polvision.

18.     In addition, the Court has held that the general mutual release in the parties' Settlement Agreement bars any claims for damages prior to the date of the Settlement

---

[145]  TVP Trial Ex. 59, Expert Report of Gary Arlen, dated April 16, 2012 ("Arlen Report"), pg. 7; *see also* June 5, 2012 Deposition of Gary Arlen ("Arlen Dep. Tr.") 160:25-161:16).

[146]  TVP Trial Ex. 1, § 2.2.

[147]  Nadolna Decl. ¶ 7.